**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Ethan D. Roman
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
edr@wittelslaw.com

*Attorneys for Plaintiff and the Proposed Class*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAP 111 ENTERPRISES LLC,<br><br>on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>MANHATTAN BEER DISTRIBUTORS, LLC and SIMON BERGSON,<br><br>                    Defendants. | Civil Case No.: 22 Civ. 1408<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

OVERVIEW OF MANHATTAN BEER'S UNLAWFUL CONDUCT ....................................... 1

JURISDICTION AND VENUE ..................................................................................... 4

PARTIES .................................................................................................................... 5

FACTUAL ALLEGATIONS ........................................................................................ 5

   I.   HOW MANHATTAN BEER DECEIVED CUSTOMERS LIKE
       PLAINTIFF ARMONK HOUSE ........................................................................ 5

   II.   THE NEW YORK BOTTLE BILL AND HOW MANHATTAN BEER
       ABUSES IT ...................................................................................................... 8

   III.  DEFENDANTS' UNSCRUPULOUS BILLING PRACTICES RUN
       AFOUL OF MULTIPLE LAWS ...................................................................... 10

CLASS ACTION ALLEGATIONS .............................................................................. 12

CAUSES OF ACTION ............................................................................................... 15

COUNT I – NEW YORK GENERAL BUSINESS LAW § 349 ................................... 15

COUNT II – COMMON LAW FRAUD ...................................................................... 16

COUNT III – FRAUDULENT CONCEALMENT ....................................................... 18

COUNT IV – NEGLIGENT MISREPRESENTATION ............................................... 20

COUNT V – UNJUST ENRICHMENT ...................................................................... 22

PRAYER FOR RELIEF ............................................................................................. 22

Plaintiff Cap 111 Enterprises LLC (hereinafter "Cap 111" or "Plaintiff"), by its attorneys Wittels McInturff Palikovic, brings this consumer protection action in its individual capacity and on behalf of a Class of consumers defined below, against Defendants Manhattan Beer Distributors, LLC and Simon Bergson (hereinafter collectively "Manhattan Beer," the "Company," or "Defendants," unless otherwise specified), and hereby alleges the following with knowledge as to its own acts, and upon information and belief, as to all other acts:

### OVERVIEW OF MANHATTAN BEER'S UNLAWFUL CONDUCT

1.      This lawsuit seeks to remedy a widespread billing fraud perpetrated by the largest single market beer wholesaler in the United States, that for years has tricked tens of thousands of small businesses out of many millions of dollars in fraudulent bottle deposit charges.

2.      Manhattan Beer's deceptive billing scheme works as follows.  Restaurants and convenience stores in the New York City metropolitan area place orders with Defendants for bottled beer to resell to the consuming public.  Under the New York State Returnable Container Act of 1982, Art. 27, Title 10 of the N.Y. ENV'T CONSERV. LAW §§ 27-1001 to 27-1019 (the "Bottle Bill"), beer distributors like Manhattan Beer are required to collect a 5-cent deposit on each bottle delivered.  But instead of just charging the mandated 5 cents per bottle, Manhattan Beer dupes its customers into paying an extra 10 cents on 24-bottle orders (i.e., 24-bottle cases of beer and other hard beverages).

3.      How does Manhattan Beer do this?  It hides the extra 10-cent charge inside the deposit charge required by the Bottle Bill.  By intermingling this 10-cent charge in the line item for state-mandated charges, Manhattan Beer's invoices lead reasonable consumers to believe that the extra 10-cent charge is part of a state-mandated bottle deposit.  This deceptive billing practice leads customers like Plaintiff Cap 111, which ran a small restaurant, to think that the $1.30

"deposit" Manhattan Beer billed for a 24-bottle case of beer is legitimate, when in fact the Company is only authorized by law to collect $1.20 in deposit fees.  That is, 24 bottles x $0.05 = $1.20.  Not the $1.30 Manhattan Beer sneaks into its invoices.

4.      Manhattan Beer's fraudulent 10-cent charges add up quickly.  The Company sells more than 45 million cases of beer per year.  Even if Manhattan Beer added the extra 10 cents onto just half of the 45 million cases it delivers annually, that results in millions of dollars in ill-gotten gains.  Specifically, 22,500,000 cases x $0.10 = $2,250,000 per year.  Manhattan Beer extracts millions of dollars from its customers every year by this deceptive and fraudulent scheme.

5.      As a beverage distributor governed by the New York Alcohol Beverage Control Law, the New York State Liquor Authority, and of course the Bottle Bill, Defendants understand their billing scheme is fraudulent and unlawful.  Indeed, upon information and belief, Manhattan Beer does not charge its more sophisticated customers, such as supermarkets, the extra 10 cents on 24-bottle cases.  The Company knows it couldn't (and shouldn't) pull a fast one on these customers.  Instead, Manhattan Beer's scheme preys on the small businesses that rely on the giant distributor to do the right thing when it comes to billing.

6.      Unfortunately for the Company's more than 23,000 customers in the New York metropolitan area, Manhattan Beer is the only game in town for Corona, Coors Light, Heineken and many other popular brands, as the Company has exclusive distribution rights for many of consumers' top choices.  Thus, small businesses like Plaintiff end up locked into buying from Manhattan Beer, and in doing so innocently pay fraudulent deposit charges to a company with annual sales that exceed one billion dollars a year.

7.     Defendant Simon Bergson touts to the public and city departments like the NYC Industrial Development Agency that he is "providing best-in-class service to his customers."[1]  But being best in class requires doing the right thing, which in this case means returning all the spurious bottle deposit fees the Company took from its customers and stopping the fraudulent charges going forward.

8.     As more fully detailed in this Class Action Complaint, Plaintiff and the Class of Manhattan Beer's customers defined below have been harmed by Defendants' unlawful and deceptive practices.  Thus, Plaintiff brings this class action on behalf of itself and a Class of similarly situated customers for monetary damages, restitution, statutory penalties, and declaratory and injunctive relief caused by Defendants' violations of N.Y. GEN. BUS. LAW § 349 and the common law.

9.     Sales of alcoholic beverages, including beer, are the lifeblood of many restaurants and convenience stores, especially those owned and operated by small business owners.  To target consumers with impermissible bottle deposit charges using the cover of state action, as Defendants have done for years, is unconscionable.

10.     Only through a class action can Manhattan Beer's customers remedy Defendants' ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Manhattan Beer's unlawful practices, it makes no financial sense for an individual customer to bring its own

---

[1] *About Manhattan Beer Distributors*, MANHATTAN BEER DISTRIBUTORS, http://www.manhattanbeer.com/Home/About (last visited Feb. 18, 2022); Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC%20%232.pdf (last visited Feb. 18, 2022).

lawsuit.  Further, most customers do not even realize they are victims of Manhattan Beer's deceptive and unlawful conduct.  With this class action, Plaintiff and the Class seek to level the playing field and make sure that companies like Manhattan Beer engage in fair and upright business practices.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

11.    This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

### *Personal Jurisdiction*

12.    This Court has general personal jurisdiction over Manhattan Beer because Manhattan Beer is a citizen of New York.

13.    This Court has specific personal jurisdiction over Defendants because they maintain sufficient contacts in this jurisdiction, including the advertising, marketing, distribution, and sale of beer to New York consumers.

### *Venue*

14.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff Cap 111 Enterprises LLC was incorporated and did business in Westchester County, and Manhattan Beer is headquartered in this District as well.

## PARTIES

15.     Plaintiff Cap 111 Enterprises LLC is a limited liability corporation incorporated in Westchester County, New York.  From November 2015 to August 2018, Cap 111 operated a restaurant known as Armonk House in Armonk, New York, and was a Manhattan Beer customer throughout this time.

16.     Defendant Manhattan Beer Distributors, LLC has been in the business of beer and beverage distribution since 1978 and is headquartered in the Bronx, New York.  The Company maintains five separate facilities across Rockland County, the City of New York, and Long Island, including 1.5 million square feet of warehousing, and services more than 23,000 customers in the Greater NY Metro area.[2]

17.     Defendant Simon Bergson ("Bergson") is Manhattan Beer's founder and, upon information and belief, both its CEO and President.  Bergson directs and controls the sales and billing operations of the Company and is fully aware of the wrongful deposit billing scam his Company operates.  Upon information and belief, he directed, developed, substantially assisted in, or otherwise knew about Manhattan Beer's misleading and deceptive billing practices.

## FACTUAL ALLEGATIONS

### I.     How Manhattan Beer Deceived Customers Like Plaintiff Armonk House

18.     In November 2015, Plaintiff Cap 111 opened a small restaurant called Armonk House in Armonk, New York.  Like any restaurant with a liquor license, Armonk House offered patrons beer and contacted Manhattan Beer for delivery of its carried brands.

_____

[2] Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC%20%232.pdf (last visited Feb. 18, 2022).

19.     Thereafter, Manhattan Beer delivered cases and kegs of beer.  The deliveries included invoices which listed the delivered products by Item number, Quantity, Description, Price, DISC (for discount), DPST (for deposit), and the amounts billed for these line items.  A copy of five representative Manhattan Beer invoices paid by the Armonk House dated July 18, 2018, July 7, 2018, February 7, 2018, January 13, 2018, and August 31, 2017, are attached hereto as **Exhibit A**.

20.     Unbeknownst to Plaintiff, Manhattan Beer included in its invoices for 24-bottle cases of beer a secretive, 10-cent charge that masqueraded as a lawful component of the bottle deposit to be collected by the Distributor as mandated by the Bottle Bill.  The five attached Armonk House invoices from 2017 and 2018 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Coors Light, Corona Extra, and Heineken K2.

21.     Plaintiff Cap 111 relied on Manhattan Beer's invoices to accurately itemize all charges, including the deposit required by the Bottle Bill.  But Manhattan Beer hid a 10-cent surcharge for each case of bottled beer inside the Bottle Bill charge.  Thus, Plaintiff relied on and was harmed by Defendants' omissions and misrepresentations when it paid the full deposit charges listed on the Company's invoices.

22.     Manhattan Beer had a duty to disclose the true nature of its $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill, because of its superior knowledge of the beer distribution industry, its superior knowledge of its own business practices, and as the author of the invoices provided to Plaintiff and the Class.

23.     A reasonable consumer expects that a reputable business will not include hidden extra fees on invoices or receipts.  Moreover, a reasonable consumer also relies on the veracity of

presented invoices, including those invoices like Defendants' that list a "DPST" charge that includes bottle deposit charges mandated by state law.  If it says "Deposit" on the invoice, and the consumer had purchased bottles of beer or other hard beverage, then the consumer would have no reason to suspect that charges required by law also included undisclosed surcharges imposed by the seller.

24.     Manhattan Beer's invoices also do not disclose why it is charging a hidden 10-cent surcharge on each 24-bottle case of beer or other hard beverage.  The Company likewise failed to disclose that the 10-cent surcharge for 24-bottle cases of alcoholic beverages is not a required payment under the Bottle Bill, and therefore customers don't have to pay it.

25.     That Defendants' billing is a carefully constructed stratagem to mislead customers is further evidenced by the fact that the Company charges the $1.30 deposit only on 24-bottle cases, but not 24-can cases.  Thus for the same 12 ounces of Coors Light, for example, Manhattan Beers charges a $1.30 deposit for the 24-bottle case, but $1.20 for the 24-can case.

26.     Manhattan Beer knew or should have known that its customers would rely on the Company's invoices to accurately include only those deposits required by the Bottle Bill.  Further, the Company well knew that its customer base, especially small business owners like Plaintiff, would desire receiving accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

27.     But for Defendants' material representations and omissions, Plaintiff would not have paid Manhattan Beer's fraudulent 10-cent surcharge.  Indeed, no reasonable consumer who knew the truth about Manhattan Beer's fraudulent 10-cent surcharge would have chosen to pay this charge.  If Plaintiff had known the truth about the bottle deposit add-on charge, it could have tried to have the add-on charges removed.

28.     Defendants have no good faith justification for their deceptive billing scheme.  The only reason they charge this fee is profiteering and/or price gouging, a stark demonstration of their bad faith.

29.     Upon information and belief, Defendants have been charging their customers the illegal $1.30 on all 24-bottle cases delivered regardless of the brand—except, upon information and belief, the Company does not charge the illegal add-on fee to its more sophisticated customers, like supermarkets.

30.     As of 2016, an article linked to the Company's website reported that Manhattan Beer was selling more than 45 million cases of beer per year.[3]  Today that figure is undoubtedly higher.  If Manhattan Beer added an extra 10 cents onto just half of the 45 million 24-bottle cases it delivers annually—i.e., 22.5 million cases—the Company would still be pocketing an extra $2,250,000 per year.  As the saying goes, that's a lot of beer money.

**II.     The New York Bottle Bill and How Manhattan Beer Abuses It**

31.     New York's Bottle Bill requires that Manhattan Beer and other "deposit initiators" charge a deposit fee, which is currently 5 cents per "beverage container."  N.Y. ENV'T CONSERV. LAW § 27-1005; *see also Bottle Refund*, THE OFFICIAL WEBSITE OF THE CITY OF NEW YORK, https://portal.311.nyc.gov/article/?kanumber=KA-02477 ("You pay a five cent deposit when buying some bottles or cans in New York State.") (last visited Feb. 18, 2022).

32.     The term "beverage container" is defined by statute and means the "individual, separate, sealed glass, metal, aluminum, steel or plastic bottle, can or jar used for containing less than 1 gallon or 3.78 liters at the time of sale or offer for sale of a beverage intended for use or

---

[3] Wholesaler of the Year: Manhattan Beer Distributors, BEVERAGE INDUSTRY, Sept. 2016, at 20–26 http://www.manhattanbeer.com/Content/PDF/BevWorld_Sept2016.pdf (last visited Feb. 18, 2022).

consumption in New York."  N.Y. ENV'T CONSERV. LAW § 27-1003; *see also Frequently Asked Questions About the Bottle Bill*, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, https://www.dec.ny.gov/chemical/57687.html (last visited Feb. 18, 2022).

33.    Accordingly, when a "Distributor" like Manhattan Beer "engages in the sale or offer for sale of beverages in beverage containers," the only item that the Distributor can collect a bottle deposit on is the beverage container.  N.Y. ENV'T CONSERV. LAW § 27-1003.

34.    Under the Bottle Bill, Manhattan Beer is thus bound to charge only 5 cents for each beer and hard beverage bottle sold.  This means that for a 24-bottle case of beer, the deposit charge pursuant to the Bottle Bill should be $1.20:  24 bottles x $0.05.  Instead, Manhattan Beer fraudulently imposes a 10-cent surcharge for each case of bottled beer and hard beverage, hiding this charge as part of a deposit fee without any disclosure as to the basis for the charge or how the total $1.30 deposit charge is calculated.  *See* Ex. A.

35.    Manhattan Beer's use of an unlawful and undisclosed 10-cent surcharge blended into its bottle "DPST" invoice line-item means that the Company is intentionally trying to deceive customers into believing the $1.30 is a lawful deposit charge.  A reasonable consumer acting reasonably under the circumstances is highly likely to be confused or misled by Manhattan Beer conflating its private fee with a statutorily imposed one and providing no information on the additional charge.  Reasonable consumers would further believe that the 10-cent charge is non-negotiable, and in fact required due to state action.  Simply put, the 10-cent surcharge is nothing more than a scam charge designed by Defendants to further line the pockets of the Company and its owner Defendant Simon Bergson.

36.    Consumers rely on the integrity of Manhattan Beer's invoices to accurately reflect charges required by law, such as taxes and the deposits required by New York's Bottle Bill.  Thus,

the scheme amounts to Manhattan Beer misusing New York's bottle law as a guise to boost its profits at the expense of its customers.

37.     As a result of Defendants' misleading practices, tens of thousands of unsuspecting consumers are being fleeced by Manhattan Beer out of many millions of dollars in hidden charges. Defendants' scam is unethical, oppressive, and unlawful.

### III.     Defendants' Unscrupulous Billing Practices Run Afoul of Multiple Laws

38.     Defendants' unfair and deceptive billing acts and practices violate N.Y. GEN. BUS. LAW § 349 as follows:

a.  Manhattan Beer misrepresented that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

b.  Manhattan Beer failed to disclose that it was adding a 10-cent surcharge to each 24-bottle case of beer and hard beverage sold;

c.  Manhattan Beer failed to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

d.  Manhattan Beer misrepresented that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

39.     Manhattan Beer likewise made the following misrepresentations and omissions that defrauded its customers and violated the common law:

a.  Manhattan Beer misrepresented that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

b.  Manhattan Beer failed to disclose that it was adding a 10-cent surcharge to each case of beer and hard beverage sold;

c.  Manhattan Beer failed to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

      d.   Manhattan Beer misrepresented that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

40.     Manhattan Beer fraudulently concealed from Plaintiff and the Class the true nature of its $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill.

41.     Manhattan Beer had a duty to fully and accurately disclose to all its customers, like Plaintiff and the Class, the 10-cent add-on fee hidden in its deposit charge because of its superior knowledge of the beer distribution industry, its superior knowledge of its own business practices, and as the author of the standard beverage invoices it provided to Plaintiff and the Class.

42.     Manhattan Beer's omissions and representations are false and deceptive, and designed to take advantage of consumers' good faith and the lack of consumers' knowledge of the beverage distribution market and the Bottle Bill.

43.     Manhattan Beer's omissions and representations are intentional, as it hides the 10-cent surcharge in the deposits section of its invoices, conflating its own private charge with government-mandated bottle deposits.

44.     In the alternative, Manhattan Beer negligently misrepresented the nature of the 10-cent surcharge for cases of beer.  As alleged above, Manhattan Beer had a duty to disclose the facts behind its 10-cent surcharge, and its failure to do so led Plaintiff and the Class to believe that the entire $1.30 deposit charge was mandated by the government.

45.     Manhattan Beer was unjustly enriched by its misrepresentations and omissions, as consumers would not have paid the 10-cent surcharge for cases of beer had they known that it was not required by New York's Bottle Bill.

46.     Plaintiff and other reasonable consumers expect honesty and integrity from suppliers and expected that Manhattan Beer would accurately disclose what it was charging

customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit. Plaintiff and the Class therefore reasonably relied on Manhattan Beer's invoices to accurately reflect the charge for government-mandated deposits. No consumer would agree to pay Manhattan Beer an extra 10 cents per case of beer if they knew the truth: that Manhattan Beer charges an extra 10 cents per case for no other reason than to inflate its profits at the expense of its customers.

## **CLASS ACTION ALLEGATIONS**

47.     As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized billing misconduct directed toward the Class—and this case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving its customers.

48.     Defendants' misconduct did not meaningfully differentiate among individual Class Members in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions. On information and belief, the hidden charges assessed to all of Manhattan Beer's customers are materially the same. The objective facts on these subjects are the same for all Class Members.

49.     Plaintiff sues on its own behalf and on behalf of the Class for monetary and equitable relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

50.     The Class is preliminarily defined as follows:

> All Manhattan Beer customers in the United States who purchased bottled beer from Manhattan Beer and were charged $1.30 as a deposit for 24-bottle cases during the applicable statute of limitations period up to and including the date of judgment.

51.     Excluded from the Class are: Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants

otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

52.    Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class.

53.    Plaintiff alleges that the Class encompasses tens of thousands of consumer entities who were likewise deceptively billed for 24-bottle cases of beer and other hard beverages. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

54.    The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control. Plaintiff anticipates appropriate notice being sent to each Class Member in compliance with all applicable federal rules.

55.    Plaintiff is an adequate class representative.  Its claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by the Defendants.  Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

56.    Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent its interests and those of the Class.

57.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.   Whether Defendants' conduct violates N.Y. Gen. Bus. Law § 349;

b.   Whether Defendants' representations and/or omissions are fraudulent;

c.   Whether Defendants owed a duty of care to Plaintiff and the Class and violated that duty;

d.   Whether Defendants were unjustly enriched as a result of their conduct;

e.   Whether Class Members have been injured by Defendants' conduct;

f.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

g.   The extent of class-wide injury and the measure of damages for those injuries.

58.   A class action is superior to all other available methods for resolving this controversy because (i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; (iii) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and (iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

59.   Further, the following issues are also appropriately resolved on a class-wide basis under Fed. R. Civ. P. 23(c)(4):

a.   Whether Defendants' conduct violates N.Y. Gen. Bus. Law § 349;

b.   Whether Defendants' representations and/or omissions are fraudulent;

    c.   Whether Defendants owed a duty of care to Plaintiff and the Class and violated that duty;

    d.   Whether Defendants were unjustly enriched as a result of their conduct;

    e.   Whether Class Members have been injured by Defendants' conduct; and

    f.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

60.    Accordingly, this action satisfies the requirements set forth under FED. R. CIV. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

## COUNT I

## NEW YORK GENERAL BUSINESS LAW § 349

61.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.    Plaintiff brings this claim under N.Y. GEN. BUS. LAW § 349 on its own behalf and on behalf of each member of the Class.

63.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349.

64.    Defendants' billing practices are consumer-oriented in that they are directed at small businesses, which are members of the consuming public.

65.    Defendants Manhattan Beer, LLC and its President/CEO Simon Bergson have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349 including:

    a.   Misrepresenting that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

  b. Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer and hard beverage sold;

  c. Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

  d. Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by governmental authority.

66. The aforementioned acts are unfair, unconscionable, and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

67. As a direct and proximate result of Defendants' unlawful and deceptive billing practices, Plaintiff and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action.

68. Plaintiff and the members of the Class further seek equitable relief against Defendants.  Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices to be unlawful, an order enjoining Defendants from engaging in any further unlawful conduct, and an order directing Defendants to return to the Plaintiff and the Class all amounts wrongfully assessed and/or collected.

69. As a result of Defendants' unfair and deceptive practices, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their damages, costs and reasonable attorneys' fees and all other relief available under N.Y. GEN. BUS. LAW § 349.

## COUNT II

## COMMON LAW FRAUD

70. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.     Plaintiff brings this common law fraud claim on its own behalf and on behalf of each member of the Class.

72.     Defendants Manhattan Beer and its President/CEO Simon Bergson made material misrepresentations and concealed material facts concerning their bottle deposit charges including:

    a.  Misrepresenting that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

    b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer and hard beverage sold;

    c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

    d.  Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by governmental authority.

73.     Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

74.     Defendants sold Plaintiff and the Class beer and hard beverages without disclosing any of the aforementioned material facts.

75.     Defendants' material misrepresentations and omissions were willful and intentional and were committed to boost Defendants' profits at Plaintiff's and the Class' expense.

76.     The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiff and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

77.     Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiff and the Class.

78.     Plaintiff was unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if it had known these concealed and/or suppressed facts.

79.     Plaintiff and the Class reasonably relied on Defendants' misrepresentations and omissions.

80.     Defendants' fraud by misrepresentation and concealment caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

81.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being with the intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

## COUNT III

### FRAUDULENT CONCEALMENT

82.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.     Plaintiff brings this fraudulent concealment claim on its own behalf and on behalf of each member of the Class.

84.     Defendants Manhattan Beer and its President/CEO Simon Bergson concealed material facts concerning their bottle deposit charges including:

a.  Failing to disclose that the $1.30 charge on their invoices to customers for 24-bottle cases was not a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer and hard beverage sold;

c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

d.  Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was not required and mandated by governmental authority.

85.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

86.    Defendants sold Plaintiff and the Class beer and hard beverages without disclosing any of the aforementioned material facts.

87.    Defendants' material omissions were willful and intentional and were committed simply to boost Defendants' profits at Plaintiff's and the Class' expense.

88.    The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiff and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

89.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiff and the Class.

90.    Plaintiff was unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if it had known these concealed and/or suppressed facts.

91.    Plaintiff and the Class reasonably relied on Defendants' omissions.

92.    Defendants' fraudulent concealment caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

93.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being with the sole intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

94.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.    Plaintiff brings this negligent misrepresentation claim on its own behalf and on behalf of each member of the Class.

96.    Defendants Manhattan Beer and its President/CEO Simon Bergson failed to disclose material facts concerning their bottle deposit charges including:

    a.    Failing to disclose that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

    b.    Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer sold;

    c.    Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

20

d. Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was not required and mandated by governmental authority.

97.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

98.    Defendants sold Plaintiff and the Class beer and hard beverages without disclosing any of the aforementioned material facts.

99.    Defendants' failure to disclose these material facts led Plaintiff and the Class to incorrectly believe that the 10-cent add-on fee was charged pursuant to the Bottle Bill.

100.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because the information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiff and the Class.

101.    Plaintiff was unaware of these material facts and would not have agreed to pay the hidden add-on deposit fee if it had known these concealed and/or suppressed facts.

102.    Manhattan Beer understands that customers like Plaintiff and the Class desire accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

103.    Plaintiff and the Class reasonably relied on Defendants' omissions.

104.    Defendants' negligent misrepresentation caused damage to Plaintiff and the Class, who are entitled to damages and other legal and equitable relief as a result.

105.    Therefore, Defendants are liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT V

### UNJUST ENRICHMENT

106.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    Plaintiff and the Class Members would not have paid the 10-cent add-on charge had they known the truth about Defendants' impermissible and illegal billing practices.

108.    By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit beyond what was contemplated by the parties at the expense of Plaintiff and Class Members.

109.    It would be unjust and inequitable for Defendants to retain the payments Plaintiff and Class Members paid for impermissible add-on bottle deposit charges.

110.    Therefore, Defendants are liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendants' actions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Class, appointing the Plaintiff as Class Representative, and designating the undersigned firm as Class Counsel;

(b)    Find that Defendants Manhattan Beer and Simon Bergson have committed all the violations of law alleged herein;

(c)    Render an award of compensatory damages of at least $50,000,000, the precise amount of which is to be determined at trial;

(d)    Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(e)     Declare that Defendants have committed the violations of law alleged
        herein;

(f)     Render an award of punitive damages;

(g)     Enter judgment including interest, costs, reasonable attorneys' fees, costs,
        and expenses; and

(h)     Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands that a jury determine

any issue triable of right.

Dated: February 18, 2022
       Armonk, New York

**WITTELS MCINTURFF PALIKOVIC**

By:     /s/ Steven L. Wittels
        Steven L. Wittels (SW-8110)
        J. Burkett McInturff (JM-4564)
        Ethan D. Roman (ER-5569)
        18 HALF MILE ROAD
        ARMONK, NEW YORK 10504
        Telephone: (914) 319-9945
        Facsimile:  (914) 273-2563
        slw@wittelslaw.com
        jbm@wittelslaw.com
        edr@wittelslaw.com

        *Attorneys for Plaintiff and the Proposed Class*