**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Ethan D. Roman
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (914) 319-9945
Facsimile:  (914) 273-2563
slw@wittelslaw.com
jbm@wittelslaw.com
edr@wittelslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

<div align="center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

</div>

| | |
|---|---|
| CAP 111 ENTERPRISES LLC, LIVANOS RESTAURANT INC., MODERNE BARN, ARMONK, INC., NEW OCEANA RESTAURANT CORP., GREAT FOOD 57TH ST LLC, 251 E. MAIN ST., LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC, <br><br> on behalf of themselves and all others similarly situated, <br><br><div align="center">Plaintiffs,</div><br><div align="center">v.</div><br> MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY, <br><br><div align="center">Defendants.</div> | Civil Case No.: 22 Civ. 1408 <br><br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

OVERVIEW OF MANHATTAN BEER'S UNLAWFUL CONDUCT ......................................... 1

JURISDICTION AND VENUE ........................................................................................ 4

PARTIES ........................................................................................................................ 5

FACTUAL ALLEGATIONS ............................................................................................ 8

    I.    THE RACKETEERING ENTERPRISE – THE "WHO" .................................... 8

        A.    The Distributor: Manhattan Beer ...................................................... 8

        B.    The Mastermind: Simon Bergson ...................................................... 8

        C.    The Facilitator: Michael McCarthy ................................................... 9

    II.    HOW THE RACKETEERING ENTERPRISE WORKS – THE "WHAT," "WHERE," "WHEN," AND "WHY" .............................................................. 10

        A.    The Fraudulent Invoices .................................................................. 10

        B.    The New York Bottle Bill and How Manhattan Beer Abuses It ................................. 13

    III.    HOW MANHATTAN BEER DECEIVED CUSTOMERS LIKE PLAINTIFFS ............. 15

    IV.    DEFENDANTS' UNSCRUPULOUS AND FRAUDULENT BILLING PRACTICES RUN AFOUL OF NEW YORK'S CONSUMER FRAUD STATUTE, NEW YORK'S BOTTLE BILL, CONTRACT LAW, AND THE COMMON LAW .......................................................................... 18

RULE 9(B) ALLEGATIONS ......................................................................................... 22

CLASS ACTION ALLEGATIONS ................................................................................. 25

CAUSES OF ACTION .................................................................................................. 29

COUNT I – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CONSPIRACY, 18 U.S.C. § 1962(d) .......................................................................... 29

COUNT II – NEW YORK GENERAL BUSINESS LAW § 349 ................................. 35

COUNT III – COMMON LAW FRAUD ....................................................................... 37

COUNT IV – FRAUDULENT CONCEALMENT ........................................................ 39

COUNT V – NEGLIGENT MISREPRESENTATION .............................................. 41

COUNT VI – UNJUST ENRICHMENT ....................................................................... 42

COUNT VII – BREACH OF CONTRACT ................................................................... 43

COUNT VIII – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND
FAIR DEAILNG.......................................................................................................... 45

COUNT IX – VIOLATION OF NEW YORK'S BOTTLE BILL ............................... 46

COUNT X – PUBLIC NUISANCE ............................................................................. 47

PRAYER FOR RELIEF ............................................................................................... 48

Plaintiffs Cap 111 Enterprises LLC, Livanos Restaurant Inc., Moderne Barn, Armonk, Inc., New Oceana Restaurant Corp., Great Food 57th St LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC (collectively, "Plaintiffs"), by their attorneys Wittels McInturff Palikovic, bring this consumer protection action in their individual capacity and on behalf of a Class of consumers defined below, against Defendants Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy (hereinafter collectively "Manhattan Beer," the "Company," or "Defendants," unless otherwise specified), and hereby allege the following with knowledge as to their own acts, and upon information and belief, as to all other acts:

## OVERVIEW OF MANHATTAN BEER'S UNLAWFUL CONDUCT

1.      This lawsuit seeks to remedy a widespread billing fraud perpetrated by the largest single market beer wholesaler in the United States, that for years has tricked tens of thousands of small businesses out of many millions of dollars in fraudulent bottle deposit charges.

2.      The Manhattan Beer Defendants' deceptive billing scheme works as follows. Restaurants and convenience stores in the New York City metropolitan area place orders with Defendants for bottled beer and other beverages subject to bottle deposits to resell to the consuming public.  Under the New York State Returnable Container Act of 1982, Art. 27, Title 10 of the N.Y. Env't Conserv. Law §§ 27-1001 to 27-1019 (the "Bottle Bill"), beer distributors like Manhattan Beer are required to collect a 5-cent deposit on each bottle delivered.  But instead of just charging the mandated 5 cents per bottle, Manhattan Beer dupes its customers into paying an extra 10 cents on 24-bottle orders (*i.e.*, 24-bottle cases of beer and other beverages subject to bottle deposits).

3.    How does Manhattan Beer do this?  It hides the extra 10-cent charge inside the deposit charge required by the Bottle Bill.  By intermingling this 10-cent charge with state-mandated charges, Manhattan Beer's invoices lead reasonable consumers to believe that the extra 10-cent charge is part of a state-mandated bottle deposit.  This deceptive billing practice leads customers like Plaintiffs, who run local restaurants, to think that the $1.30 "deposit" Manhattan Beer billed for a 24-bottle case of beer is legitimate, when in fact the Company is only authorized by law to collect $1.20 in deposit fees.  That is, 24 bottles x $0.05 = $1.20.  Not the $1.30 Manhattan Beer sneaks into its invoices.

4.    Manhattan Beer's fraudulent 10-cent charges add up quickly.  The Company publicly disclosed that it sells more than 45 million cases of beer per year.  Even if Manhattan Beer added the extra 10 cents onto just half of the 45 million cases it delivers annually, that results in millions of dollars in ill-gotten gains.  Specifically, 22,500,000 cases x $0.10 = $2,250,000 per year.  Through this racketeering enterprise—comprised of Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy—Manhattan Beer's deceptive and fraudulent scheme extracts millions of dollars from its customers every year.

5.    As a beverage distributor governed by the New York Alcohol Beverage Control Law, the New York State Liquor Authority, and of course the Bottle Bill, Defendants understand their billing scheme is fraudulent and unlawful.  Indeed, upon information and belief, Manhattan Beer does not charge its more sophisticated customers, such as supermarkets, the extra 10 cents on 24-bottle cases.  The Company knows it couldn't (and shouldn't) pull a fast one on these customers.  Instead, Manhattan Beer's scheme preys on the small businesses that rely on the giant distributor to do the right thing when it comes to billing.

6.      Unfortunately for the Company's more than 23,000 customers in the New York metropolitan area, Manhattan Beer is the only game in town for Corona, Coors Light, Heineken and many other popular brands, as the Company has exclusive distribution rights for many of consumers' top choices.  Thus, small businesses like Plaintiffs end up locked into buying from Manhattan Beer, and in doing so innocently pay fraudulent deposit charges to a company with annual sales that exceed one billion dollars a year.

7.      Defendant Simon Bergson, Manhattan Beer's CEO and President, touts to the public and city departments like the NYC Industrial Development Agency that he is "providing best-in-class service to his customers."[1]  But being best in class requires doing the right thing, which in this case means returning all the spurious bottle deposit fees the Company took from its customers and stopping the fraudulent charges going forward.

8.      Defendant Mr. Bergson, together with his co-Defendant Michael McCarthy the company's Senior Operating Officer, have conspired together in an ongoing racketeering enterprise with Manhattan Beer to use the wires and mails to defraud their customers with the fraudulent invoices in violation of in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO").  This racketeering enterprise has persisted for years, enabling the company and these two Defendant individual officers to extract and gain extra profits from their unsuspecting customers in a centrally coordinated bottle deposit rip-off scheme.

---

[1] *About Manhattan Beer Distributors*, MANHATTAN BEER DISTRIBUTORS, http://www.manhattanbeer.com/Home/About (last visited May 31, 2022); Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC%20%232.pdf (last visited May 31, 2022).

9.      As more fully detailed in this First Amended Class Action Complaint, Plaintiffs and the Class of Manhattan Beer's customers defined below have been harmed by Defendants' unlawful and deceptive practices.  Thus, Plaintiffs bring this class action on behalf of themselves and a Class of similarly situated customers for monetary damages, restitution, statutory penalties, and declaratory and injunctive relief caused by *inter alia*, Defendants' violations of RICO and New York's consumer fraud statute (N.Y. GEN. BUS. LAW § 349 ("GBL § 349"), and Defendants' fraud, breach of contract, and other violations of the common law.

10.      Sales of alcoholic beverages, including beer, are the lifeblood of many restaurants and convenience stores, especially those owned and operated by small business owners.  To target consumers with impermissible bottle deposit charges using the cover of state action, as Defendants have done for years, is unconscionable.

11.      Only through a class action can Manhattan Beer's customers remedy Defendants' ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Manhattan Beer's unlawful practices, it makes no financial sense for an individual customer to bring its own lawsuit.  Further, most customers do not even realize they are victims of Manhattan Beer's deceptive and unlawful conduct.  With this class action, Plaintiffs and the Class seek to level the playing field and make sure that companies like Manhattan Beer engage in fair and upright business practices.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

12.      This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class

exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

13.     This Court also has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because the action arises under RICO, 18 U.S.C. § 1961 *et seq*.  In addition, this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

***Personal Jurisdiction***

14.     This Court has general personal jurisdiction over Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy because all are citizens of New York.

15.     This Court has specific personal jurisdiction over Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy because they maintain sufficient contacts in this jurisdiction, including the marketing, distribution, and sale of beverages to New York consumers.

***Venue***

16.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiffs are incorporated and do business in Westchester County and New York County, and Manhattan Beer is headquartered in this District as well.

## PARTIES

17.     Plaintiff Cap 111 Enterprises LLC (hereinafter "Cap 111") is a limited liability corporation incorporated in Westchester County, New York.  From November 2015 to August 2018, Cap 111 operated a restaurant known as Armonk House in Armonk, New York, and was a Manhattan Beer customer throughout this time.

18.    Plaintiff Livanos Restaurant Inc. (hereinafter "City Limits") is a domestic business corporation incorporated in Westchester County, New York.  Since 1994, Livanos Restaurant Inc. has operated a restaurant known as City Limits Diner in White Plains, New York, and is currently a Manhattan Beer customer.

19.    Plaintiff Moderne Barn, Armonk, Inc. (hereinafter "Moderne Barn") is a limited liability corporation incorporated in Westchester County, New York.  Since 2010, Moderne Barn, Armonk, Inc. has operated a restaurant known as Moderne Barn in Armonk, New York, and is currently a Manhattan Beer customer.

20.    Plaintiff New Oceana Restaurant Corp. (hereinafter "Oceana") is a domestic business corporation incorporated in New York County, New York.  Since 2009, New Oceana Restaurant Corp. has operated a restaurant known as Oceana Restaurant in New York City, and is currently a Manhattan Beer customer.

21.    Plaintiff Great Food 57th St LLC (hereinafter "Hudson West") is a limited liability corporation incorporated in New York County, New York.  Since January 2017, Great Food 57th St LLC has operated a restaurant formerly known as Ousia until July 1, 2021, and now called Hudson West, in New York City, and is currently a Manhattan Beer customer.

22.    Plaintiffs City Limits, Moderne Barn, Oceana, and Hudson West (collectively, "Livanos Group") are operated by the Livanos Restaurant Group.

23.    Plaintiff 251 E. Main St., LLC (hereinafter "The Village Social") is a limited liability corporation incorporated in Westchester County, New York.  Since 2009, 251 East Main Street LLC Corp. has operated a restaurant known as The Village Social in Mount Kisco, New York and is currently a Manhattan Beer customer.

24.     Plaintiff 67 Purchase St LLC (hereinafter "Village Social Rye") is a limited liability corporation incorporated in Westchester County, New York.  Since January 2016, 67 Purchase St LLC has operated a restaurant known as Village Social Kitchen and Bar in Rye, New York, and is currently a Manhattan Beer customer.

25.     Plaintiff Pub Street Pleasantville LLC (hereinafter "Pubstreet") is a limited liability corporation incorporated in Westchester County, New York.  Since August 2017, Pub Street Pleasantville LLC has operated a restaurant known as Pubstreet in Pleasantville, New York, and is currently a Manhattan Beer customer.

26.     Plaintiff Locali Kitchen & Bar LLC (hereinafter "Locali") is a limited liability corporation incorporated in Westchester County, New York.  Since March 2019, Locali Kitchen & Bar LLC has operated a restaurant known as Locali in Mount Kisco, New York, and is currently a Manhattan Beer customer.

27.     Plaintiffs The Village Social, Village Social Rye, Pubstreet, and Locali (collectively, "Village Social") are operated by the Village Social Restaurant Group.

28.     Defendant Manhattan Beer Distributors, LLC has been in the business of beer and beverage distribution since 1978 and is headquartered in the Bronx, New York.  The Company maintains five separate facilities across Rockland County, the City of New York, and Long Island, including 1.5 million square feet of warehousing, and services more than 23,000 customers in the Greater NY Metro area.[2]

---

[2] Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC%20%232.pdf (last visited May 31, 2022).

29.    Defendant Simon Bergson ("Bergson") is Manhattan Beer's founder and, upon information and belief, both its CEO and President.  Bergson directs and controls the sales and billing operations of the Company.

30.    Defendant Michael McCarthy ("McCarthy") is Manhattan Beer's Senior Vice President of Operations.  McCarthy has held this position since 1998.  McCarthy is in charge of warehousing and distribution for all brands of beer that Manhattan Beer sells.

## FACTUAL ALLEGATIONS

### I.    THE RACKETEERING ENTERPRISE – THE "WHO"

### A.    The Distributor: Manhattan Beer

31.    Defendant Manhattan Beer Distributors, LLC has been in the business of beer and beverage distribution since 1978 and is headquartered in the Bronx, New York.

32.    Manhattan Beer delivers beer as well as other beverages subject to bottle deposits to Plaintiffs and the Class.  As part of its deliveries, Manhattan Beer generates fraudulent invoices that hide its deceptive 10 cent add-on fee for the bottled beverages.

33.    As of 2016, an article linked to the Company's website reported that Manhattan Beer was selling more than 45 million cases of beer per year.[3]  Today that figure is undoubtedly higher.  If Manhattan Beer added an extra 10 cents onto just half of the 45 million cases it delivers annually—*i.e.*, 22.5 million cases—the Company would still be pocketing an extra $2,250,000 per year.  As the saying goes, that's a lot of beer money.

### B.    The Mastermind: Simon Bergson

34.    Defendant Simon Bergson is Manhattan Beer's founder, and its CEO and President.

---

[3] Wholesaler of the Year: Manhattan Beer Distributors, BEVERAGE INDUSTRY, Sept. 2016, at 20–26 http://www.manhattanbeer.com/Content/PDF/BevWorld_Sept2016.pdf (last visited May 31, 2022).

35.    Defendant Bergson directs and controls the sales and billing operations of the Company and is fully aware of the fraudulent invoice scam his Company operates.  Upon information and belief, he directed, developed, substantially assisted in, or otherwise knew about Manhattan Beer's misleading and deceptive billing practices.

36.    Defendant Bergson is a key decision maker at Manhattan Beer.  According to a February 2016 article by beer industry publication Beverage World that included an interview with Bergson, he is a "very hands-on CEO."[4]

**C.    The Facilitator: Michael McCarthy**

37.    Defendant Michael McCarthy is Manhattan Beer's Senior Vice President of Operations.  McCarthy has held this position since 1998.

38.    Defendant McCarthy is in charge of warehousing and distribution for all the brands of beer that Manhattan Beer sells to its customers and is fully aware of the fraudulent invoice scam the Company operates.  Upon information and belief, he directed, developed, substantially assisted in, or otherwise knew about Manhattan Beer's misleading and deceptive billing practices.

39.    Defendant McCarthy is a key decision maker at Manhattan Beer and is a member of its executive team.  For example, McCarthy has been mentioned in the United States House of Representatives as being part of the "leadership" of Manhattan Beer.[5]  In a 2008 profile of Manhattan Beer by beer industry publication Beverage Industry that is linked from Manhattan

---

[4] Andrew Kaplan, They can make it anywhere, BEVERAGE WORLD, Feb. 2016, at 44–48 http://www.manhattanbeer.com/Content/PDF/Bev_World_MBD_Feb_2016.pdf (last visited May 31, 2022.

[5] 148 CONG. REC. E67-01 (daily ed. Feb. 4, 2002) (statement of N.Y. State Sen. Serrano).

Beer's website, McCarthy was featured as one of Manhattan Beer's key executives.[6]  Defendant McCarthy reports to Bergson and works closely with him.  As of 2016, McCarthy oversaw annually the delivery of approximately 45 million cases of beer to Manhattan Beer customers.

## II.    HOW THE RACKETEERING ENTERPRISE WORKS – THE "WHAT," "WHERE," "WHEN," AND "WHY"

### A.    The Fraudulent Invoices

40.    The scheme starts with Manhattan Beer's deliveries.   Manhattan Beer delivers cases and kegs of beer as well as other beverages subject to bottle deposits.  During deliveries, Manhattan Beer drivers generate invoices using internet-connected handheld devices that are provided to drivers by the Company.  The invoices list the delivered products by Item number, Quantity, Description, Price, DISC (for discount), DPST (for deposit), and the amounts billed for these line items.

41.    Unbeknownst to its customers, and integral to the racketeering enterprise, Manhattan Beer includes in its invoices for 24-bottle cases of beer a secretive, 10-cent charge that masquerades as a lawful component of the bottle deposit to be collected by a "Distributor" or "deposit initiator," like Manhattan Beer, as mandated by the Bottle Bill.  Through these deceptive invoices, Manhattan Beer makes the following material misrepresentations and omissions:

    a.    Manhattan Beer misrepresents that the $1.30 charge on their invoices to customers for 24-bottle cases is a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge is only $1.20;

    b.    Manhattan Beer fails to disclose that it is adding a 10-cent surcharge to each case of beer or other beverages subject to bottle deposits sold;

---

[6] Sarah Theodore, Manhattan Beer Distributors: Big City Wholesaler Keeps Its Focus Small, BEVERAGE INDUSTRY, Feb. 2008, at 32–34, 36, 38–39, http://www.manhattanbeer.com/Content/PDF/bev_industry.pdf (last visited May 31, 2022).

c. Manhattan Beer fails to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

d. Manhattan Beer misrepresents that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices is required and mandated by the government.

42. Because the 10-cent surcharge is included in the same invoice line item as the lawful $1.20 bottle deposit charge, the invoices are less likely to raise suspicion with customers that the charge is anything other than what is required by law. Manhattan Beer bills for the surcharge as just another portion of the bottle deposit. There is no indication on Manhattan Beer's invoices that the charge is actually separate from, and in addition to, deposits required by the Bottle Bill.

43. Manhattan Beer has a duty to disclose the true nature of its $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill, because of its superior knowledge of the beer distribution industry, its superior knowledge of its own business practices, and as the author of the invoices provided to Plaintiffs and the Class.

44. A reasonable consumer expects that a reputable business will not include hidden extra fees on invoices or receipts. Moreover, a reasonable consumer also relies on the veracity of presented invoices, including those invoices like Defendants' that list a "DPST" charge that includes bottle deposit charges mandated by state law. If it says "Deposit" on the invoice, and the consumer had purchased bottles of beer or other beverages subject to bottle deposits, then the consumer would have no reason to suspect that charges required by law also included undisclosed surcharges imposed by the seller.

45. Manhattan Beer's invoices also do not disclose why it is charging a hidden 10-cent surcharge on each 24-bottle case of beer or other beverages subject to bottle deposits. The Company likewise failed to disclose that the 10-cent surcharge for 24-bottle cases of alcoholic

beverages is not a required payment under the Bottle Bill, and therefore customers don't have to pay it.

46.     That its billing is a carefully constructed stratagem to mislead customers is further evidenced by the fact that the Company charges the $1.30 deposit only on 24-bottle cases, but not 24-can cases.  Thus for the same 12 ounces of Coors Light, for example, Manhattan Beer charges a $1.30 deposit for the 24-bottle case, but $1.20 for the 24-can case.

47.     Further evidence of the Company's and Defendants Bergson and McCarthy's malintent is the fact that the Company does not impose the fraudulent 10-cent add-on fee on all its customers.  Rather, upon information and belief, the Company selectively excludes its bigger, more sophisticated customers from the 10-cent surcharge.  The Company and the individual racketeering Defendants Bergson and McCarthy know that customers who buy large quantities of beverages are more likely to notice and protest the deceptive charges.

48.     Manhattan Beer knew or should have known that its customers would rely on the Company's invoices to accurately include only those deposits required by the Bottle Bill.  Further, the Company well knew that its customer base, especially small business owners like Plaintiffs, would consider receiving accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

49.     Defendants have no good faith justification for their deceptive billing scheme.  The only reason they charge this fee is profiteering and/or price gouging, a stark demonstration of their bad faith.

50.     Upon information and belief, Defendants have been charging their customers the illegal $1.30 on all 24-bottle cases delivered regardless of the brand—except, upon information

and belief, the Company does not charge the illegal add-on fee to its more sophisticated customers, like supermarkets.

      **B.**      **The New York Bottle Bill and How Manhattan Beer Abuses It**

      51.     Defendants further defraud Plaintiffs and the Class by masquerading the 10-cent surcharge as a deposit required by New York's Bottle Bill.

      52.     New York's Bottle Bill requires that Manhattan Beer and other "deposit initiators" or "Distributors" charge a deposit fee, which is currently 5 cents per "beverage container."  N.Y. ENV'T CONSERV. LAW § 27-1005; *see also Bottle Refund*, THE OFFICIAL WEBSITE OF THE CITY OF NEW YORK,  https://portal.311.nyc.gov/article/?kanumber=KA-02477 ("You pay a five cent deposit when buying some bottles or cans in New York State.") (last visited Feb. 18, 2022).

      53.     The term "beverage container" is defined by statute and means the "individual, separate, sealed glass, metal, aluminum, steel or plastic bottle, can or jar used for containing less than 1 gallon or 3.78 liters at the time of sale or offer for sale of a beverage intended for use or consumption in New York."  N.Y. ENV'T CONSERV. LAW § 27-1003; *see also Frequently Asked Questions About the Bottle Bill*, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, https://www.dec.ny.gov/chemical/57687.html (last visited Feb. 18, 2022).

      54.     Accordingly, when a "deposit initiator" or "Distributor" like Manhattan Beer "engages in the sale or offer for sale of beverages in beverage containers," the only item that Manhattan Beer can collect a bottle deposit on is the beverage container.  N.Y. ENV'T CONSERV. LAW § 27-1003.

      55.     A New York State regulation promulgated to facilitate the "orderly and effective implementation" of the Bottle Bill, 6 N.Y.C.R.R. § 367.1, forbids "contracts or agreements entered into between or among persons subject to" the Bottle Bill from being "designed" to hinder or frustrate the purpose or intent of this Part."  6. N.Y.C.R.R. § 367.12.

56.    Under the Bottle Bill, Manhattan Beer is thus bound to charge only 5 cents for each beer or other beverage subject to a bottle deposit sold.  This means that for a 24-bottle case of beer, the deposit charge pursuant to the Bottle Bill should be $1.20: 24 bottles x $0.05.  Instead, Manhattan Beer fraudulently imposes a 10-cent surcharge for each case of bottled beer or other beverage subject to a bottle deposit, hiding this charge as part of a deposit fee without any disclosure as to the basis for the charge or how the total $1.30 deposit charge is calculated.

57.    Manhattan Beer's use of an unlawful and undisclosed 10-cent surcharge blended into its bottle "DPST" invoice line-item means that the Company is intentionally trying to deceive customers into believing the $1.30 is a lawful deposit charge.  A reasonable consumer acting reasonably under the circumstances is highly likely to be confused or misled by Manhattan Beer conflating its private fee with a statutorily imposed one and providing no information on the additional charge.  Reasonable consumers would further believe that the 10-cent charge is non-negotiable, and in fact required due to state action.  Simply put, the 10-cent surcharge is nothing more than a scam charge designed by Defendants to further line the pockets of the Company, its owner Defendant Simon Bergson, and executives like Defendant Michael McCarthy.

58.    Consumers rely on the integrity of Manhattan Beer's invoices to accurately reflect charges required by law, such as taxes and the deposits required by New York's Bottle Bill.  Thus, the scheme amounts to Manhattan Beer misusing New York's bottle law as a guise to boost its profits at the expense of its customers.

59.    As a result of Defendants' misleading practices, tens of thousands of unsuspecting consumers are being fleeced by Manhattan Beer out of many millions of dollars in hidden charges. Defendants' scam is unethical, oppressive, and unlawful.

III.    **HOW MANHATTAN BEER DECEIVED CUSTOMERS LIKE**
        **PLAINTIFFS**

60.    In November 2015, Plaintiff Cap 111 opened a small restaurant called Armonk House in Armonk, New York.  Like any restaurant with a liquor license, Armonk House offered patrons beer and contacted Manhattan Beer for delivery of its carried brands.

61.    As described above, the Livanos Restaurant Group operates Plaintiffs City Limits, Moderne Barn, Oceana, and Hudson West.  All of these restaurants have liquor licenses, offer patrons beer, and each contacted Manhattan Beer for delivery of its carried brands.

62.    As described above, the Village Social Restaurant Group operates Plaintiffs The Village Social, Village Social Rye, Pubstreet, and Locali.  All of these restaurants have liquor licenses, offer patrons beer, and each contacted Manhattan Beer for delivery of its carried brands.

63.    On or about August 13, 2017, Plaintiff Pub Street Pleasantville LLC signed a document authored and provided by Defendant Manhattan Beer titled "CREDIT APPLICATION," attached hereto as **Exhibit A**.  On or around the same day, Pubstreet submitted the application to Manhattan Beer.  The CREDIT APPLICATION document set forth "Terms and Conditions" for purchases Pubstreet would make from Manhattan Beer.  The CREDIT APPLICATION (the "Contract"), which governed the obligations of both Manhattan Beer and Pubstreet for purchases and deliveries of beer as well as other beverages subject to bottle deposits, is a contract between Pub Street Pleasantville LLC and Manhattan Beer.

64.    The Contract provides that "[a]ll products covered by invoices issued on credit" purchased from Manhattan Beer "are sold subject to the terms of sale set forth in the New York Alcoholic Beverage Control Law section 101-aa, and amendments thereto, and all rules, regulations, or orders promulgated thereunder . . . ."  Ex. A at 2.

65.     On information and belief, Plaintiffs and the Class were required to enter into identical contracts as the one between Manhattan Beer and Pubstreet, or contracts that were substantially the same as to all material terms.

66.     After entering into agreements with the Company , Plaintiffs placed orders with Manhattan Beer typically in one of two different ways:  (i) by logging into Manhattan Beer's customer portal on its website, and (ii) by calling Manhattan Beer's sales representatives to place orders via telephone.

67.     Thereafter, Manhattan Beer delivered cases and kegs of beer as well as other beverages subject to bottle deposits to Plaintiffs pursuant to the Contracts.  During the deliveries for those orders, Manhattan Beer drivers generated invoices using internet-connected handheld devices that are provided to drivers by the Company.  The invoices listed the delivered products by Item number, Quantity, Description, Price, DISC (for discount), DPST (for deposit), and the amounts billed for these line items.

68.     On information and belief, the servers accessed by the internet-connected handheld devices used by Manhattan Beer's drivers are not located in the state of New York.

69.     A copy of five representative Manhattan Beer invoices paid by the Armonk House dated July 18, 2018, July 7, 2018, February 7, 2018, January 13, 2018, and August 31, 2017, are attached hereto as **Exhibit B**.  The five attached Armonk House invoices from 2017 and 2018 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Coors Light, Corona Extra, and Heineken K2.

70.     A copy of four representative Manhattan Beer invoices paid by the Livanos Group dated March 1, 2022 (p. 1, City Limits), January 5, 2022 (p. 2, Moderne Barn), May 19, 2021 (p. 3, Oceana), and December 3, 2021 (p. 4, Hudson West) are attached hereto as **Exhibit C**.  The

four attached Livanos Group invoices from 2021 and 2022 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Coors Light, Corona Extra, Heineken K2, Samuel Adams Boston Lager, San Pellegrino (sparkling water), Amstel Light, and Heineken Premium Light.

71.    A copy of four representative Manhattan Beer invoices paid by Village Social dated January 25, 2022 (p. 1, The Village Social), February 4, 2022 (p. 2, Village Social Rye), February 2, 2022 (p. 3, Pubstreet), and February 24, 2022 (p. 4, Locali) are attached hereto as **Exhibit D**. The four attached Village Social invoices from 2022 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Ithaca Flower Power, Heineken K2, Heineken 0.0 (non-alcoholic beer), Coors Light, Switchback Ale, Corona Extra, and Estrella.

72.    Plaintiff Livanos Group pays Manhattan Beer's invoices, including the 10-cent surcharge, via the U.S. mails and/or interstate wires.  Until approximately 2019, Livanos Group restaurants paid for Manhattan Beer orders by sending checks via the U.S. mail.  Since approximately 2019, after Manhattan Beer updated its customer portal, Livanos Group now pays for orders via the Manhattan Beer website's customer portal.

73.    Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the U.S. mails and/or interstate wires.  Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail.  Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

74.    On information and belief, the server used by Manhattan Beer's website is not located in the state of New York.

75.    Plaintiffs relied on Manhattan Beer's invoices to accurately itemize all charges, including the deposit required by the Bottle Bill.  But Manhattan Beer hid a 10-cent surcharge for each case of bottled beer inside the Bottle Bill charge.  Thus, Plaintiffs relied on and were harmed by Defendants' omissions and misrepresentations when they paid the full deposit charges listed on the Company's invoices.

76.    But for Defendants' material representations and omissions, Plaintiffs would not have paid Manhattan Beer's fraudulent 10-cent surcharge.  Indeed, no reasonable consumer who knew the truth about Manhattan Beer's fraudulent 10-cent surcharge would have chosen to pay this charge.  If Plaintiffs had known the truth about the bottle deposit add-on charge, it could have tried to have the add-on charges removed.

## IV.    DEFENDANTS' UNSCRUPULOUS AND FRAUDULENT BILLING PRACTICES RUN AFOUL OF NEW YORK'S CONSUMER FRAUD STATUTE, NEW YORK'S BOTTLE BILL, CONTRACT LAW, AND THE COMMON LAW

77.    Defendants' unfair and deceptive billing acts and practices violate N.Y. GEN. BUS. LAW § 349 as follows:

    a.    Manhattan Beer misrepresents that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

    b.    Manhattan Beer fails to disclose that it was adding a 10-cent surcharge to each 24-bottle case of beer or other beverage subject to a bottle deposit sold;

    c.    Manhattan Beer fails to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

    d.    Manhattan Beer misrepresents that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

78.    Manhattan Beer likewise made the following misrepresentations and omissions that defrauded its customers and violated the common law:

    a.  Manhattan Beer misrepresents that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

    b.  Manhattan Beer fails to disclose that it was adding a 10-cent surcharge to each case of beer or other beverage subject to a bottle deposit sold;

    c.  Manhattan Beer fails to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

    d.  Manhattan Beer misrepresents that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

79.    Manhattan Beer fraudulently concealed from Plaintiffs and the Class the true nature of its $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill.

80.    Manhattan Beer had a duty to fully and accurately disclose to all its customers, like Plaintiffs and the Class, the 10-cent add-on fee hidden in its deposit charge because of its superior knowledge of the beer distribution industry, its superior knowledge of its own business practices, and as the author of the standard beverage invoices it provided to Plaintiffs and the Class.

81.    Manhattan Beer's omissions and representations are false and deceptive, and designed to take advantage of consumers' good faith and the lack of consumers' knowledge of the beverage distribution market and the Bottle Bill.

82.    Manhattan Beer's omissions and representations are intentional, as it hides the 10-cent surcharge in the deposits section of its invoices, conflating its own private charge with government-mandated bottle deposits.

83.    In the alternative, Manhattan Beer negligently misrepresents the nature of the 10-cent surcharge for cases of beer. As alleged above, Manhattan Beer had a duty to disclose the facts behind its 10-cent surcharge, and its failure to do so led Plaintiffs and the Class to believe that the entire $1.30 deposit charge was mandated by the government.

84.    Manhattan Beer was unjustly enriched by its misrepresentations and omissions, as consumers would not have paid the 10-cent surcharge for cases of beer had they known that it was not required by New York's Bottle Bill.

85.    Plaintiffs and other reasonable consumers expect honesty and integrity from suppliers and expected that Manhattan Beer would accurately disclose what it was charging customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit. Plaintiffs and the Class therefore reasonably relied on Manhattan Beer's invoices to accurately reflect the charge for government-mandated deposits. No consumer would agree to pay Manhattan Beer an extra 10 cents per case of beer if they knew the truth: that Manhattan Beer charges an extra 10 cents per case for no other reason than to inflate its profits at the expense of its customers.

86.    The Contract between Pubstreet and Manhattan Beer includes the parties' obligations regarding containers subject to New York's Bottle Bill and is therefore subject to all applicable rules and regulations.

87.    Manhattan Beer, by fraudulently including a 10-cent surcharge on Plaintiffs' invoices that is not authorized by the Bottle Bill, violated 6 N.Y.C.R.R. § 367.12, which forbids any "contract or agreement" that is "designed to hinder or frustrate the purpose or intent" of the Bottle Bill and its applicable rules and regulations.

88.    Manhattan Beer, by hindering and frustrating the purpose or intent of the Bottle Bill by using it to hide illegal 10-cent surcharges, breached the Contracts between Plaintiffs and Manhattan Beer.

89.    Plaintiffs and the Class were damaged as a result of Manhattan Beer's breach in the amount of 10 cents for every case of beer or other beverage subject to a bottle deposit Plaintiffs and the Class purchased that included the fraudulent 10-cent surcharge.

90.    Defendants acted in bad faith by hiding the fraudulent 10-cent surcharge in the same line item on invoices that contained legitimate bottle deposits pursuant to the Bottle Bill.

91.    Defendants violated the Bottle Bill by charging Plaintiffs and the Class an unlawful and misleading 10-cent surcharge masquerading as a deposit required by the Bottle Bill.

92.    Defendants' violations of New York's Bottle Bill are a public nuisance pursuant to the Bottle Bill, which states "[a] violation of this title, except as otherwise provided in this section and section 27-1012 of this title, shall be a public nuisance." N.Y. ENV'T CONSERV. LAW § 27-1015.7.

93.    Defendants' intentional misrepresentations and omissions, and Defendants' negligent misrepresentation, created this public nuisance by violating the Bottle Bill.

94.    The community at large is not harmed by the public nuisance that Defendants created.

95.    Plaintiffs and the Class, unlike the community at large, are harmed by the public nuisance that Defendants created. Plaintiffs and the Class are harmed by paying the unlawful and misleading 10-cent surcharge on cases of beer and other beverages subject to bottle deposits.

## RULE 9(B) ALLEGATIONS

96.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

97.    WHO:

- Manhattan Beer, in a scheme devised by Defendant Bergson, and acting through its corporate personnel including Defendant McCarthy, makes material misrepresentations and omissions of fact in the sale of beer and other beverages subject to bottle deposits.

98.    WHAT:

- Manhattan Beer makes material misrepresentations by hiding 10-cent surcharges on its invoices to customers for 24-bottle cases as a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20.

- Manhattan Beer makes material misrepresentations by representing on its invoices to customers that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

- Manhattan Beer makes material omissions by failing to disclose that it adds a 10-cent surcharge to each case of beer or other beverage subject to a bottle deposit sold.

- Manhattan Beer makes material omissions by failing to disclose that its 10-cent surcharge is not in fact a deposit required by the Bottle Bill.

- By hiding its 10-cent surcharge in the deposit column of its invoices, Manhattan Beer falsely and deceptively creates the impression that this charge is authorized and required by the Bottle Bill. Manhattan Beer makes these misrepresentations and omissions with respect to its 10-cent surcharge even though it knows that its customers will understand the extra charge to be required by the Bottle Bill. Manhattan Beer fails to inform customers the true nature of this charge.

99. WHERE:

- Manhattan Beer makes its material misrepresentations and omissions in its standard invoice to consumers which was received by Plaintiffs and upon which Manhattan Beer intended Plaintiffs to rely.

100. WHEN:

- Manhattan Beer made the material misrepresentations and omissions when it provided Plaintiff Cap 111 with, for example its July 18, 2018 invoice. Ex. B at 1. Manhattan Beer made the material misrepresentations and omissions when it provided Plaintiff Livanos Group with, for example its March 1, 2022 invoice. Ex. C at 1. Manhattan Beer made the material misrepresentations and omissions when it provided Plaintiff Village Social with, for example its January 25, 2022 invoice. Ex. D at 1. Manhattan Beer makes the same or substantially similar misrepresentations and omissions of material facts to all of its customers.

101.  WHY:

- Manhattan Beer, its CEO/President, Defendant Simon Bergson, and its Senior Vice President of Operations, Defendant Michael McCarthy— knowing that Plaintiffs and other reasonable consumers expect honesty and integrity from suppliers and expecting that Manhattan Beer would accurately disclose what it was charging customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit—made these material misrepresentations and omissions regarding its 10-cent surcharge with the purpose of inducing Plaintiffs and other Manhattan Beer customers to pay an extra 10 cents for every 24-bottle case of beer or other beverage subject to a bottle deposit.  As a direct result of these material misrepresentations and omissions, Manhattan Beer has successfully reaped millions in profits at the expense of its unsuspecting customers.

102.  HOW:

- Manhattan Beer and its CEO/President Defendant and senior Operations Officer Defendant McCarthy make material misrepresentations and fails to disclose material facts concerning the nature of its 10-cent surcharge for 24-bottle cases of beer by representing that the charge is in fact a government-mandated fee.  In reality, Manhattan Beer charges the extra 10 cents purely to reap extra profit from each sale.  Manhattan Beer uses at least two methods to take orders for beer or other beverages subject to bottle deposits:  (1) Manhattan Beer's customer portal on its website; and

(2) via telephone, by calling Manhattan Beer's sales representatives to place orders via telephone.

- On information and belief, the servers accessed by the internet-connected handheld devices used by Manhattan Beer's drivers and the servers accessed by Manhattan Beer's website are not located in the state of New York.

- Plaintiff Livanos Group pays Manhattan Beer's invoices, including the 10-cent surcharge, via the mails and/or wires. Until approximately 2019, Livanos Group paid for its Manhattan Beer orders by sending checks via the U.S. mail. Since approximately 2019, after Manhattan Beer updated its customer portal, Livanos Group now pays for orders via the Manhattan Beer website's customer portal.

- Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the mails and/or wires. Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail. Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

## CLASS ACTION ALLEGATIONS

103.    As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized billing misconduct directed toward the Class—and this case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving its customers.

104.    Defendants' misconduct did not meaningfully differentiate among individual Class Members in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions.  On information and belief, the hidden charges assessed to all of Manhattan Beer's customers are materially the same.  The objective facts on these subjects are the same for all Class Members.

105.    Plaintiffs sue on their own behalf and on behalf of the Class for monetary and equitable relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

106.    The Class is preliminarily defined as follows:

> All Manhattan Beer customers in the United States who purchased bottled beer from Manhattan Beer and were charged $1.30 as a deposit for 24-bottle cases during the applicable statute of limitations period up to and including the date of judgment.

107.    Excluded from the Class are:  Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

108.    Plaintiffs reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class.

109.    Plaintiffs allege that the Class encompasses tens of thousands of consumer entities who were likewise deceptively billed for 24-bottle cases of beer and other beverages subject to bottle deposits.  Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

110.    The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control.

Plaintiffs anticipate appropriate notice being sent to each Class Member in compliance with all applicable federal rules.

111.　　Plaintiffs are adequate class representatives. Their claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiffs and the other members of the Class were subject to the same or similar conduct engineered by the Defendants. Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

112.　　Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs have retained competent and experienced class action attorneys to represent its interests and those of the Class.

113.　　Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

　　　　a.　Whether Defendants Simon Bergson and Michael McCarthy used the U.S. mails and/or wires through interstate commerce in a racketeering enterprise to accomplish their fraudulent invoice scheme;

　　　　b.　Whether Defendants' conduct violates N.Y. GEN. BUS. LAW § 349;

　　　　c.　Whether Defendants' representations and/or omissions are fraudulent;

　　　　d.　Whether Defendants owed a duty of care to Plaintiffs and the Class and violated that duty;

　　　　e.　Whether Defendants were unjustly enriched as a result of their conduct;

　　　　f.　Whether Class Members have been injured by Defendants' conduct;

　　　　g.　Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

　　　　h.　The extent of class-wide injury and the measure of damages for those injuries.

114.    A class action is superior to all other available methods for resolving this controversy because (i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; (iii) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and (iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

115.    Further, the following issues are also appropriately resolved on a class-wide basis under FED. R. CIV. P.  23(c)(4):

a.    Whether Defendants Simon Bergson and Michael McCarthy used the U.S. mails and/or wires through interstate commerce in a racketeering enterprise to accomplish their fraudulent invoice scheme;

b.    Whether Defendants' conduct violates N.Y. GEN. BUS. LAW § 349;

c.    Whether Defendants' representations and/or omissions are fraudulent;

d.    Whether Defendants owed a duty of care to Plaintiffs and the Class and violated that duty;

e.    Whether Defendants were unjustly enriched as a result of their conduct;

f.    Whether Class Members have been injured by Defendants' conduct; and

g.    Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

116.    Accordingly, this action satisfies the requirements set forth under FED. R. CIV. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

## COUNT I

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CONSPIRACY, 18 U.S.C. § 1962(d)

## (AGAINST DEFENDANTS SIMON BERGSON AND MICHAEL MCCARTHY)

117.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

### (i)    The Enterprise

119.    Defendant Manhattan Beer Distributors, LLC, a limited liability company incorporated in the state of New York, is a RICO enterprise pursuant to 18 U.S.C. § 1961(4).  The company affects interstate commerce by ordering beer from out of state suppliers and in other ways in commerce with out of state companies.  On information and belief, Manhattan Beer's servers are not located in the state of New York and its wire transmissions are made in interstate commerce.

### (ii)    The RICO Defendants

120.    At all relevant times, as described below, in violation of 18 U.S.C. § 1962(d), Defendants Simon Bergson and Michael McCarthy agreed to conduct Manhattan Beer Distributors, LLC through a pattern of racketeering activity (the fraudulent invoice scheme), which they have devised and carry out on a daily basis using interstate wires and knowing that their customers will use the U.S. mail and/or interstate wires to pay the excess charges imposed on each bottle of beer and other beverages subject to bottle deposits sold.  This racketeering activity violates 18 U.S.C. § 1962(c).  Their joint efforts as conspirators violates 18 U.S.C. § 1962(d),

which prohibits conspiracies to violate RICO. Additionally, Defendants Bergson and McCarthy are in the management of the enterprise. As alleged, Bergson is the CEO of the Company, and McCarthy is a member of the Company's executive team and reports to Bergson and works closely with him.

### (iii)   The Racketeering Activity

121.   Bergson and McCarthy use Manhattan Beer's legitimate beer and beverage distribution activities as cover to carry out the fraudulent invoice scheme, with Manhattan Beer delivering beer with invoices it created that misrepresent and conceal the truth of the 10-cent surcharge. Defendants Bergson and McCarthy share in the extra profits generated as a result of the scheme.

122.   For example, in July 2018, Manhattan Beer generated a deceptive invoice for Plaintiff Cap 111 that included a 10-cent surcharge masquerading as a government-mandated deposit under the Bottle Bill. The invoice failed to disclose that in addition to the $1.20 deposit fee required for a case of 24-bottles, than it added a 10-cent surcharge that was not required by the Bottle Bill. Manhattan Beer's invoices were designed so that customers would think the extra 10 cents was a required deposit.

123.   As another example, in February 2022, Manhattan Beer generated a deceptive invoice to Plaintiff Village Social that included a 10-cent surcharge masquerading as a government-mandated deposit under the Bottle Bill. The invoice failed to disclose that in addition to the $1.20 deposit fee required for a case of 24-bottles, than it added a 10-cent surcharge that was not required by the Bottle Bill. Manhattan Beer's invoices were designed so that customers would think the extra 10 cents was a required deposit.

124.    As yet another example, in March 2022, Manhattan Beer generated a deceptive invoice for Plaintiff Livanos Group that included a 10-cent surcharge masquerading as a government-mandated deposit under the Bottle Bill.  The invoice failed to disclose that in addition to the $1.20 deposit fee required for a case of 24-bottles, than it added a 10-cent surcharge that was not required by the Bottle Bill.  Manhattan Beer's invoices were designed so that customers would think the extra 10 cents was a required deposit.

125.    Bergson and McCarthy control and direct the affairs of the enterprise and use the other members of the enterprise as instrumentalities to carry out the fraudulent invoice scheme. These practices include (i) formulating and devising invoices that are deceptive due to material misrepresentations and omissions, and are misleading, unclear and ambiguous, (ii) creating the net impression that the 10-cent surcharge was a government-mandated deposit under the Bottle Bill; and (iii) omitting the 10-cent surcharge for sophisticated customers, like large supermarkets, which are more likely to notice and object to the fraudulent invoice scheme.

### (iv)    The Predicate Acts

126.    Defendants' systematic scheme to charge Manhattan Beer customers an illegal, 10-cent surcharge on 24-bottle cases of beer and other beverages subject to bottle deposits, as described in the paragraphs incorporated by reference from above, was facilitated by the use of the United States Mail and wires in interstate commerce.

127.    As set forth in detail below, Defendants' scheme constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), and as acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.  Defendants used mail and wire in violation of 18 U.S.C. §§1341 and 1343 in furtherance of their scheme to defraud Manhattan Beer's customers by using the fraudulent invoice scheme to obtain money from customers using false and/or fraudulent and misleading pretenses.

128.    Through the mail and interstate wires, Defendants took orders from Plaintiffs and the Class, made material misrepresentations and omissions on Manhattan Beer invoices, and accepted payment for Manhattan Beer's misleading invoices designed to lure customers into paying the illegal 10-cent surcharge and thereafter remain unaware that they had done so.

129.    Plaintiffs and the Class placed orders with Manhattan Beer in at least two different ways.  First, by logging into Manhattan Beer's customer portal on its website.  Second, by calling Manhattan Beer's sales representatives to place orders via telephone.

130.    On information and belief, the server accessed by the internet-connected handheld devices used by Manhattan Beer's drivers is not located in the state of New York.

131.    On information and belief, the server used by Manhattan Beer's website is not located in the state of New York.

132.    Plaintiff Livanos Group pays Manhattan Beer's invoices, including the 10-cent surcharge, via the mails and/or wires.  Until approximately 2019, Livanos Group paid for Manhattan Beer orders by sending checks via the U.S. mail.  Since approximately 2019, after Manhattan Beer updated its customer portal, Livanos Group now pays for orders via the Manhattan Beer website's customer portal.

133.    Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the mails and/or wires.  Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail.  Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

134.    Defendants' invoices concealed the true nature of the 10-cent surcharge and disguised it a part of the lawful deposit fee required by the Bottle Bill to fraudulently induce Manhattan Beer customers to pay the extra fee.

135.    Through the mail and wire, Defendants collected the illegal 10-cent surcharge that Manhattan Beer consumers were defrauded into paying by Manhattan Beer invoices containing material misrepresentations and omissions.

136.    Defendants' omissions and misrepresentations were material to Plaintiffs and the members of the Class.  Had Defendants made full, accurate and honest disclosures about the 10-cent surcharge, Plaintiffs would have been aware that it was not a lawful deposit pursuant to the Bottle Bill and would have challenged this extra fee or would not have paid it.  Each of these omissions and/or misrepresentations constituted an act of mail and/or wire fraud for purposes of 18 U.S.C. §§ 1341 and 1343.

137.    By using the United States Mails to collect payment of the illegal 10-cent surcharge that was the fruit of their fraudulent invoice scheme, Defendants engaged in repeated acts of mail fraud in violation of 18 U.S.C. § 1341.

138.    Additionally, by using the internet, telephone and facsimile transmissions to communicate false and misleading information about the fraudulent invoice scheme to customers in order to pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of 18 U.S.C. §1343.

139.    In pursuing their fraudulent invoice scheme, Defendants knowingly and fraudulently concealed and/or omitted material information from Plaintiffs and members of the Class.

140.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§1961(5) and 1962(c).  In particular, each deceptive invoice provided to Plaintiffs and the Class was an act of racketeering activity.  Further, Plaintiffs have been subjected to Bergson and McCarthy's deception for a period spanning more than two years.

Each Plaintiff received at least one fraudulent invoice generated by Manhattan Beer drivers' internet-connected handheld devices and paid multiple illegal 10-cent surcharges by the United States Mails and/or the Manhattan Beer website's customer portal.

141.    All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the enterprise.  The racketeering acts committed by the enterprise employed a similar method (the fraudulent invoice), were related (all for Manhattan Beer deliveries), had a similar purpose (to deceive consumers into paying a 10-cent surcharge), involved similar participants (Bergson and McCarthy), and resulted in a similar impact on Plaintiffs and members of the Class (the collection of unlawful fees).  Because this case is brought on behalf of a class of similarly situated Manhattan Beer customers whom Manhattan Beer, Bergson, and McCarthy charged fraudulent fees, Plaintiffs will provide further details once discovery is complete.  While Plaintiffs cannot plead the precise dates of all of Defendants' uses of the U.S. mail and interstate wires, because this information cannot be alleged without access to Defendants' records, Plaintiffs have plead dates known to them.

142.    The pattern of racketeering activity is currently ongoing and open-ended and threatens to continue indefinitely unless this Court enjoins the racketeering activity.  Defendants' fraudulent invoice scheme is centered around Defendants' delivery of cases of beer and other beverages subject to bottle deposits to Manhattan Beer's customers and is an ongoing wrongful scheme that has been repeated millions of times a year for many years.  It is the regular way Bergson and McCarthy conduct the business of the enterprise.   Plaintiffs are small businesses from the New York City metropolitan area.  They were deceived by fraudulent invoices delivered beginning no later than February 18, 2016.  The fraudulent invoice scheme is continuing through present day.

143.    As set forth in the paragraphs incorporated by reference from above, in violation of 18 U.S.C. § 1962(d), Defendants Simon Bergson and Michael McCarthy conspired to violate the provisions of 18 U.S.C. § 1962(c).

144.    As a direct and proximate result of these violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs and members of the Class have suffered substantial damages and been injured in their business or property by the predicate acts which make up Defendants Bergson and McCarthy's pattern of racketeering activity that comprises the fraudulent invoice scheme.  Plaintiffs also seek an injunction pursuant to §1964(a) prohibiting Defendants from further engaging in the fraudulent invoice scheme.

## COUNT II

## NEW YORK GENERAL BUSINESS LAW § 349

## (AGAINST ALL DEFENDANTS)

145.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

146.    Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349 on their own behalf and on behalf of each member of the Class.

147.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. GEN. BUS. LAW § 349.

148.    Defendants' billing practices are consumer-oriented in that they are directed at small businesses, which are members of the consuming public.

149.    Defendants Manhattan Beer, LLC, its President/CEO Simon Bergson, and its Senior Vice President of Operations Michael McCarthy have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349 including:

    a.  Misrepresenting that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

    b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

    c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

    d.  Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by governmental authority.

150.    The aforementioned acts are unfair, unconscionable, and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

151.    As a direct and proximate result of Defendants' unlawful and deceptive billing practices, Plaintiffs and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action.

152.    Plaintiffs and the members of the Class further seek equitable relief against Defendants. Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices to be unlawful, an order enjoining Defendants from engaging in any further unlawful conduct, and an order directing Defendants to return to the Plaintiffs and the Class all amounts wrongfully assessed and/or collected.

153.    As a result of Defendants' unfair and deceptive practices, Plaintiffs and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their

damages, costs and reasonable attorneys' fees and all other relief available under N.Y. GEN. BUS.

LAW § 349.

## COUNT III

### COMMON LAW FRAUD

### (AGAINST ALL DEFENDANTS)

154.    Plaintiffs reallege and incorporate by reference each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

155.    Plaintiffs brings this common law fraud claim on their own behalf and on behalf of

each member of the Class.

156.    Defendants Manhattan Beer, its President/CEO Simon Bergson, and Senior Vice

President of Operations Michael McCarthy made material misrepresentations and concealed

material facts concerning their bottle deposit charges including:

      a.  Misrepresenting that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

      b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

      c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

      d.  Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by governmental authority.

157.    Defendants had a legal duty to charge customers only those bottle deposit amounts

that were authorized by law, and not deviate from the law's mandated amount with their 10-cent

add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate

basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

158.    Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

159.    Defendants' material misrepresentations and omissions were willful and intentional and were committed to boost Defendants' profits at Plaintiffs' and the Class's expense.

160.    The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiffs and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

161.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiffs and the Class.

162.    Plaintiffs were unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

163.    Plaintiffs and the Class reasonably relied on Defendants' misrepresentations and omissions.

164.    Defendants' fraud by misrepresentation and concealment caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

165.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being with the intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

<div align="center">

**COUNT IV**

**FRAUDULENT CONCEALMENT**

**(AGAINST ALL DEFENDANTS)**

</div>

166.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

167.    Plaintiffs bring this fraudulent concealment claim on their own behalf and on behalf of each member of the Class.

168.    Defendants Manhattan Beer, its President/CEO Simon Bergson, and Senior Vice President of Operations Michael McCarthy concealed material facts concerning their bottle deposit charges including:

  a.  Failing to disclose that the $1.30 charge on their invoices to customers for 24-bottle cases was not a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

  b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

  c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

  d.  Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was not required and mandated by governmental authority.

169.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

<div align="center">39</div>

170.    Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

171.    Defendants' material omissions were willful and intentional and were committed simply to boost Defendants' profits at Plaintiffs' and the Class's expense.

172.    The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiffs and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

173.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class.

174.    Plaintiffs were unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

175.    Plaintiffs and the Class reasonably relied on Defendants' omissions.

176.    Defendants' fraudulent concealment caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

177.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being with the sole intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

## COUNT V

## NEGLIGENT MISREPRESENTATION

## (AGAINST ALL DEFENDANTS)

178.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

179.   Plaintiffs bring this negligent misrepresentation claim on its own behalf and on behalf of each member of the Class.

180.   Defendants Manhattan Beer and its President/CEO Simon Bergson failed to disclose material facts concerning their bottle deposit charges including:

    a.   Failing to disclose that the $1.30 charge on their invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

    b.   Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer sold;

    c.   Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

    d.   Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was not required and mandated by governmental authority.

181.   Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee. Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

182.   Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

183.    Defendants' failure to disclose these material facts led Plaintiffs and the Class to incorrectly believe that the 10-cent add-on fee was charged pursuant to the Bottle Bill.

184.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because the information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class.

185.    Plaintiffs were unaware of these material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

186.    Manhattan Beer understands that customers like Plaintiffs and the Class desire accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

187.    Plaintiffs and the Class reasonably relied on Defendants' omissions.

188.    Defendants' negligent misrepresentation caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

189.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT VI

### UNJUST ENRICHMENT

### (AGAINST ALL DEFENDANTS)

190.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

191.    Plaintiffs and the Class Members would not have paid the 10-cent add-on charge had they known the truth about Defendants' impermissible and illegal billing practices.

192.    By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit beyond what was contemplated by the parties at the expense of Plaintiffs and Class Members.

193.    It would be unjust and inequitable for Defendants to retain the payments Plaintiffs and Class Members paid for impermissible add-on bottle deposit charges.

194.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT VII

### BREACH OF CONTRACT

### (AGAINST ALL DEFENDANTS)

195.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

196.    Plaintiffs and the Class entered into valid contracts with Manhattan Beer for purchasing beer and other beverages subject to bottle deposits.

197.    Pursuant to the contracts, Plaintiffs and all Class Members agreed to pay Manhattan Beer according to the terms stated in the contracts and did so.

198.    Manhattan Beer is forbidden from designing contracts or agreements that "hinder or frustrate the purpose or intent" of the Bottle Bill and its applicable rules and regulations.  6 N.Y.C.R.R. § 367.12.

199.    New York's Bottle Bill requires that Manhattan Beer and other "deposit initiators" charge a deposit fee, which is currently 5 cents per "beverage container."  N.Y. ENV'T CONSERV. LAW § 27-1005.

200.    The term "beverage container" is defined by statute and means the "individual, separate, sealed glass, metal, aluminum, steel or plastic bottle, can or jar used for containing less than 1 gallon or 3.78 liters at the time of sale or offer for sale of a beverage intended for use or consumption in New York."  N.Y. ENV'T CONSERV. LAW § 27-1003.

201.    Accordingly, when a "deposit initiator" or "Distributor" like Manhattan Beer "engages in the sale or offer for sale of beverages in beverage containers," the only item that Manhattan Beer can collect a bottle deposit on is the beverage container.  N.Y. ENV'T CONSERV. LAW § 27-1003.

202.    A New York State regulation promulgated to facilitate the "orderly and effective implementation" of the Bottle Bill, 6 N.Y.C.R.R. § 367.1, forbids "contracts or agreements entered into between or among persons subject to" the Bottle Bill from being "designed" to hinder or frustrate the purpose or intent of this Part."  6. N.Y.C.R.R. § 367.12.

203.    Under the Bottle Bill, Manhattan Beer is thus bound to charge only 5 cents for each beer or other beverage subject to a bottle deposit sold.  This means that for a 24-bottle case of beer, the deposit charge pursuant to the Bottle Bill should be $1.20: 24 bottles x $0.05.  Instead, Manhattan Beer fraudulently imposes a 10-cent surcharge for each case of bottled beer or other beverage subject to a bottle deposit, hiding this charge as part of a deposit fee without any disclosure as to the basis for the charge or how the total $1.30 deposit charge is calculated.

204.    By fraudulently including a 10-cent surcharge on Plaintiffs' invoices that is not authorized by the Bottle Bill, violated, Manhattan Beer's standardized contracts hindered and frustrated the purpose or intent of the Bottle Bill.

205.    Plaintiffs and all Class Members were damaged as a result because they were billed and paid Defendants' unlawful and misleading 10-cent surcharge that masqueraded as a government-mandated deposit.

206.    Defendants' breaches caused damage to Plaintiffs and the Class, who are entitled to damages and other legal relief as a result.

207.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT VIII

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AGAINST ALL DEFENDANTS)

208.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

209.    Plaintiffs and the Class entered into valid contracts with Manhattan for purchasing beer and other beverages subject to bottle deposits.

210.    Every contract has an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

211.    Under the contracts, Manhattan Beer was obligated to charge Plaintiffs and the Class for beer and other beverages subject to bottle deposits they purchased in good faith.

212.    Plaintiffs reasonably expected that Defendants would charge them only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with a 10-cent add-on fee.  Further, Plaintiffs reasonably expected that Defendants would refrain from profiteering and/or price gouging.  Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy beer and other beverages subject to bottle deposits from Defendants.

213.    Defendants breached the implied covenant of good faith and fair dealing by including a fraudulent 10-cent surcharge for 24 bottle cases of beer and other beverages subject to bottle deposits to profiteer and/or price gouge and frustrate Plaintiffs' and other Class Members' reasonable expectations that Defendants would charge only bottle deposit amounts authorized by law and would refrain from profiteering and/or price gouging.

214.    Defendants' breaches caused damage to Plaintiffs and the Class, who are entitled to damages and other legal relief as a result.

215.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT IX

## VIOLATION OF NEW YORK'S BOTTLE BILL

## (AGAINST ALL DEFENDANTS)

216.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

217.    Manhattan Beer is a Distributor under the Bottle Bill.  N.Y. ENV'T CONSERV. LAW §§ 27-1003.6.  Distributors like Manhattan Beer are also called "deposit initiators" under the Bottle Bill.  N.Y. ENV'T CONSERV. LAW §§ 27-1003.5-a.

218.    New York's Bottle Bill requires that Manhattan Beer and other "deposit initiators" charge a deposit fee, which is currently 5 cents per "beverage container." N.Y. ENV'T CONSERV. LAW § 27-1005.

219.    The term "beverage container" is defined by statute and means the "individual, separate, sealed glass, metal, aluminum, steel or plastic bottle, can or jar used for containing less than 1 gallon or 3.78 liters at the time of sale or offer for sale of a beverage intended for use or consumption in New York." N.Y. ENV'T CONSERV. LAW § 27-1003.

220.    Accordingly, when a "Distributor" like Manhattan Beer "engages in the sale or offer for sale of beverages in beverage containers," the only item that the Distributor can collect a bottle deposit on is the beverage container. N.Y. ENV'T CONSERV. LAW § 27-1003.

221.    Manhattan Beer, by including a fraudulent 10-cent add-on fee masquerading as part of a legitimate bottle deposit, violates the Bottle Bill.

222.    Plaintiffs were harmed by Defendants' violations of the Bottle Bill by paying the unauthorized 10-cent surcharge for cases of beer and other beverages subject to bottle deposits.

223.    Defendants' breaches caused damage to Plaintiffs and the Class, who are entitled to damages and other legal relief as a result.

224.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## COUNT X

### PUBLIC NUISANCE

### (AGAINST ALL DEFENDANTS)

225.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

226.    A violation of New York's Bottle Bill is a public nuisance.  N.Y. ENV'T CONSERV. LAW § 27-1015.7.

227.    Defendants' intentional misrepresentations and omissions, and Defendants' negligent misrepresentation, created this public nuisance by violating the Bottle Bill.

228.    The community at large is not harmed by the public nuisance that Defendants created.

229.    Plaintiffs and the Class, unlike the community at large, are harmed by the public nuisance that Defendants created.  Plaintiffs and the Class are harmed by paying the unlawful and misleading 10-cent surcharge on cases of beer and other beverages subject to bottle deposits.

230.    Defendants' public nuisance caused particular harm to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

231.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)    Issue an order certifying the Class, appointing the Plaintiffs as Class Representatives, and designating the undersigned firm as Class Counsel;

(b)    Find that Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy have committed all the violations of law alleged herein;

(c)    Render an award of compensatory damages of at least $50,000,000, the precise amount of which is to be determined at trial;

(d)    Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(e)    Declare that Defendants have committed the violations of law alleged herein;

(f)     Render an award of punitive damages;

(g)     Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(h)     Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiffs demand that a jury determine any

issue triable of right.

Dated:  May 31, 2022
        Armonk, New York

### WITTELS MCINTURFF PALIKOVIC

By:     _/s/ Steven L. Wittels_____
        Steven L. Wittels (SW-8110)
        J. Burkett McInturff (JM-4564)
        Ethan D. Roman (ER-5569)
        18 HALF MILE ROAD
        ARMONK, NEW YORK 10504
        Telephone: (914) 319-9945
        Facsimile:  (914) 273-2563
        slw@wittelslaw.com
        jbm@wittelslaw.com
        edr@wittelslaw.com

        *Attorneys for Plaintiffs and the Proposed Class*