**WITTELS MCINTURFF PALIKOVIC**
Steven L. Wittels
J. Burkett McInturff
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile:  (914) 775-8862
slw@wittelslaw.com
jbm@wittelslaw.com
edr@wittelslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAP 111 ENTERPRISES LLC, 251 E. MAIN ST., LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC, <br><br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY, <br><br> Defendants. | Civil Case No.: 22 Civ. 1408 (CS) (AEK) <br><br><br> **THIRD AMENDED CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

OVERVIEW OF DEFENDANTS' UNLAWFUL CONDUCT ...................................................... 1

JURISDICTION AND VENUE ............................................................................................... 5

PARTIES ............................................................................................................................. 6

FACTUAL ALLEGATIONS ................................................................................................... 8

   I.    THE RICO DEFENDANTS' RACKETEERING ACTIVITY – THE "WHO" ................. 8

     A.   The Enterprise: Non-RICO Defendant Manhattan Beer ................................................. 8

     B.   The Mastermind: RICO Defendant Simon Bergson ........................................................ 9

     C.   The Facilitator: RICO Defendant Michael McCarthy ................................................... 13

   II.   HOW THE RACKETEERING ACTIVITY WORKS – THE "WHAT," "WHERE," "WHEN," AND "WHY" ................................................................................................. 16

     A.   The Fraudulent Invoices ................................................................................................ 16

     B.   The New York Bottle Bill and How Non-RICO Defendant Manhattan Beer and RICO Defendants Bergson and McCarthy Abuse It ................................................ 19

   III.  HOW DEFENDANTS DECEIVED CUSTOMERS LIKE PLAINTIFFS ...................... 21

   IV.  DEFENDANTS' UNSCRUPULOUS AND FRAUDULENT BILLING PRACTICES RUN AFOUL OF NEW YORK'S CONSUMER FRAUD STATUTE, NEW YORK'S BOTTLE BILL, CONTRACT LAW, AND THE COMMON LAW ....................................................................................................... 25

RULE 9(B) ALLEGATIONS ................................................................................................ 27

CLASS ACTION ALLEGATIONS ....................................................................................... 34

CAUSES OF ACTION ........................................................................................................ 38

COUNT I – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CONSPIRACY, 18 U.S.C. § 1962(c)–(d) ............................................................................ 38

COUNT II – NEW YORK GENERAL BUSINESS LAW § 349 ............................................. 44

COUNT III – COMMON LAW FRAUD ............................................................................... 46

COUNT IV – FRAUDULENT CONCEALMENT .................................................................. 48

COUNT V – NEGLIGENT MISREPRESENTATION ........................................................... 50

i

PRAYER FOR RELIEF ............................................................................................................. 51

Plaintiffs Cap 111 Enterprises LLC; 251 E. Main St., LLC; 67 Purchase St LLC; Pub Street Pleasantville LLC; and Locali Kitchen & Bar LLC (collectively "Plaintiffs"), by their attorneys Wittels McInturff Palikovic, bring this consumer protection action in their individual capacity and on behalf of a Class of consumers defined below, against non-RICO Defendant Manhattan Beer Distributors, LLC ("Manhattan Beer" or the "Company"), RICO Defendant Simon Bergson ("Bergson"), and RICO Defendant Michael McCarthy ("McCarthy") (hereinafter collectively "Defendants," unless otherwise specified), and hereby allege the following with knowledge as to their own acts, and upon information and belief, as to all other acts:

## OVERVIEW OF DEFENDANTS' UNLAWFUL CONDUCT

1.      This lawsuit seeks to remedy a widespread billing fraud perpetrated by the largest single market beer wholesaler in the United States, that for years has tricked tens of thousands of small businesses out of many millions of dollars in fraudulent bottle deposit charges.

2.      Defendants' deceptive billing scheme works as follows.  Restaurants and convenience stores in the New York City metropolitan area place orders with Manhattan Beer for bottled beer and other beverages subject to bottle deposits to resell to the consuming public.  Under the New York State Returnable Container Act of 1982, Art. 27, Title 10 of the N.Y. Env't Conserv. Law §§ 27-1001 to 27-1019 (the "Bottle Bill"), beer distributors like Manhattan Beer are required to collect a 5-cent deposit on each bottle delivered.  But instead of just charging the mandated 5 cents per bottle, Manhattan Beer dupes its customers into paying an extra 10 cents on 24-bottle orders (*i.e.*, 24-bottle cases of beer and other beverages subject to bottle deposits).

3.      How do Defendants do this?  They hide the extra 10-cent charge inside the deposit charge required by the Bottle Bill.  By intermingling this 10-cent charge with state-mandated charges, Manhattan Beer's invoices lead reasonable consumers to believe that the extra 10-cent

charge is part of a state-mandated bottle deposit. This deceptive billing practice leads customers like Plaintiffs, who run local restaurants, to think that the $1.30 "deposit" Manhattan Beer billed for a 24-bottle case of beer is legitimate, when in fact the Company is only authorized by law to collect $1.20 in deposit fees. That is, 24 bottles x $0.05 = $1.20. Not the $1.30 Defendants sneak into Manhattan Beer invoices.

4.      Defendants' fraudulent 10-cent charges add up quickly. The Company publicly crows that it sells more than 45 million cases of beer per year. Even if Defendants added the extra 10 cents onto just half of the 45 million cases the Company delivers annually, that results in millions of dollars in ill-gotten gains. Specifically, 22,500,000 cases x $0.10 = $2,250,000 per year.

5.      As a beverage distributor governed by the New York Alcohol Beverage Control Law, the New York State Liquor Authority, and of course the Bottle Bill, Defendants understand their billing scheme is fraudulent and unlawful. Indeed, upon information and belief, Defendants do not charge their more sophisticated customers, such as supermarkets, the extra 10 cents on 24-bottle cases. The Company knows it couldn't (and shouldn't) pull a fast one on these customers. Instead, Defendants' scheme preys on the small businesses that rely on the giant distributor to do the right thing when it comes to billing.

6.      Unfortunately for the Company's more than 23,000 customers in the New York metropolitan area, Manhattan Beer is the only game in town for Corona, Coors Light, Heineken and many other popular brands, as the Company has exclusive distribution rights for many of consumers' top choices. Thus, small businesses like Plaintiffs end up locked into buying from Manhattan Beer, and in doing so innocently pay fraudulent deposit charges to a company with annual sales that exceed one billion dollars a year.

7.      Defendant Simon Bergson, the company's Founder, CEO and President, is the ringleader of this bottle deposit scam, and has been unlawfully using Manhattan Beer as a "vehicle" through which unlawful bottle deposit activity is committed in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO").

8.      In an affidavit submitted in an earlier and still pending class action against Manhattan Beer, RICO Defendant Bergson essentially put himself at the center of the bottle deposit scheme in 2016, divulging that the "returns process for empty bottles and cans is an essential and integral part of Manhattan Beer's operations and economics."[1]  *Id.* ¶ 25.  To their customers' detriment, CEO/President Bergson and his RICO co-Defendant conspirator, Senior Vice President of Operations Michael McCarthy (the two "RICO Defendants"), have together corrupted the Manhattan Beer enterprise's "returns process" by skimming an extra dime off the top of tens of millions (or more) of delivered 24-bottle cases.

9.      As more fully described in this Complaint, the two RICO Defendants have conspired together in ongoing racketeering activity to conduct and participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through mail and wire fraud to defraud the Company's customers with deceptive invoices.  This racketeering activity has persisted for many years with Defendants Bergson's and McCarthy's full knowledge, control and implementation, enabling these two individual Defendant officers to line their pockets with the extra profits gained from unsuspecting customers in a centrally coordinated bottle deposit rip-off scheme.

---

[1] *Swanson v. Manhattan Beer Distributors*, No. 15 Civ. 5383 (ENV) (RLM) (E.D.N.Y.), Affidavit of Simon Bergson dated July 28, 2016, ECF No. 40, excerpted and attached to the Second Amended Complaint, dated October 13, 2022 (ECF No. 30) ("SAC") as **Exhibit A** (ECF No. 30-1), at ¶ 7.

10.    During the COVID-19 pandemic, CEO Bergson proclaimed to the public and city departments like the NYC Industrial Development Agency that he is "providing best-in-class service to his customers."[2]  But being best in class requires doing the right thing, which in this case means returning all the spurious bottle deposit fees the Company took from its customers and stopping the fraudulent charges going forward.

11.    The five restaurant Plaintiffs and the Class of Manhattan Beer's customers defined below have been harmed by Defendants' unlawful and deceptive practices.  Thus, Plaintiffs bring this class action on behalf of themselves and a Class of similarly situated customers for monetary damages, restitution, statutory penalties, and declaratory and injunctive relief caused by inter alia, the RICO Defendants' violation of RICO, and all Defendants' New York's consumer fraud statute violations (N.Y. GEN. BUS. LAW § 349 ("GBL § 349")) and fraud.

12.    Sales of alcoholic beverages, including beer, are the lifeblood of many restaurants and convenience stores, especially those owned and operated by small business owners.  To target consumers with impermissible bottle deposit charges using the cover of state action, as Defendants have done for years, is unconscionable.

13.    Only through a class action can Manhattan Beer's customers remedy Defendants' ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Defendants' unlawful practices, it makes no financial sense for an individual customer to bring its own lawsuit.

---

[2]    *About Manhattan Beer Distributors*, MANHATTAN BEER DISTRIBUTORS, http://www.manhattanbeer.com/Home/About (last visited Sept. 21, 2023); Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC____%20%232.pdf (last visited Sept. 21, 2023).

Further, most customers do not even realize they are victims of Defendants' deceptive and unlawful conduct. With this class action, Plaintiffs and the Class seek to level the playing field and make sure that companies and the individuals that direct and control them, like Manhattan Beer, Bergson, and McCarthy, engage in fair and upright business practices.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

14.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendants.

15.     This Court also has federal question jurisdiction over this matter under 28 U.S.C. § 1331 because the action arises under RICO, 18 U.S.C. § 1961 *et seq*. In addition, this Court may exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

### *Personal Jurisdiction*

16.     This Court has general personal jurisdiction over Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy because all are citizens of New York.

17.     This Court has specific personal jurisdiction over Defendants Manhattan Beer, Simon Bergson, and Michael McCarthy because they maintain sufficient contacts in this jurisdiction, including the marketing, distribution, and sale of beverages to New York consumers.

*Venue*

18.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiffs are incorporated and do business in Westchester County and New York County, and Manhattan Beer is headquartered in this District as well.

## PARTIES

19.     Plaintiff Cap 111 Enterprises LLC (hereinafter "Cap 111") is a limited liability corporation incorporated in Westchester County, New York.  From November 2015 to August 2018, Cap 111 operated a restaurant known as Armonk House in Armonk, New York, and was a Manhattan Beer customer throughout this time.

20.     Plaintiff 251 E. Main St., LLC (hereinafter "The Village Social") is a limited liability corporation incorporated in Westchester County, New York.  Since 2009, 251 East Main Street LLC Corp. has operated a restaurant known as The Village Social in Mount Kisco, New York and is currently a Manhattan Beer customer.

21.     Plaintiff 67 Purchase St LLC (hereinafter "Village Social Rye") is a limited liability corporation incorporated in Westchester County, New York.  Since January 2016, 67 Purchase St LLC has operated a restaurant known as Village Social Kitchen and Bar in Rye, New York, and is currently a Manhattan Beer customer.

22.     Plaintiff Pub Street Pleasantville LLC (hereinafter "Pubstreet") is a limited liability corporation incorporated in Westchester County, New York.  Since August 2017, Pub Street Pleasantville LLC has operated a restaurant known as Pubstreet in Pleasantville, New York, and is currently a Manhattan Beer customer.

23.     Plaintiff Locali Kitchen & Bar LLC (hereinafter "Locali") is a limited liability corporation incorporated in Westchester County, New York.  Since March 2019, Locali Kitchen & Bar LLC has operated a restaurant known as Locali in Mount Kisco, New York, and is currently a Manhattan Beer customer.

24.     Plaintiffs The Village Social, Village Social Rye, Pubstreet, and Locali (collectively, "Village Social") are operated by the Village Social Restaurant Group.

25.     Defendant Manhattan Beer Distributors, LLC has been in the business of beer and beverage distribution since 1978 and is headquartered in the Bronx, New York.  The Company maintains five separate facilities across Rockland County, the City of New York, and Long Island, including 1.5 million square feet of warehousing, and services more than 23,000 customers in the Greater NY Metro area.[3]

26.     Defendant Simon Bergson is Manhattan Beer's founder, CEO and President. Bergson directs and controls the sales and billing operations of the Company.

27.     Defendant Michael McCarthy is Manhattan Beer's Senior Vice President of Operations.  McCarthy has held this position since 1998.  McCarthy is in charge of inter alia, warehousing and distribution for all brands of beer that Manhattan Beer sells, and upon information and belief, also assists in directing and controlling the sales and billing operations of the Company.

---

[3] Manhattan Beer Distributors, LLC, *New York City Industrial Development Agency Core Application*, https://edc.nyc/sites/default/files/2020-09/Manhattan%20Beer%20Distributors%20LLC%20%232.pdf (last visited Sept. 21, 2023).

## FACTUAL ALLEGATIONS

I.     **THE RICO DEFENDANTS' RACKETEERING ACTIVITY – THE "WHO"**

A.     **The Enterprise: Non-RICO Defendant Manhattan Beer**

28.     Defendant Manhattan Beer Distributors, LLC has been in the business of beer and beverage distribution since 1978 and is headquartered in the Bronx, New York.

29.     Manhattan Beer delivers beer as well as other beverages subject to bottle deposits to Plaintiffs and the Class.  As part of its deliveries, Manhattan Beer provides fraudulent invoices that hide its deceptive 10 cent add-on fee for the bottled beverages.

30.     As of 2016, an article linked to the Company's website reported that Manhattan Beer was selling more than 45 million cases of beer per year.[4]  Today that figure is undoubtedly higher.  If Manhattan Beer added an extra 10 cents onto just half of the 45 million cases it delivers annually—*i.e.*, 22.5 million cases—the Company would still be pocketing an extra $2,250,000 per year.  As the saying goes, that's a lot of beer money.

31.     The Company admits that its deposit and recycling activities affect interstate commerce through inter alia, the purchase and return of bottled beer and kegs to out of state suppliers and vendors.[5]  In the earlier referenced class action lawsuit against the company by its delivery drivers for unlawful wage deductions and overtime violations, Judge Eric N. Vitaliano in

---

[4] Wholesaler of the Year: Manhattan Beer Distributors, BEVERAGE INDUSTRY, Sept. 2016, at 20–26, http://www.manhattanbeer.com/Content/PDF/BevWorld_Sept2016.pdf (last visited Sept. 21, 2023).

[5] *Swanson v. Manhattan Beer Distributors, LLC*, No. 15 Civ. 5383 (ENV) (RLM), 2018 WL 4008012, at *7 (E.D.N.Y. July 10, 2018) (allowing Plaintiff's clams to proceed for unlawful wage deductions but granting summary judgment to the Company under Fair Labor Standards Act Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), as Company employees' activities affect the safety of operation of motor vehicles in interstate commerce).  The Judge has since revisited his initial grant of summary judgment to the Company on the federal overtime claims based on the mandated interstate commerce exemption and invited briefing on whether the pendent state law labor claims survive notwithstanding the federal exclusion.  *Swanson v. Manhattan Beer Distributors, LLC*, No. 15 Civ. 5383 (ENV) (RLM), Order dated June 15, 2021, ECF No. 158-1.  After briefing, that issue remains sub judice awaiting decision.

the Eastern District of New York ruled as a matter of law that Manhattan Beer's operations, including its bottle recycling activities, take place in interstate commerce.[6]

32.     Manhattan Beer's interstate deposit and recycling activities are a substantial factor in the Company's operations and economics.

33.     With respect to Plaintiffs' RICO count, Manhattan Beer is the RICO enterprise – in other words, the vehicle through which RICO Defendants Bergson and McCarthy's unlawful activity is committed.  Manhattan Beer Distributors, LLC is not a RICO defendant.

34.     The fraudulent bottle deposit scheme, operated through the Manhattan Beer vehicle, is wholly separate and distinct from the lawful and ongoing beer and non-alcoholic beverage distribution business which is the core activity of the Company.

35.     The RICO Defendants – CEO Bergson and Senior Vice President of Operations McCarthy – concocted and implemented the bottle deposit billing scheme separate and apart from their regular duties in running and overseeing the Company's core beverage distribution business.

**B.     The Mastermind: RICO Defendant Simon Bergson**

36.     RICO Defendant Simon Bergson is Manhattan Beer's founder, and its CEO and President.

37.     Defendant Bergson directs and controls the sales and billing operations of the Company and is fully aware of the fraudulent invoice scam.  Both Bergson and co-conspirator McCarthy are the "persons" who devised, implemented, and now conduct and operate the bottle billing scheme using the Company enterprise as a vehicle to extract the impermissible 10-cent

---

[6] *Swanson*, 2018 WL 4008012, at *9.

surcharge.    Upon information and belief, Bergson directed, developed, managed, and/or substantially assisted in the misleading and deceptive billing practices.

38.    Plaintiffs served their First Set of Interrogatories to Defendants dated December 20, 2022, seeking in Interrogatory No. 1 the identification, *inter alia*, of "each person with knowledge of Manhattan Beer's Deposit Practices."  "Deposit Practices" is defined in Plaintiffs' interrogatories as "Manhattan Beer's policies and procedures for implementing, charging, and collecting fees on beverage containers and other items such as the cardboard that beverage containers are packed in."

39.    Defendants' verified original interrogatory responses, sworn to on February 28, 2023 by both RICO Defendants—Simon Bergson and Michael McCarthy—limited the scope of Interrogatory No. 1 to only persons with knowledge of the Company's "10-cent deposit on cardboard boxes."  In Defendants' original response to Interrogatory No. 1, Defendants identified RICO Defendant Simon Bergson as one of only three persons with knowledge of Manhattan Beer's 10-cent fee, along with co-RICO Defendant Michael McCarthy and Simon Bergson's son Alex Bergson.

40.    Armed with these critical admissions, Plaintiffs applied to the Court on April 20, 2023 for leave to file a Supplemental Complaint detailing Manhattan Beer's concession that Defendants Bergson and McCarthy were integrally involved in imposition of the 10-cent fee as two of only three Manhattan Beer senior executives with such knowledge of the fee (ECF No 70). Faced with this application, Defendants tried to back away from their admissions, serving a so-called "revised" response to interrogatory No. 1 almost three months later dated May 16, 2023, together with their opposition to Plaintiffs' Supplemental Complaint application.    In their "revision," RICO Defendants Bergson and McCarthy now claimed that in addition to themselves

and Bergson's son, a few other Manhattan Beer personnel also knew generally about the Company's "Deposit Practices," including the challenged 10-cent fee.

41.    Irrespective of his involvement as just one of three senior executives who knew about the Company's undisclosed 10-cent fee, or whether a limited number of other employees also had some knowledge about the fee, RICO Defendant Simon Bergson, the Company's Founder and CEO, is necessarily one of the two principals who devised, implemented, and now conducts and operates the billing scheme using the Company as a vehicle to extract the impermissible 10-cent surcharge.

42.    Defendant Bergson is a key decision maker at Manhattan Beer.  According to a February 2016 article by beer industry publication Beverage World that included an interview with Bergson, he is a "very hands-on CEO."[7]

43.    In the earlier referenced Bergson affidavit, the Defendant CEO disclosed his involvement in spearheading and directing Manhattan Beer's recycling activities.  Bergson stated he was "knowledgeable about business opportunities and costs affecting the operation and economics of the business and the regulatory environment in which Manhattan Beer functions with respect to Manhattan Beer's sale and distribution of alcoholic beverages and the responsibility for recycling of empty beverage containers."  Bergson Aff., ECF No. 30-1 ¶ 7.

44.    Defendant Bergson stated that Manhattan Beer "has been engaged in the business of recycling empty glass and aluminum beverage containers since at least 1983," when New York's Bottle Bill went into effect.  *Id.* ¶ 20.

---

[7] Andrew Kaplan, They can make it anywhere, BEVERAGE WORLD, Feb. 2016, at 44–48 http://www.manhattanbeer.com/Content/PDF/Bev_World_MBD_Feb_2016.pdf (last visited Sept. 21, 2023).

45.    Defendant Bergson further stated that "the recycling aspect of Manhattan Beer's business has become a much more substantial factor in Manhattan Beer's operations and economics following enactment of the Bottle Bill." *Id.* ¶ 21.

46.    Defendant Bergson also declared that in 2015, Manhattan Beer "received payments of more than $40 million for the deposit of hundreds of millions of beverage containers it sold." *Id.* ¶ 23.

47.    Defendant Bergson further stated that the "returns process for empty bottles and cans is an essential and integral part of Manhattan Beer's operations and economics." *Id.* ¶ 25.

48.    "Because of the operational and economic significance to Manhattan Beer of disposing of glass and aluminum from empty containers," Defendant Bergson declared in his affidavit that he has met with "executives or owners of several companies" since at least 1998 to "understand the process of disposing of glass and aluminum" and seek out "the opportunity to generate revenue from the value of the many tons of glass and aluminum derived from Manhattan Beer empties." *Id.* ¶ 30.

49.    Defendants Bergson and McCarthy "met with a broker who represented a glass recycling facility in Indiana" in 2005. *Id.* ¶ 32.

50.    Defendant Bergson's affidavit devoted 5 pages and 15 paragraphs regarding his and the Company's processes regarding deposits and recycling for bottles and cans. *Id.* ¶¶ 20–34.

51.    Given the operational and economic importance of Manhattan Beer's deposit and recycling activities, Defendant Bergson has captained and directed these activities for the Company since at least 1983.

52.    Defendant Bergson conspired with Defendant McCarthy to participate in and conduct the operations and management of the Manhattan Beer Distributors, LLC enterprise in order to carry out racketeering activity, namely, the fraudulent bottle deposit scheme.

C.    **The Facilitator: RICO Defendant Michael McCarthy**

53.    RICO Defendant Michael McCarthy is Manhattan Beer's Senior Vice President of Operations.  McCarthy has held this position since 1998.

54.    Defendant McCarthy is in charge of warehousing and distribution for all the brands of beer that Manhattan Beer sells to its customers and is fully aware of the fraudulent invoice scam. Both McCarthy and co-conspirator Bergson are the "persons" who devised, implemented, and now conduct and operate the bottle billing scheme using the Company as a vehicle to extract the impermissible 10-cent surcharge.  Upon information and belief, McCarthy directed, developed, managed, or substantially assisted in the misleading and deceptive billing practices.

55.    Defendants' original verified response to Interrogatory No. 1 named RICO Defendant Michael McCarthy as one of only three persons with knowledge of Manhattan Beer's 10-cent fee for cardboard boxes, along with co-RICO Defendant Simon Bergson and Simon Bergson's son Alex Bergson.

56.    As described above, Defendants' revised verified response to Interrogatory No. 1 tried to walk back Defendants' admission that only three principals including McCarthy knew about the hidden fee, stating that some limited number of additional staff also had general knowledge of the Company's Deposit Practices including the 10-cent fee.  But irrespective of his involvement as just one of three senior executives who knew about the Company's undisclosed 10-cent fee, or whether a limited number of other employees also had some knowledge of the Company's fee, RICO Defendant McCarthy is necessarily, together with co-RICO Defendant Simon Bergson, one of the two key persons who devised, implemented, and now conducts and

13

operates the billing scheme using the Company as a vehicle to extract the impermissible 10-cent surcharge.

57.    Defendant McCarthy is a key decision maker at Manhattan Beer and is a member of its executive team.  For example, McCarthy has been mentioned in the United States House of Representatives as being part of the "leadership" of Manhattan Beer.[8]  In a 2008 profile of Manhattan Beer by beer industry publication Beverage Industry that is linked from Manhattan Beer's website, McCarthy was featured as one of Manhattan Beer's key executives.[9]  Defendant McCarthy reports to Bergson and works closely with him.  As of 2016, McCarthy oversaw annually both the delivery of approximately 45 million cases of beer to Manhattan Beer customers, as well as the recycling return process.

58.    Defendant McCarthy was Manhattan Beer's corporate 30(b)(6) designee who spoke on behalf of the Company at two depositions in 2016 and 2018 in the separate pending wage and hour class action.  In the first deposition, Defendant McCarthy testified as to his involvement in the Company's deposit and recycling activities.  ECF No. 30-2, *Swanson v. Manhattan Beer Distributors*, No. 15 Civ. 5383 (ENV) (RLM) (E.D.N.Y.), Deposition of Michael McCarthy, dated Apr. 20, 2016 (hereafter "2016 McCarthy Dep."), at 16:25–19:23.

59.    Defendant McCarthy testified that he attended meetings with a company Manhattan Beer uses for its recycling activities.  *Id.* at 23:18–24:5.  Further, both Defendants McCarthy and Bergson both "met with a broker who represented a glass recycling facility in Indiana" in 2005.  Bergson Aff., ECF No. 30-1 ¶ 32.

---

[8] 148 CONG. REC. E67-01 (daily ed. Feb. 4, 2002) (statement of N.Y. State Sen. Serrano).

[9] Sarah Theodore, Manhattan Beer Distributors: Big City Wholesaler Keeps Its Focus Small, BEVERAGE INDUSTRY, Feb. 2008, at 32–34, 36, 38–39, http://www.manhattanbeer.com/Content/PDF/bev_industry.pdf (last visited Sept. 21, 2023).

60.    At his second deposition, the Operations V.P. McCarthy disclosed his full knowledge of and agreement with the unlawful bottle deposit 10-cent scheme under his watch, testifying that the "reason" for the add-on is: "That is part of the cost of the case . . . .  Some customers get charged 10 cents for the box, the cardboard box. . . .  [T]he mother carton box." ECF No. 30-3, *Swanson v. Manhattan Beer Distributors*, No. 15 Civ. 5383 (ENV) (RLM) (E.D.N.Y.), Deposition of Michael McCarthy, dated Nov. 27, 2018, at 68:18–69:16.

61.    The RICO Defendant McCarthy went on to explain that he knew that "there are customers that aren't involved in the exchange [ ] in the dime exchange," as he couched it, *id.* at 70:9–16, but he gave no explanation as to which customers got socked with the fee, and which did not.  He did add, however, "But the ten cents has been around [Manhattan Beer] for a long time." *Id.* at 70:22–71:3.

62.    When pressed as to whether the Bottle Bill allowed distributors like Manhattan Beer to charge the extra 10 cents for the "mother carton," RICO Defendant McCarthy equivocated, testifying "I don't remember if it's in the bottle law."  *Id.*

63.    Notwithstanding his memory failure of the Bottle Bill that forbids charging the 10-cent fee, like his co-conspirator Bergson, Defendant McCarthy was fully cognizant of the Company's recycling responsibilities.  He testified that pursuant to the Bottle Bill, Manhattan Beer charges customers the requisite 5 cent deposit on each glass bottle, plastic bottle, and can delivered. 2016 McCarthy Dep., ECF No. 30-2 at 31:25–33:8.  He further testified that Manhattan Beer did not charge customers deposits for any items other than glass and plastic bottles, cans, or kegs. *Id.* at 33:20–24.

64.    Given the operational and economic importance of Manhattan Beer's deposit and recycling activities, and his senior position in charge of these activities and full awareness of the

illegal bottle deposit billing scheme, Defendant McCarthy is a RICO Defendant who has helped

spearhead and direct these activities for the Company since at least 1998.

65.    Defendant McCarthy conspired with Defendant Bergson to participate in and

conduct the operating and management of the Manhattan Beer Distributors, LLC enterprise in

order to carry out racketeering activity, namely, the fraudulent bottle deposit scheme.

## II.    HOW THE RACKETEERING ACTIVITY WORKS – THE "WHAT," "WHERE," "WHEN," AND "WHY"

### A.    The Fraudulent Invoices

66.    The scheme starts with Manhattan Beer's deliveries.  Manhattan Beer delivers cases

and kegs of beer as well as other beverages subject to bottle deposits.  During deliveries, Manhattan

Beer drivers generate invoices using internet-connected handheld devices that are provided to

drivers by the Company.  The invoices list the delivered products by Item number, Quantity,

Description, Price, DISC (for discount), DPST (for deposit), and the amounts billed for these line

items.

67.    Unbeknownst to its customers, and integral to the racketeering activity engineered

by the two RICO Defendants Bergson and McCarthy, Manhattan Beer's invoices for 24-bottle

cases of beer include a secretive, 10-cent charge that masquerades as a lawful component of the

bottle deposit to be collected by a "Distributor" or "deposit initiator," like Manhattan Beer, as

mandated by the Bottle Bill.  Through these deceptive invoices, the RICO Defendants make the

following material misrepresentations and omissions:

   a.   misrepresent that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases is a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge is only $1.20;

   b.   fail to disclose that they are adding a 10-cent surcharge to each case of beer or other beverages subject to bottle deposits sold;

16

c.  fail to disclose that the 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

d.  misrepresent that the 10-cent surcharge listed in the "DPST" (deposit) column of the Manhattan Beer invoices is required and mandated by the government.

68.  Because the 10-cent surcharge is included in the same invoice line item as the lawful $1.20 bottle deposit charge, the invoices are less likely to raise suspicion with customers that the charge is anything other than what is required by law.  Manhattan Beer bills for the surcharge as just another portion of the bottle deposit.  There is no indication on Manhattan Beer's invoices that the charge is actually separate from, and in addition to, deposits required by the Bottle Bill.

69.  The RICO Defendants (as well as the non-RICO Defendant Manhattan Beer) have a duty to disclose the true nature of the $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill, because of their superior knowledge of the beer distribution industry, their superior knowledge of their own business practices, and as the authors of the invoices provided to Plaintiffs and the Class.

70.  A reasonable consumer expects that a reputable business will not include hidden extra fees on invoices or receipts.  Moreover, a reasonable consumer also relies on the veracity of presented invoices, including those invoices from the Company which list a "DPST" charge that includes bottle deposit charges mandated by state law.  If it says "Deposit" on the invoice, and the consumer had purchased bottles of beer or other beverages subject to bottle deposits, then the consumer would have no reason to suspect that charges required by law also included undisclosed surcharges imposed by the seller.

71.  Manhattan Beer's invoices also do not disclose why it is charging a hidden 10-cent surcharge on each 24-bottle case of beer or other beverages subject to bottle deposits.  The RICO

Defendants (as well as the non-RICO Defendant Manhattan Beer) likewise fail to disclose that the 10-cent surcharge for 24-bottle cases of alcoholic beverages is not a required payment under the Bottle Bill, and therefore customers don't have to pay it.

72.    That the fraudulent billing is a carefully constructed stratagem to mislead customers is further evidenced by the fact that the Company charges the $1.30 deposit only on 24-bottle cases, but not 24-can cases.  Thus, for the same 12 ounces of Coors Light, for example, Manhattan Beer charges a $1.30 deposit for the 24-bottle case, but $1.20 for the 24-can case.

73.    Further evidence of the RICO Defendants' malintent is the fact that the Company does not impose the fraudulent 10-cent add-on fee on all its customers.  Rather, upon information and belief, Bergson and McCarthy selectively exclude the Company's bigger, more sophisticated customers from the 10-cent surcharge.  The Company and the individual RICO Defendants Bergson and McCarthy know that customers who buy large quantities of beverages are more likely to notice and protest the deceptive charges.

74.    The RICO Defendants (as well as the non-RICO Defendant Manhattan Beer) knew or should have known that Manhattan Beer's customers would rely on the Company's invoices to accurately include only those deposits required by the Bottle Bill.  Further, RICO Defendants (as well as the non-RICO Defendant Manhattan Beer) well knew that the Company's customer base, especially small business owners like Plaintiffs, would consider receiving accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

75.    Moreover, the RICO Defendants took no steps to insure through a written contract that the Manhattan Beer enterprise's thousands of customers agreed to the hidden bottle deposit charge that included an extra 10 cents for cardboard "mother" boxes.  Indeed, since 2018 when

RICO Defendant McCarthy was questioned about the 10-cent charge, the RICO Defendants have carried on business as usual, continuing to deceive the nine restaurant Plaintiffs and thousands of other similar customers who have unwittingly been paying the extra fee.

76.     Defendants have no good faith justification for their deceptive billing scheme.  The only reason they charge this fee is profiteering and/or price gouging, a stark demonstration of their bad faith.

77.     Manhattan Beer's standard invoices to smaller customers, such as Plaintiffs, all contain the 10-cent fraudulent fee.  The standardized inclusion of the charge could not have been accomplished without the actions of RICO Defendants Bergson and McCarthy, who were able to implement this ongoing scheme due to their ability to control the operations of the Company.

78.     Upon information and belief, Defendants have been charging their customers the illegal $1.30 on 24-bottle cases delivered regardless of the brand—except, upon information and belief, the Company does not charge the illegal add-on fee to its more sophisticated customers, like supermarkets.

**B.      The New York Bottle Bill and How Non-RICO Defendant Manhattan Beer and RICO Defendants Bergson and McCarthy Abuse It**

79.     All Defendants further defraud Plaintiffs and the Class by masquerading the 10-cent surcharge as a deposit required by New York's Bottle Bill.

80.     New York's Bottle Bill requires that Manhattan Beer and other "deposit initiators" or "Distributors" charge a deposit fee, which is currently 5 cents per "beverage container."  N.Y. ENV'T CONSERV. LAW § 27-1005; *see also Bottle Refund*, THE OFFICIAL WEBSITE OF THE CITY OF NEW YORK,  https://portal.311.nyc.gov/article/?kanumber=KA-02477 ("You pay a five cent deposit when buying some bottles or cans in New York State.") (last visited Sept. 21, 2023).

81. The term "beverage container" is defined by statute and means the "individual, separate, sealed glass, metal, aluminum, steel or plastic bottle, can or jar" used for containing "less than 1 gallon or 3.78 liters" at the time of sale or offer for sale of "beverages intended for use or consumption in New York." N.Y. ENV'T CONSERV. LAW § 27-1003; *see also Frequently Asked Questions About the Bottle Bill*, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, https://www.dec.ny.gov/chemical/57687.html (last visited Sept. 21, 2023).

82. Accordingly, when a "deposit initiator" or "Distributor" like Manhattan Beer "engages in the sale or offer for sale of beverages in beverage containers," the only item that Manhattan Beer can collect a bottle deposit on is the beverage container. N.Y. ENV'T CONSERV. LAW § 27-1003.

83. A New York State regulation promulgated to facilitate the "orderly and effective implementation" of the Bottle Bill, 6 N.Y.C.R.R. § 367.1, forbids "contracts or agreements entered into between or among persons subject to" the Bottle Bill from being "designed to hinder or frustrate the purpose or intent of this Part." 6. N.Y.C.R.R. § 367.12.

84. Under the Bottle Bill, Manhattan Beer is thus bound to charge only 5 cents for each beer or other beverage subject to a bottle deposit sold. This means that for a 24-bottle case of beer, the deposit charge pursuant to the Bottle Bill should be $1.20: 24 bottles x $0.05. Instead, Bergson and McCarthy use Manhattan Beer as a vehicle to fraudulently impose a 10-cent surcharge for each case of bottled beer or other beverage subject to a bottle deposit, hiding this charge as part of a deposit fee without any disclosure as to the basis for the charge or how the total $1.30 deposit charge is calculated.

85. Manhattan Beer's use of an unlawful and undisclosed 10-cent surcharge blended into its bottle "DPST" invoice line-item means that RICO Defendants Bergson and McCarthy are

intentionally trying to deceive customers into believing the $1.30 is a lawful deposit charge. A reasonable consumer acting reasonably under the circumstances is highly likely to be confused or misled by the Manhattan Beer invoice conflating its private fee with a statutorily imposed one and providing no information on the additional charge. Reasonable consumers would further believe that the 10-cent charge is non-negotiable, and in fact required due to state action. Simply put, the 10-cent surcharge is nothing more than a scam charge designed by Bergson and McCarthy to further line their pockets.

86.    Consumers rely on the integrity of Manhattan Beer's invoices to accurately reflect charges required by law, such as taxes and the deposits required by New York's Bottle Bill. Thus, the scheme amounts to Bergson and McCarthy misusing the Bottle Bill as a guise to boost profits at the expense of the Company's customers.

87.    As a result of Bergson and McCarthy's fraudulent practices, thousands of unsuspecting consumers are being fleeced out of many millions of dollars in hidden charges. This scam is unethical, oppressive, and unlawful.

### III.    HOW DEFENDANTS DECEIVED CUSTOMERS LIKE PLAINTIFFS

88.    In November 2015, Plaintiff Cap 111 opened a small restaurant called Armonk House in Armonk, New York. Like any restaurant with a liquor license, Armonk House offered patrons beer and contacted Manhattan Beer for delivery of its carried brands.

89.    As described above, the Village Social Restaurant Group operates Plaintiffs The Village Social, Village Social Rye, Pubstreet, and Locali. All of these restaurants have liquor licenses, offer patrons beer, and each contacted Manhattan Beer for delivery of its carried brands.

90.    Plaintiffs placed orders with Manhattan Beer typically in one of two different ways: (i) by logging into Manhattan Beer's customer portal on its website, and (ii) by calling Manhattan Beer's sales representatives to place orders via telephone.

91.    Thereafter, Manhattan Beer delivered cases and kegs of beer as well as other beverages subject to bottle deposits to Plaintiffs pursuant to the Contracts.  During the deliveries for those orders, Manhattan Beer drivers generated invoices using internet-connected handheld devices that are provided to drivers by the Company.  The invoices listed the delivered products by Item number, Quantity, Description, Price, DISC (for discount), DPST (for deposit), and the amounts billed for these line items.

92.    On information and belief, the servers accessed by the internet-connected handheld devices used by Manhattan Beer's drivers are not located in the state of New York and transmissions to and from these devices cross state lines.

93.    Tools that determine the location of servers based on website addresses on the internet confirm that Manhattan Beer's servers are located in either Virginia or the state of Washington.  A screenshot of partial results from one of these tools follows:

**You've entered a domain name. We've found an IP address from the domain name you've entered.**
**Your translated IP address is 40.71.11.133**

Geolocation data from IP2Location (Product: DB6, updated on 2022-9-1)

| Domain Name | Country | Region | City |
|---|---|---|---|
| customer.manhattanbeer.net | United States of America 🇺🇸 | Virginia | Washington |

| ISP | Organization | Latitude | Longitude |
|---|---|---|---|
| Microsoft Corporation | Not Available | 38.7135 | -78.1594 |

Geolocation data from ipinfo.io (Product: API, real-time)

| Domain Name | Country | Region | City |
|---|---|---|---|
| customer.manhattanbeer.net | United States 🇺🇸 | Virginia | Hampden Sydney |

| ISP | Organization | Latitude | Longitude |
|---|---|---|---|
| Microsoft Corporation | Microsoft Corporation (microsoft.com) | 37.3058 | -78.5462 |

Geolocation data from DB-IP (Product: API, real-time )

| Domain Name | Country | Region | City |
|---|---|---|---|
| customer.manhattanbeer.net | United States 🇺🇸 | Virginia | Ashburn |

| ISP | Organization | Latitude | Longitude |
|---|---|---|---|
| Microsoft Corporation | Microsoft Corporation | 39.0438 | -77.4874 |

94.     Additional locations for Manhattan Beer's servers using this tool include multiple results for Tappahannock, VA, as well as Washington, VA, and "Washington."

95.     A copy of five representative Manhattan Beer invoices paid by the Armonk House dated July 18, 2018, July 7, 2018, February 7, 2018, January 13, 2018, and August 31, 2017, are attached to the SAC as **Exhibit E** (ECF No. 30-5).  The five attached Armonk House invoices from 2017 and 2018 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Coors Light, Corona Extra, and Heineken K2.

96.     A copy of four representative Manhattan Beer invoices paid by Village Social dated January 25, 2022 (p. 1, The Village Social), February 4, 2022 (p. 2, Village Social Rye), February 2, 2022 (p. 3, Pubstreet), and February 24, 2022 (p. 4, Locali) are attached to the SAC as **Exhibit G** (ECF No. 30-7).  The four attached Village Social invoices from 2022 all show that Manhattan Beer wrongfully and consistently billed $1.30 as a deposit for the delivery of 24-bottle cases of Ithaca Flower Power, Heineken K2, Heineken 0.0 (non-alcoholic beer), Coors Light, Switchback Ale, Corona Extra, and Estrella.

97.     Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the U.S. mail and/or interstate wires.  Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail.  Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

98.     On information and belief, the server used by Manhattan Beer's website is not located in the state of New York and transmissions to and from the server cross state lines.  As alleged above, Manhattan Beer's server is located in either Virginia or the state of Washington.

99.     Plaintiffs relied on Manhattan Beer's invoices to accurately itemize all charges, including the deposit required by the Bottle Bill.  But Defendants hid a 10-cent surcharge for each case of bottled beer inside the Bottle Bill charge.  Thus, Plaintiffs relied on and were harmed by Defendants' omissions and misrepresentations when they paid the full deposit charges listed on the Company's invoices.

100.    But for Defendants' material representations and omissions, Plaintiffs would not have paid the fraudulent 10-cent surcharge.  Indeed, no reasonable consumer who knew the truth about the fraudulent 10-cent surcharge would have chosen to pay this charge.  If Plaintiffs had

known the truth about the bottle deposit add-on charge, they could have tried to have the add-on

charges removed.

IV.   **DEFENDANTS' UNSCRUPULOUS AND FRAUDULENT BILLING PRACTICES RUN AFOUL OF NEW YORK'S CONSUMER FRAUD STATUTE, NEW YORK'S BOTTLE BILL, CONTRACT LAW, AND THE COMMON LAW**

101.   Defendants' unfair and deceptive billing acts and practices violate N.Y. GEN. BUS.

LAW § 349 as follows:

   a.   Defendants misrepresent that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

   b.   Defendants fail to disclose that they are adding a 10-cent surcharge to each 24-bottle case of beer or other beverage subject to a bottle deposit sold;

   c.   Defendants fail to disclose that the 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

   d.   Defendants misrepresent that the 10-cent surcharge listed in the "DPST" (deposit) column of the Manhattan Beer invoices is required and mandated by the government.

102.   Defendants likewise make the following misrepresentations and omissions that

defrauded its customers and violated the common law:

   a.   Defendants misrepresent that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

   b.   Defendants fail to disclose that they are adding a 10-cent surcharge to each case of beer or other beverage subject to a bottle deposit sold;

   c.   Defendants fail to disclose that the 10-cent surcharge is not in fact a deposit required by the Bottle Bill; and

   d.   Defendants misrepresent that the 10-cent surcharge listed in the "DPST" (deposit) column of the Manhattan Beer invoices is required and mandated by the government.

103.    Defendants fraudulently concealed from Plaintiffs and the Class the true nature of Manhattan Beer's $1.30 deposit fee, including that it contained a 10-cent surcharge beyond the deposit required by the Bottle Bill.

104.    Defendants had a duty to fully and accurately disclose to all Manhattan Beer customers, like Plaintiffs and the Class, the 10-cent add-on fee hidden in the Company's deposit charge because of their superior knowledge of the beer distribution industry, their superior knowledge of their own business practices, and as the authors of the standard beverage invoices provided to Plaintiffs and the Class.

105.    Defendants' omissions and representations are false and deceptive, and designed to take advantage of consumers' good faith and the lack of consumers' knowledge of the beverage distribution market and the Bottle Bill.

106.    Defendants' omissions and representations are intentional, as they hide the 10-cent surcharge in the deposits section of Manhattan Beer's invoices, conflating the Company's own private charge with government-mandated bottle deposits.

107.    In the alternative, Defendants negligently misrepresent the nature of the 10-cent surcharge for cases of beer.  As alleged above, Defendants had a duty to disclose the facts behind its 10-cent surcharge, and their failure to do so led Plaintiffs and the Class to believe that the entire $1.30 deposit charge was mandated by the government.

108.    Plaintiffs and other reasonable consumers expect honesty and integrity from suppliers and expected that Defendants would accurately disclose what Manhattan Beer was charging customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit.  Plaintiffs and the Class therefore reasonably relied on Manhattan Beer's invoices to accurately reflect the charge for government-mandated

deposits.  No consumer would agree to pay Defendants an extra 10 cents per case of beer if they knew the truth: that Defendants charge an extra 10 cents per case for no other reason than to inflate their profits at the expense of their customers.

## **RULE 9(B) ALLEGATIONS**

109.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

110.    WHO:

- RICO count:  RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions of fact in the sale of beer and other beverages subject to bottle deposits.

- All non-RICO counts:  Defendants, in a scheme devised by Bergson and McCarthy and acting through the Company's corporate personnel, make material misrepresentations and omissions of fact in the sale of beer and other beverages subject to bottle deposits.

111.    WHAT (RICO count):

- RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations by hiding 10-cent surcharges on Manhattan Beer invoices to customers for 24-bottle cases as a lawful and state-mandated

27

bottle deposit when in fact the maximum lawful deposit charge is only $1.20.

- RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations by representing on Manhattan Beer invoices to customers that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

- RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material omissions by failing to disclose that Manhattan Beer adds a 10-cent surcharge to each case of beer or other beverage subject to a bottle deposit sold.

- RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material omissions by failing to disclose that Manhattan Beer's 10-cent surcharge is not in fact a deposit required by the Bottle Bill.

- By hiding the 10-cent surcharge in the deposit column of its invoices, RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to falsely and

deceptively create the impression that this charge is authorized and required by the Bottle Bill. Bergson and McCarthy conspired to make these misrepresentations and omissions with respect to the Manhattan Beer 10-cent surcharge even though Bergson and McCarthy know that the Company's customers will understand the extra charge to be required by the Bottle Bill. Bergson and McCarthy fail to inform, or to direct Manhattan Beer to inform, customers about the true nature of this charge.

112.    WHAT (all non-RICO counts):

- Defendants make material misrepresentations by hiding 10-cent surcharges on Manhattan Beer invoices to customers for 24-bottle cases as a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge is only $1.20.

- Defendants make material misrepresentations by representing on Manhattan Beer invoices to customers that its 10-cent surcharge listed in the "DPST" (deposit) column of its invoices was required and mandated by the government.

- Defendants make material omissions by failing to disclose that Manhattan Beer adds a 10-cent surcharge to each case of beer or other beverage subject to a bottle deposit sold.

- Defendants make material omissions by failing to disclose that Manhattan Beer's 10-cent surcharge is not in fact a deposit required by the Bottle Bill.

- By hiding the 10-cent surcharge in the deposit column of its invoices, Defendants falsely and deceptively create the impression that this charge is authorized and required by the Bottle Bill. Defendants make these misrepresentations and omissions with respect to the Manhattan Beer 10-cent surcharge even though Defendants know that the Company's customers will understand the extra charge to be required by the Bottle Bill. Defendants fail to inform customers about the true nature of this charge.

113. WHERE:

- RICO count: RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions in Manhattan Beer's standard invoice to consumers which was received by Plaintiffs and upon which Bergson and McCarthy intended Plaintiffs to rely.

- All non-RICO counts: Defendants make their material misrepresentations and omissions in Manhattan Beer's standard invoice to consumers which was received by Plaintiffs and upon which Defendants intended Plaintiffs to rely.

114. WHEN:

- RICO count: RICO Defendants Bergson and McCarthy have been conspiring to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the

enterprise as a vehicle to carry out their fraudulent invoice scheme for years. RICO Defendants' racketeering activity is ongoing. For specific examples, Bergson and McCarthy used Manhattan Beer to make the material misrepresentations and omissions when it provided Plaintiff Cap 111 with, for example its July 18, 2018 invoice. ECF No. 30-5 at 1. Bergson and McCarthy used Manhattan Beer to make the material misrepresentations and omissions when it provided Plaintiff Village Social with, for example, its January 25, 2022 invoice. ECF No. 30-7 at 1. Bergson and McCarthy used Manhattan Beer to make the same or substantially similar misrepresentations and omissions of material facts to all of its customers.

- All non-RICO counts: Defendants have been using the fraudulent invoice scheme for years, and the scheme is ongoing. For specific examples, Defendants made the material misrepresentations and omissions when Manhattan Beer provided Plaintiff Cap 111 with, for example its July 18, 2018 invoice. ECF No. 30-5 at 1. Defendants made the material misrepresentations and omissions when Manhattan Beer provided Plaintiff Village Social with, for example its January 25, 2022 invoice. ECF No. 30-7 at 1. Defendants make the same or substantially similar misrepresentations and omissions of material facts to all of its customers.

115. WHY:

- RICO count:  RICO Defendants Bergson and McCarthy— knowing that Plaintiffs and other reasonable consumers expect honesty and integrity from suppliers and expecting that the Manhattan Beer Distributors, LLC enterprise would accurately disclose what it was charging customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit—conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and omissions regarding the 10-cent surcharge with the purpose of inducing Plaintiffs and other Manhattan Beer customers to pay an extra 10 cents for every 24-bottle case of beer or other beverage subject to a bottle deposit.  As a direct result of these material misrepresentations and omissions, Bergson and McCarthy have successfully reaped millions in profits at the expense of its unsuspecting customers for their own monetary gain.

- All non-RICO counts:  Manhattan Beer, its CEO/President, Defendant Simon Bergson, and its Senior Vice President of Operations, Defendant Michael McCarthy—knowing that Plaintiffs and other reasonable consumers expect honesty and integrity from suppliers and expecting that Manhattan Beer would accurately disclose what it was charging customers for cases of beer and would not assess a 10-cent surcharge per case of beer under the guise of a government-mandated deposit—made

32

these material misrepresentations and omissions regarding its 10-cent surcharge with the purpose of inducing Plaintiffs and other Manhattan Beer customers to pay an extra 10 cents for every 24-bottle case of beer or other beverage subject to a bottle deposit.  As a direct result of these material misrepresentations and omissions, Defendants have successfully reaped millions in unlawful profits at the expense of unsuspecting customers.

116.    HOW (RICO count):

- RICO Defendants Bergson and McCarthy use Manhattan Beer's legitimate beer and beverage distribution activities as cover to carry out racketeering activity, *i.e.*, their fraudulent invoice scheme.

- RICO Defendants Bergson and McCarthy conspired to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using the enterprise as a vehicle to make material misrepresentations and fails to disclose material facts concerning the nature of the 10-cent surcharge for 24-bottle cases of beer by representing that the charge is in fact a government-mandated fee.  In reality, Bergson and McCarthy devised the extra 10-cent charge purely to reap extra profit from each sale for their own monetary gain.

- Manhattan Beer uses at least two methods to take orders for beer or other beverages subject to bottle deposits—the products involved in RICO Defendants Bergson and McCarthy's scheme:  (1) Manhattan Beer's

customer portal on its website; and (2) via telephone, by calling Manhattan Beer's sales representatives to place orders via telephone.

- On information and belief, the servers accessed by the internet-connected handheld devices used by Manhattan Beer's drivers and the servers accessed by Manhattan Beer's website are not located in the state of New York. Transmissions to and from these servers cross state lines. As alleged above, Manhattan Beer's server is located in either Virginia or the state of Washington.

- Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the U.S. mail and/or wires. Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail. Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

117.    HOW (all non-RICO counts):

- Defendants make material misrepresentations and fail to disclose material facts concerning the nature of the 10-cent surcharge for 24-bottle cases of beer by representing that the charge is in fact a government-mandated fee. In reality, Defendants charge the extra 10 cents purely to reap extra profit from each sale.

## **CLASS ACTION ALLEGATIONS**

118.    As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by Defendants. Defendants have engaged in uniform and standardized

billing misconduct directed toward the Class—and this case is about the responsibility of Defendants, at law and in equity, for their knowledge and conduct in deceiving its customers.

119.    Defendants' misconduct did not meaningfully differentiate among individual Class Members in its degree of care or candor, its actions or inactions, or in the content of its statements or omissions.  On information and belief, the hidden charges assessed to all of Manhattan Beer's customers are materially the same.  The objective facts on these subjects are the same for all Class Members.

120.    Plaintiffs sue on their own behalf and on behalf of the Class for monetary and equitable relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

121.    The Class is preliminarily defined as follows:

> All Manhattan Beer customers in the United States who purchased bottled beer from Manhattan Beer and were charged $1.30 as a deposit for 24-bottle cases during the applicable statute of limitations period up to and including the date of judgment.

122.    Excluded from the Class are:  Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

123.    Plaintiffs reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class.

124.    Plaintiffs allege that the Class encompasses tens of thousands of consumer entities who were likewise deceptively billed for 24-bottle cases of beer and other beverages subject to bottle deposits.  Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

125.    The Class is ascertainable because its members can be readily identified using data and information kept by Defendants in the usual course of business and within their control. Plaintiffs anticipate appropriate notice being sent to each Class Member in compliance with all applicable federal rules.

126.    Plaintiffs are adequate class representatives.  Their claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.  Plaintiffs and the other members of the Class were subject to the same or similar conduct engineered by the Defendants.  Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Defendants' conduct.

127.    Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class.

128.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

    a.    Whether RICO Defendants Simon Bergson and Michael McCarthy used the U.S. mail and/or wires through interstate commerce to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, *i.e.*, by using the enterprise as a vehicle to engage in racketeering activity to accomplish their fraudulent invoice scheme;

    b.    Whether Defendants' conduct violates N.Y. GEN. BUS. LAW § 349;

    c.    Whether Defendants' representations and/or omissions are fraudulent;

    d.    Whether Defendants owed a duty of care to Plaintiffs and the Class and violated that duty;

    e.    Whether Class Members have been injured by Defendants' conduct;

f.  Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

g.  The extent of class-wide injury and the measure of damages for those injuries.

129.    A class action is superior to all other available methods for resolving this controversy because (i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct; (iii) Defendants have acted or refused to act on grounds generally applicable to all Class Members; and (iv) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

130.    Further, the following issues are also appropriately resolved on a class-wide basis under FED. R. CIV. P. 23(c)(4):

a.  Whether RICO Defendants Simon Bergson and Michael McCarthy used the U.S. mail and/or wires through interstate commerce to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, *i.e.*, by using the enterprise as a vehicle to engage in racketeering activity to accomplish their fraudulent invoice scheme;

b.  Whether Defendants' conduct violates N.Y. GEN. BUS. LAW § 349;

c.  Whether Defendants' representations and/or omissions are fraudulent;

d.  Whether Defendants owed a duty of care to Plaintiffs and the Class and violated that duty;

e.  Whether Class Members have been injured by Defendants' conduct; and

     f.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

131.    Accordingly, this action satisfies the requirements set forth under FED. R. CIV. P. 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

## COUNT I

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT CONSPIRACY, 18 U.S.C. § 1962(c)–(d)

### (AGAINST RICO DEFENDANTS SIMON BERGSON AND MICHAEL MCCARTHY)

132.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

133.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

### (i)    The Enterprise: Non-RICO Defendant Manhattan Beer

134.    Manhattan Beer Distributors, LLC, a limited liability company incorporated in the state of New York, is a RICO enterprise pursuant to 18 U.S.C. § 1961(4). The company affects interstate commerce by ordering beer from out of state suppliers and in other ways in commerce with out of state companies. On information and belief, Manhattan Beer's servers are not located in the state of New York and its wire transmissions are made in interstate commerce. Manhattan Beer Distributors, LLC is the RICO enterprise, not a RICO defendant.

### (ii)    The RICO Defendants: Simon Bergson and Michael McCarthy

135.    At all relevant times, as described below, in violation of 18 U.S.C. § 1962(d), RICO Defendants Simon Bergson and Michael McCarthy participated in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, by using it as a vehicle to engage in a pattern of racketeering activity (*i.e.*, the fraudulent invoice scheme), which they have devised

and carry out on a daily basis using interstate wires and knowing that their customers will use the U.S. mail and/or interstate wires to pay the excess charges imposed on each bottle of beer and other beverages subject to bottle deposits sold. This racketeering activity violates 18 U.S.C. § 1962(c). Their joint efforts as conspirators violates 18 U.S.C. § 1962(d), which prohibits conspiracies to violate RICO. Additionally, Defendants Bergson and McCarthy are able to participate in the affairs of the Manhattan Beer Distributors, LLC enterprise because they are in the management team of the enterprise. As alleged, Bergson is the CEO/President of the Company, and McCarthy is the Senior Vice President of Operations and reports to Bergson and works closely with Bergson. Upon information and belief, RICO Defendants Bergson and McCarthy directed, developed, managed, and/or substantially assisted in Manhattan Beer's misleading and deceptive billing practices.

### (iii)    The Racketeering Activity

136.    RICO Defendants Bergson and McCarthy use Manhattan Beer's legitimate beer and beverage distribution activities as cover to carry out the fraudulent invoice scheme. Bergson and McCarthy use Manhattan Beer as a vehicle to deliver beer with invoices that misrepresent and conceal the truth of the 10-cent surcharge. Defendants Bergson and McCarthy share in the extra profits generated as a result of the scheme.

137.    For example, in July 2018, RICO Defendants Bergson and McCarthy caused Manhattan Beer to provide a deceptive invoice to Plaintiff Cap 111 that included a 10-cent surcharge masquerading as a government-mandated deposit under the Bottle Bill. The invoice failed to disclose that in addition to the $1.20 deposit fee required for a case of 24-bottles, it added a 10-cent surcharge that was not permitted or required by the Bottle Bill. Manhattan Beer's invoices were designed so that customers would think the extra 10 cents was a required deposit.

138.    As another example, in February 2022, RICO Defendants Bergson and McCarthy caused Manhattan Beer to provide a deceptive invoice to Plaintiff Village Social that included a 10-cent surcharge masquerading as a government-mandated deposit under the Bottle Bill.  The invoice failed to disclose that in addition to the $1.20 deposit fee required for a case of 24-bottles, it added a 10-cent surcharge that was not permitted or required by the Bottle Bill.  Manhattan Beer's invoices were designed so that customers would think the extra 10 cents was a required deposit.

139.    RICO Defendants Bergson and McCarthy control and direct the affairs of the Manhattan Beer Distributors, LLC enterprise and use the other employees of the enterprise as instrumentalities to carry out the fraudulent invoice scheme.    These practices include (i) formulating and devising invoices that are deceptive due to material misrepresentations and omissions, and are misleading, unclear and ambiguous, (ii) creating the net impression that the 10-cent surcharge was a government-mandated deposit under the Bottle Bill; and (iii) omitting the 10-cent surcharge for sophisticated customers, like large supermarkets, which are more likely to notice and object to the fraudulent invoice scheme.

**(iv)    The Predicate Acts**

140.    RICO Defendants Bergson and McCarthy's systematic scheme to charge Manhattan Beer customers an illegal, 10-cent surcharge on 24-bottle cases of beer and other beverages subject to bottle deposits, as described in the paragraphs incorporated by reference from above, was facilitated by the use of the U.S. mail and interstate wires in interstate commerce.

141.    As set forth in detail below, RICO Defendants' scheme constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), and as acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.  RICO Defendants Bergson and McCarthy used the U.S. mail and

interstate wires in violation of 18 U.S.C. §§1341 and 1343 in furtherance of their scheme to defraud Manhattan Beer's customers by using the fraudulent invoice scheme to obtain money from customers using false and/or fraudulent and misleading pretenses.

142.    RICO Defendants Bergson and McCarthy caused the enterprise to use the U.S. mail and interstate wires to take orders from Plaintiffs and the Class, make material misrepresentations and omissions on Manhattan Beer invoices, and accept payment for Manhattan Beer's misleading invoices designed to lure customers into paying the illegal 10-cent surcharge and thereafter remain unaware that they had done so.

143.    Plaintiffs and the Class placed orders with Manhattan Beer in at least two different ways.  First, by logging into Manhattan Beer's customer portal on its website.  Second, by calling Manhattan Beer's sales representatives to place orders via telephone.

144.    On information and belief, the server accessed by the internet-connected handheld devices used by Manhattan Beer's drivers is not located in the state of New York and transmissions to and from these devices cross state lines.  As alleged above, Manhattan Beer's server is located in either Virginia or the state of Washington.

145.    On information and belief, the server used by Manhattan Beer's website is not located in the state of New York and transmissions to and from this server cross state lines.  As alleged above, Manhattan Beer's server is located in either Virginia or the state of Washington.

146.    Plaintiff Village Social pays Manhattan Beer's invoices, including the 10-cent surcharge, via the U.S. mail and/or wires.  Plaintiff Village Social primarily pays Manhattan Beer's invoices by sending checks via the U.S. mail.  Village Social occasionally pays for orders via the Manhattan Beer website's customer portal.

147.    Manhattan Beer's invoices concealed the true nature of the 10-cent surcharge and disguised it as part of the lawful deposit fee required by the Bottle Bill to fraudulently induce Manhattan Beer customers to pay the extra fee.

148.    Through the U.S. mail and interstate wires, the Company collected the illegal 10-cent surcharge that Manhattan Beer consumers were defrauded into paying by Manhattan Beer invoices containing material misrepresentations and omissions.

149.    RICO Defendants Bergson and McCarthy's omissions and misrepresentations were material to Plaintiffs and the members of the Class.  Had RICO Defendants made full, accurate and honest disclosures about the 10-cent surcharge, Plaintiffs would have been aware that it was not a lawful deposit pursuant to the Bottle Bill and would have challenged this extra fee or would not have paid it.  Each of these omissions and/or misrepresentations constituted an act of mail and/or wire fraud for purposes of 18 U.S.C. §§ 1341 and 1343.

150.    By using the U.S. mail to collect payment of the illegal 10-cent surcharge that was the fruit of their fraudulent invoice scheme, the RICO Defendants engaged in repeated acts of mail fraud in violation of 18 U.S.C. § 1341.

151.    Additionally, by using the internet, telephone and facsimile transmissions to communicate false and misleading information about the fraudulent invoice scheme to customers in order to pursue and achieve their fraudulent scheme and to collect payment of the illegal 10-cent surcharge that was the fruit of their fraudulent invoice scheme, the RICO Defendants engaged in repeated acts of wire fraud in violation of 18 U.S.C. §1343.

152.    In pursuing their fraudulent invoice scheme, the RICO Defendants knowingly and fraudulently concealed and/or omitted material information from Plaintiffs and members of the Class.

153.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§1961(5) and 1962(c).  In particular, each deceptive invoice provided to Plaintiffs and the Class was an act of racketeering activity and each payment received by the U.S. mail and interstate wires was an act of racketeering activity.  Further, Plaintiffs have been subjected to RICO Defendants Bergson and McCarthy's deception for a period spanning more than two years.  Each Plaintiff received at least one fraudulent invoice generated by Manhattan Beer drivers' internet-connected handheld devices and paid multiple illegal 10-cent surcharges by the U.S. mail and/or interstate wires via the Manhattan Beer website's customer portal.

154.    All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the enterprise.  The racketeering activity, committed by RICO Defendants Bergson and McCarthy by participating in the affairs of the Manhattan Beer Distributors, LLC enterprise through a scheme to defraud, employed a similar method (the fraudulent invoice), was related (all for Manhattan Beer deliveries), had a similar purpose (to deceive consumers into paying a 10-cent surcharge), involved similar participants (Bergson and McCarthy), and resulted in a similar impact on Plaintiffs and members of the Class (the collection of unlawful fees).  Because this case is brought on behalf of a class of similarly situated Manhattan Beer customers who were charged fraudulent fees, Plaintiffs will provide further details once discovery is complete.  While Plaintiffs cannot plead the precise dates of all the RICO Defendants' uses of the U.S. mail and interstate wires, because this information cannot be alleged without access to Defendants' records, Plaintiffs have pled dates known to them.

155.    The pattern of racketeering activity is currently ongoing and open-ended and threatens to continue indefinitely unless this Court enjoins the racketeering activity.  RICO

Defendants Bergson and McCarthy's fraudulent invoice scheme is centered around Manhattan Beer's delivery of cases of beer and other beverages subject to bottle deposits to its customers and is an ongoing wrongful scheme that has been repeated millions of times a year for many years. It is the regular way Bergson and McCarthy conduct the business of the enterprise using the cover of its legitimate beer and beverage distribution activities. Plaintiffs are small businesses from the New York City metropolitan area. They were deceived by fraudulent invoices delivered beginning no later than February 18, 2016. The fraudulent invoice scheme is continuing through present day.

156.    As set forth in the paragraphs incorporated by reference from above, in violation of 18 U.S.C. § 1962(d), RICO Defendants Simon Bergson and Michael McCarthy conspired to violate the provisions of 18 U.S.C. § 1962(c).

157.    As a direct and proximate result of these violations of 18 U.S.C. § 1962(c) and (d), Plaintiffs and members of the Class have suffered substantial damages and been injured in their business or property by the predicate acts which make up RICO Defendants Bergson and McCarthy's pattern of racketeering activity that comprises the fraudulent invoice scheme. Plaintiffs also seek an injunction pursuant to §1964(a) prohibiting RICO Defendants from further engaging in the fraudulent invoice scheme.

## COUNT II

## NEW YORK GENERAL BUSINESS LAW § 349

## (AGAINST ALL DEFENDANTS)

158.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

159.    Plaintiffs bring this claim under N.Y. GEN. BUS. LAW § 349 on their own behalf and on behalf of each member of the Class.

160.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349.

161.    Defendants' billing practices are consumer-oriented in that they are directed at small businesses, which are members of the consuming public.

162.    Defendants Manhattan Beer, LLC, its President/CEO Simon Bergson, and its Senior Vice President of Operations Michael McCarthy have engaged in, and continue to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349 including:

  a.  Misrepresenting that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

  b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

  c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

  d.  Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of Manhattan Beer invoices was required and mandated by governmental authority.

163.    The aforementioned acts are unfair, unconscionable, and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

164.    As a direct and proximate result of Defendants' unlawful and deceptive billing practices, Plaintiffs and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action.

165.    Plaintiffs and the members of the Class further seek equitable relief against Defendants. Pursuant to N.Y. GEN. BUS. LAW § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices to be unlawful, an order

enjoining Defendants from engaging in any further unlawful conduct, and an order directing Defendants to return to the Plaintiffs and the Class all amounts wrongfully assessed and/or collected.

166.     As a result of Defendants' unfair and deceptive practices, Plaintiffs and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their damages, costs and reasonable attorneys' fees and all other relief available under N.Y. GEN. BUS. LAW § 349.

<h3 align="center">COUNT III</h3>

<h3 align="center">COMMON LAW FRAUD</h3>

<h3 align="center">(AGAINST ALL DEFENDANTS)</h3>

167.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

168.     Plaintiffs brings this common law fraud claim on their own behalf and on behalf of each member of the Class.

169.     Defendants Manhattan Beer, its President/CEO Simon Bergson, and Senior Vice President of Operations Michael McCarthy made material misrepresentations and concealed material facts concerning their bottle deposit charges including:

a.  Misrepresenting that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit when in fact the maximum lawful deposit charge was only $1.20;

b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

46

      d.   Misrepresenting that the 10-cent surcharge listed in the "DPST" (deposit) column of Manhattan Beer invoices was required and mandated by governmental authority.

170.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee. Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

171.    Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

172.    Defendants' material misrepresentations and omissions were willful and intentional and were committed to boost Defendants' profits at Plaintiffs' and the Class's expense.

173.    The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiffs and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

174.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable by Plaintiffs and the Class.

175.    Plaintiffs were unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

176.    Plaintiffs and the Class reasonably relied on Defendants' misrepresentations and omissions.

177.    Defendants' fraud by misrepresentation and concealment caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

178.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being with the intent to enrich Defendants.  Defendants' misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

## COUNT IV

### FRAUDULENT CONCEALMENT

### (AGAINST ALL DEFENDANTS)

179.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

180.    Plaintiffs bring this fraudulent concealment claim on their own behalf and on behalf of each member of the Class.

181.    Defendants Manhattan Beer, its President/CEO Simon Bergson, and Senior Vice President of Operations Michael McCarthy concealed material facts concerning their bottle deposit charges including:

   a.   Failing to disclose that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was not a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

   b.   Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer or other beverage subject to a bottle deposit sold;

   c.   Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

   d.   Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of Manhattan Beer invoices was not required and mandated by governmental authority.

182.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent

add-on fee. Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

183.    Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

184.    Defendants' material omissions were willful and intentional and were committed simply to boost Defendants' profits at Plaintiffs' and the Class's expense.

185.    The information as to Defendants' true reason for grafting the deceptive 10-cent add-on fee onto the otherwise lawful bottle deposit charge was material to Plaintiffs and the Class, yet Defendants misrepresented and concealed the actual nature of the charge.

186.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because this information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class.

187.    Plaintiffs were unaware of these omitted material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

188.    Plaintiffs and the Class reasonably relied on Defendants' omissions.

189.    Defendants' fraudulent concealment caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

190.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being with the sole intent to enrich Defendants. Defendants' misconduct warrants an assessment of punitive damages

in an amount sufficient to deter such conduct in the future, which amount is to be determined according to the proof at trial.

## COUNT V

## NEGLIGENT MISREPRESENTATION

## (AGAINST ALL DEFENDANTS)

191.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

192.    Plaintiffs bring this negligent misrepresentation claim on its own behalf and on behalf of each member of the Class.

193.    Defendants Manhattan Beer and its President/CEO Simon Bergson, and Senior Vice President of Operations Michael McCarthy failed to disclose material facts concerning their bottle deposit charges including:

    a.  Failing to disclose that the $1.30 charge on Manhattan Beer invoices to customers for 24-bottle cases was a lawful and state-mandated bottle deposit because the maximum lawful deposit charge was only $1.20;

    b.  Failing to disclose that the Company was adding a 10-cent surcharge to each case of bottled beer sold;

    c.  Failing to disclose that the 10-cent surcharge was not in fact a deposit required by the Bottle Bill; and

    d.  Failing to disclose that the 10-cent surcharge listed in the "DPST" (deposit) column of Manhattan Beer invoices was not required and mandated by governmental authority.

194.    Defendants had a legal duty to charge customers only those bottle deposit amounts that were authorized by law, and not deviate from the law's mandated amount with their 10-cent add-on fee.  Further, Defendants had a duty to disclose to customers that they had no legitimate basis for including the 10-cent add-on charge and that by doing so they were profiteering and/or price gouging.

195.    Defendants sold Plaintiffs and the Class beer and other beverages subject to bottle deposits without disclosing any of the aforementioned material facts.

196.    Defendants' failure to disclose these material facts led Plaintiffs and the Class to incorrectly believe that the 10-cent add-on fee was charged pursuant to the Bottle Bill.

197.    Defendants had a duty to disclose the material information they concealed as to the 10-cent add-on charge because the information was known and accessible only to Defendants, Defendants had superior knowledge and access to the facts, Defendants authored the invoices containing the 10-cent add-on fee, and Defendants knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class.

198.    Plaintiffs were unaware of these material facts and would not have agreed to pay the hidden add-on deposit fee if they had known these concealed and/or suppressed facts.

199.    Defendants understand that customers like Plaintiffs and the Class desire accurate and truthful information in invoices for a serious purpose, namely, accurately managing the finances of their businesses.

200.    Plaintiffs and the Class reasonably relied on Defendants' omissions.

201.    Defendants' negligent misrepresentation caused damage to Plaintiffs and the Class, who are entitled to damages and other legal and equitable relief as a result.

202.    Therefore, Defendants are liable to Plaintiffs and Class Members for the damages that they have suffered as a result of Defendants' actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)    Issue an order certifying the Class, appointing the Plaintiffs as Class Representatives, and designating the undersigned firm as Class Counsel;

(b)  Find that Defendants Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy have committed all the violations of law alleged herein;

(c)  Render an award of compensatory damages of at least $50,000,000, the precise amount of which is to be determined at trial;

(d)  Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(e)  Declare that Defendants have committed the violations of law alleged herein;

(f)  Render an award of punitive damages;

(g)  Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(h)  Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiffs demand that a jury determine any

issue triable of right.

Dated:  September 21, 2023
        New York, New York

WITTELS MCINTURFF PALIKOVIC

By:      /s/ Steven L. Wittels
         Steven L. Wittels (SW-8110)
         J. Burkett McInturff (JM-4564)
         Ethan D. Roman (ER-5569)
         305 BROADWAY, 7TH FLOOR
         NEW YORK, NEW YORK 10007
         Telephone: (914) 775-8862
         Facsimile:  (914) 775-8862
         slw@wittelslaw.com
         jbm@wittelslaw.com
         edr@wittelslaw.com

         *Attorneys for Plaintiffs and the Proposed Class*