

May 1, 2024

<u>Via ECF</u>
The Hon. Andrew E. Krause
United States District Court
300 Quarropas St.
White Plains, NY 10601

**Re:** *Cap 111 Enters. LLC v. Manhattan Beer Distrib., LLC*, No. 22 Civ. 1408 (CS) (AEK)

Dear Judge Krause,

We write on behalf of Plaintiffs and the proposed Class pursuant to the Court's March 19, 2024 Order directing the parties to submit letters regarding disputes to be raised at the May 8 conference.

Defendants have produced a remarkably low number of responsive documents, and there are significant gaps in the production. Therefore, Plaintiffs request the Court order Defendants to:

- **Produce a sample set of documents for testing**. This will help assess (a) how many relevant documents there might be in the ESI Defendants already collected, and (b) the quality of the keywords used to pull potentially relevant documents from that collection.

- **Add custodians that have been shown to possess unique relevant discovery**. There is evidence of others whose emails and other ESI could contain important evidence.

- **Provide long-sought transparency into their ESI sources**. This will ensure a more complete search for relevant documents.

As set forth below, Plaintiffs' requests are clearly justified, and Defendants' refusals lack merit.

1. **Defendants' Failure to Address Clear Production Shortcomings Requires Testing**

After the parties agreed on search terms, Defendants conducted a manual review of search hits. While keyword searching standard practice, it has documented limitations. *See, e.g., William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) (Peck, M.J.). These limitations can be further amplified by the subjectivity of manual review. Consequently, established methods exist to address these shortcomings and identify the percentage of missed relevant documents.

Here, there are ample grounds to use the available tools. Defendants have identified just 2,267 responsive documents from a collection of over 1.6 million.[1] The keywords hit on 89,376 documents. Defendants' production is thus a miniscule 0.13% of their collection (less than 0.1% if omitting the categories in n.1), and 2.5% of the hits (1.5% if n.1 documents are excluded).

---

[1] This includes 200 documents produced without search terms at the outset of discovery, 70 documents that used a discrete, limited, and separate set of search terms, and the 600 documents Defendants logged as privileged.

Defendants' production also has substantive gaps.  For example, despite implementing a billing practice on tens of millions of transactions, Defendants produced no documents on how this large-scale operation functioned. This includes how it was executed, taught to employees, evaluated, or optimized.  Similarly, no documents detail the practice's financial impact or relevant metrics. While Defendants produced company responses to customer complaints, there is a lack of documents regarding how to respond to such complaints or internal discussions about customer reaction to the practice.  Defendants invoiced an extra fee inside of a state-mandated charge yet produced nothing reflecting internal conversations about this unusual practice.

The above-cited statistics and clear production gaps strongly suggest keyword shortcomings and/or an overly restrictive manual review producing too many "false positives" (nonresponsive documents recalled by keywords) and "false negatives" (responsive documents missed by search terms or hits that were wrongly deemed non-responsive).  *See, e.g.*, *Winfield v. City of New York*, No. 15 Civ.  5236 (LTS) (KHP), 2017 WL 5664852, at *11 (S.D.N.Y. Nov. 27, 2017) (low responsiveness rate and substantive deficiencies in production "suggest there may have been some human error in categorization that may have led to gaps in the . . . production").

To determine these deficiencies' impact, Plaintiffs seek a proper random sample of (1) non-hits and (2) hits marked non-responsive.  Plaintiffs can then use this "elusion" sample to determine how many responsive documents eluded production.[2]  Courts routinely use elusion testing both to identify false negatives, *see, e.g.*, *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492–96 (N.D. Ill. 2018); *Winfield*, 2017 WL 5664852, at *11, and to eliminate false positives, *see, e.g.*, *William A. Gross*, 256 F.R.D. 134 at 136 (discovery "methodology must be quality control tested to assure accuracy in retrieval and elimination of "false positives.").

"Elusion testing is generally considered a 'validation' measure because it can ultimately validate, or confirm the reasonableness and proportionality, of the producing party's production and thus help satisfy the Rule 26(g) reasonable inquiry standard."  *Deal Genius, LLC* 2023 WL 4556759, at *5 (N.D. Ill. July 14, 2023); *see also City of Rockford*, 326 F.R.D. at 494–96 (holding elusion protocol "reasonable" and "proportionate" under Rule 26(g)); *William A. Gross*, 256 F.R.D. at 136 ("[c]ommon sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.") (citation omitted).  "[W]ithout such testing," keyword searches may not be "substantively reasonable." *In re Diisocyanates Antitrust Litig.*, No. 18 MC 1001, 2021 WL 4295729, at *10 (W.D. Pa. Aug. 23, 2021).

Moreover, "validation and quality assurance are fundamental principles to ESI production." *City of Rockford*, 326 F.R.D. at 494.  Yet Defendants refused to engage unless Plaintiffs did the same. This "tit-for-tat or what is good for the goose," is "not a valid basis" to withhold discovery. *Precision IBC, Inc. v. PCM Cap.*, LLC, No. 10 Civ 682 (CG) (B), 2012 WL 750744, at *6 (S.D. Ala. Mar. 5, 2012) (rejecting claim that defendant should not be ordered to produce financial information unless plaintiff produces same).  The caselaw rejecting this tactic is legion; it is axiomatic that a party must independently demonstrate the need for the discovery it seeks.  *See,*

---

[2] *Deal Genius, LLC v. O2COOL, LLC*, No. 21 Civ. 2046, 2023 WL 4556759, at *5 (N.D. Ill. July 14, 2023) ("Elusion testing is a standard quality assurance practice in electronic discovery and essential for providing transparency on whether material documents have eluded the search terms."); *City of Rockford*, 326 F.R.D. at 494 ("sampling the null set when using key word searching provides for validation to defend the search and production process, and was commonly used before the movement towards TAR").

*e.g.*, *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345 (AJN) (KHP), 2020 WL 2488179, at *4 (S.D.N.Y. May 14, 2020) (admonishing parties that "[w]hat is good for the goose is good for the gander . . . is not what the Federal Rules of Civil Procedure envision").[3] Plaintiffs' request is reasonable and Defendants should produce the requested sample. *See Winfield*, 2017 WL 5664852, at *11 (ordering production of sample of non-responsive documents to requesting party).

### 2. The Court Should Order Defendants To Add Additional ESI Custodians

After identifying deficiencies in Defendants' production (as described above), Plaintiffs requested twelve additional ESI custodians. Following discussions, three custodians were removed from the request. However, Defendants refused to add any of the remaining nine. Plaintiffs are asking the Court to compel Defendants to produce documents from a smaller group of just six custodians believed to hold unique and relevant information.

First, with respect to the dearth of financial documents produced, Plaintiffs propose that Manhattan Beer's former and current CFOs George Wertheimer and Mark Johnson be added as custodians. Defendants' only response to this request was that they thought it disproportionate.

Second, Defendants' production includes emails about certain customers wrongly charged the fee. Many of these emails included Manhattan Beer employees John Vacanti, Ender Berrios, and Ziad Eljamal. Defendants claim these individuals were "administratively" involved, merely "coordinating" changes in Manhattan Beer's systems to remove the fee, or handled "systems issues." But discovery shows that these individuals had more than just route exposure to the issue of customers wrongly charged the fee. For Mr. Eljamal, the case is especially compelling: he is involved in external correspondence with third parties that touch on the visibility of the fee on invoices. These three employees should be added as custodians.

Third, in an email regarding an outline of Manhattan Beer's cardboard distribution process, which referenced the 10-cent deposit on cardboard boxes, CEO Simon Bergson indicated that Manager of Security Redemption Mike Paolucci had management responsibility vis-à-vis this process.

### 3. Defendants Should Provide ESI Source Transparency

As the Court will recall, at the outset of discovery Defendants refused to provide transparency into their ESI sources, claiming that working with Plaintiffs to identify the appropriate ESI sources was "discovery on discovery." Considering the deficiencies in Defendants' production, Plaintiffs are renewing the requests they made to the Court in ECF Nos. 53–54. Those requests ask that the

---

[3] *See also Macias v. Sw. Cheese Co.*, L.L.C., No. 12 Civ. 350 (LH) (WPL), 2013 WL 11326737, at *2 (D.N.M. Oct. 2, 2013) (overruling objection to ruling that "rejected Plaintiff's what's-good-for-the-goose-is-good-for-the-gander argument based on Plaintiff agreeing to Defendant's broad discovery requests, because it did not have support in case law and could not transform an otherwise irrelevant discovery request into a relevant one"); *Am. Needle, Inc. v. New Orleans*, No. 04 Civ. 7806, 2012 WL 4327395, at *3 (N.D. Ill. Aug. 17, 2012) (rejecting "goose-gander approach to discovery production"). Moreover, even if Defendants could demonstrate a need for Plaintiffs to perform validation (they cannot), "it is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014). In fact, courts have found such "tit-for-tat refusal [to provide requested discovery] indefensible . . . [and] sanctionable." *Lubahn v. Absolute Software*, No. 16 Civ. 14425, 2017 WL 6461863, at *1 (E.D. Mich. Dec. 19, 2017); *Book Dog Books*, 298 F.R.D. at 148 (imposing sanctions for improper tit-for-tat objection).

Court order Defendants to respond to discovery seeking the identity of Defendants' potential relevant ESI sources, namely, discovery requested in Plaintiffs' 1st RFPs and 1st Interrogatories.[4]

As outlined in our earlier letters on this request, ECF Nos. 53–54, this discovery is necessary to learn about employees with potentially relevant information, sources of potentially relevant ESI, and names of witnesses with knowledge of information relevant to the subject matter of the action. ECF No. 54 at 2–3.  Specifically, these requests seek information regarding:

- Litigation hold recipients (1st Interrog. No. 6, Ex. A at 5; 1st RFPs No. 26, Ex. B at 10);

- Information regarding databases and reporting systems that touch on deposit practices, including field trees (1st Interrog. No. 7, Ex. A at 5; 1st RFPs Nos. 27–28, Ex. B at 10);

- Servers that may contain relevant information (1st Interrog.  No. 8, Ex. A at 5–6);

- Corporate-level file shares where documents are stored and employees with access to those file shares (1st Interrog. Nos. 9–10, Ex. A at 6; 1st RFPs No. 23, Ex. B at 9);

- Hard drives preserved and those drives' custodians (1st Interrog. No. 11, Ex. A at 6);

- The forms of communication used (1st Interrog. No. 12, Ex. A at 6);

- Email system disclosures (1st Interrog. No. 13, Ex. A at 6; 1st RFPs No. 22, Ex. B at 9);

- Portable electronic devices disclosures (1st Interrog. No. 14, Ex. A at 6; 1st RFPs No. 26, Ex. B at 10); and

- Potentially relevant data is stored with third parties (1st Interrog. No. 15, Ex. A at 6).

Your Honor denied Plaintiffs' requests as premature at the April 23, 2023, conference.  **Ex. C** at 17:13–23.  But at the same time, the Court warned Defendants that "as a practical matter, the party who engages in the collection, review, and production of ESI, without conferring in advance with her adversary, proceeds at her peril.  If it turns out that the production was not reasonable and proportionate, she might have to do it again." *Id.* at 15:24–16:7.  This is exactly the case here—Defendants refused to disclose basic background information regarding Manhattan Beer's ESI systems and individuals with knowledge of potentially relevant information at their own peril.

Now that Defendants' production has been shown deficient, they must respond to these discovery requests to ensure that discoverable information has been identified and searched, and the relevant documents and information produced.  As retired S.D.N.Y. Magistrate Judge Francis has noted in his role as a court-appointed E-Discovery Special Master, "[t]ransparency transcends cooperation" and cooperation "does not mean merely that parties must discuss issues concerning the discovery of ESI; it requires that they disclose information sufficient to make those discussions, as well as any court review, meaningful." *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *7; *see also William A. Gross*, 256 F.R.D. at 136 ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.").

Thank you for the Court's consideration of these disputed issues.

---

[4] Defendants Revised Responses to Plaintiffs' 1st Interrogs. are attached hereto as **Ex. A**, and Defendants' Revised Responses to Plaintiff's 1st RFPs are attached hereto as **Ex. B**.

                                        Respectfully Submitted,

                                        /s/ J. Burkett McInturff
                                              J. Burkett McInturff

cc: All Counsel of Record (*via ECF*)             *Counsel for Plaintiffs and the Proposed Class*