**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CAP 111 ENTERPRISES LLC, 251 E. MAIN ST., LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC,<br><br>on behalf of themselves and all others similarly situated,<br><br>                          Plaintiffs,<br><br>            v.<br><br>MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY,<br><br>                       Defendants. | Case No.: 22-CV-1408 (CS) (AEK) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

---

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Steven L. Wittels
Tiasha Palikovic
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
slw@wittelslaw.com
tpalikovic@wittelslaw.com
edr@wittelslaw.com

Dated:  December 9, 2024    *Counsel for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

    A.    Factual Allegations and Plaintiffs' Pre-Suit Investigation............................. 2

    B.    Overview of the Litigation............................................................................. 3

    C.    Settlement Negotiations................................................................................. 4

II.   SUMMARY OF THE SETTLEMENT TERMS ...................................................... 5

    A.    Eligible Class Members ................................................................................. 5

    B.    The Settlement Amount and Allocation Plan ................................................ 6

    C.    Business Practice Changes............................................................................. 6

    D.    Mutual Releases ............................................................................................ 7

    E.    The Settlement Administrator ....................................................................... 7

III.  RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN........... 7

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED...................... 9

    A.    Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class ................................................................ 11

    B.    Presence of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times........................................................................... 12

    C.    Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Litigation Risks ............... 13

        1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)….. ........................................................14

        2.    Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 to 6) .......15

    D.    Effectiveness of the Proposed Method of Distributing Relief: A Fair Allocation Plan and Direct Payments Without a Claims Process Is the Preferred Method.................... 17

E.   The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request Is Well Within Second Circuit Norms .............................................. 18

F.   Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and Is Reasonable ......................... 22

G.   The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate ............................................................................... 23

    1.   The Reaction of the Class (*Grinnell* Factor 2) ....................................... 23

    2.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) .................................................. 23

    3.   Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement is Unfair (*Grinnell* Factor 7) ..................... 24

    4.   The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ......... 24

V.   THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED ........................... 25

A.   Numerosity .............................................................................................. 26

B.   Commonality ............................................................................................ 26

C.   Typicality ................................................................................................ 27

D.   Adequacy ................................................................................................ 28

E.   Certification is Proper Under Rule 23(b) ......................................................... 28

    1.   Common Questions Predominate .......................................................... 28

    2.   A Class Action Is a Superior Mechanism for Adjudicating Claims ................. 29

VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ...................... 31

VII.   THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED ................................................................................ 31

CONCLUSION ................................................................................................... 33

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591, 625 (1997). .................................................................................... 29, 30

*Beissel v. Western Flyer Express, LLC*,
 No. 21-CV-903, 2023 WL 7288735 (W.D. Okla. Nov. 3, 2023)................................ 20

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
 504 F. Supp. 3d 265 (S.D.N.Y. 2020) ..................................................................... 21

*Bell v. Pension Comm. of ATH Holding Co.*,
 No. 15-CV-2062 (TWP) (MPB), 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...................... 19

*Belton v. GE Cap. Consumer Lending, Inc.*,
 No. 21-CV-9492, 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022)................................. 16

*Brazier v. Real Hospitality Group, LLC*,
 No. 20-CV-08239, 2021 WL 7210088 (S.D.N.Y. Nov. 12, 2021) ............................. 9

*Bryant v. Potbelly Sandwich Works*,
 No. 17-CV-7638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020)...................... 14, 19

*Budicak Inc. v. Lansing Trade Grp., LLC*,
 No. 19-CV-2449, 2023 WL 7189144 (D. Kan. June 16, 2023)................................. 20

*Carnegie v. Household Int'l., Inc.*,
 376 F.3d 656 (7th Cir. 2004)................................................................................. 30

*Caste v. Trustees of Columbia Univ. in City of New York*,
 No. 16-CV-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ........................... 19

*Charles v. Pinnacle Too, LLC*,
 No. 22-CV-4232, 2024 WL 4491560 (S.D.N.Y. Oct. 15, 2024) ................................ 12, 27, 28

*Christine Asia Co., Ltd. v. Yun Ma*,
 No. 15-MD-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................... 17, 32

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................... 10, 11, 14

*Clark v. EcoLab*,
  No. 07-CV-8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)........................... 20

*Clarke v. Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................... 20

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).......................................................................... 26

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)......................................................................... 11

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
  No. 20-CV-456, 2021 WL 7906584 (E.D.N.Y. May 25, 2021) ........................... 22

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).......................................................................... 14

*de Lacour v. Colgate-Palmolive Co.*,
  338 F.R.D. 324 (S.D.N.Y. 2021) .................................................................. 30

*Delijanin v. Wolfgang's Steakhouse Inc.*,
  No. 18-CV-7854, 2021 WL 535635 (S.D.N.Y. Feb. 12, 2021)...................... 15, 16

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ......................................................................... 9

*Emeterio v. A&P Rest. Corp.*,
  No. 20-CV-970, 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022)............................ *passim*

*Famular v. Whirlpool Corp.*,
  No. 16-CV-944, 2019 WL 1254882 (S.D.N.Y. Mar. 18, 2019) ........................... 29

*Ferrick v. Spotify USA Inc.*,
  No. 16-CV-8412, 2018 WL 2324076 (S.D.N.Y. May 22, 2018)........................... 7

*Fleisher v. Phoenix Life Ins. Co.*,
No. 14-CV-8714, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................... 7, 18, 19

*Flores v. CGI Inc.*,
No. 22-CV-350, 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ............................ 15, 23, 26, 30

*Goidel v. Aetna Life Ins. Co.*,
No. 21-CV-7619, 2024 WL 4441806 (S.D.N.Y. Oct. 8, 2024) ............................. 10, 12, 13, 23

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................................................. 20

*Gonzalez v. Hanover Ventures Marketplace LLC*,
No. 21-CV-1347, 2024 WL 1157074 (S.D.N.Y. Mar. 18, 2024) ....................................... 27, 28

*Grissom v. Sterling Infosystems, Inc.*,
No. 20-CV-7948, 2024 WL 4627567 (S.D.N.Y. Oct. 30, 2024) .................................... 9, 13, 17

*Hines v. Equifax Info. Servs. LLC*,
No. 19-CV-6701, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) ............................................ 28

*In re 3D Sys. Sec. Litig.*,
No. 21-CV-50909, 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ................................................. 19

*In re Actos Antitrust Litig.*,
No. 13-CV-9244, 2024 WL 4251891 (S.D.N.Y. Aug. 9, 2024) .............................................. 26

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. 02-CV-5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................. 15

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................................... 14

*In re Banc of California Sec. Litig.*,
No. 17-CV-118, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ............................................. 20

*In re BioScrip, Inc. Sec. Litig.*,
273 F. Supp. 3d 474 (S.D.N.Y. 2017) .................................................................................... 21

*In re Canon U.S.A. Data Breach Litig.*,
No. 20-CV-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) ............................................ 13

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01-MDL-1409 (WHP), 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .............................. 25

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................... 21

*In re Grana y Montero S.A.A. Sec. Litig.*,
No. 17-CV-01105, 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) .......................................... 24

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. Nov. 7, 2019) ......................................................... 10, 11, 16, 23

*In re GSE Bonds Antitrust Litig.*,
No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .................................. 25

*In re Kind LLC "Healthy and All Natural" Litig.*,
337 F.R.D. 581 (S.D.N.Y. 2021) ......................................................................................... 30

*In re Lumber Liq. Chinese-Mfd. Flooring Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020)................................................................................................ 22

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) .................................................................................. 16

*In re NIO, Inc. Sec. Litig.*,
No. 19-CV-1424, 2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023).............................................. 27

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008).................................................................................................. 21

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
No. 20-CV-5917, 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ................................................ 12

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y 1997) .................................................................................... 16, 24

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-MDL-1720, 2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019)........................................ 21

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-CV-6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................ 22

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-CV-06728 (CM) (SDA), 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...................... 24

*In re Tenaris S.A. Sec. Litig.*,
   No. 18-CV-7059, 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ........................................... 15

*In re Visa Check/Master Money Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) .............................................................................................. 28, 29

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   No. 08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ........................................ 22

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. 2014) .............................................................................................. 11

*Kassman v. KPMG LLP*,
   No. 11-CV-3743, 2021 WL 1393296 (S.D.N.Y. Apr. 12, 2021) ............................................. 20

*Kendall v. Odonate Therapeutics, Inc.*,
   No. 20-CV-01828, 2022 WL 1997530 (S.D. Cal. June 6, 2022) .............................................. 20

*Krasnansky v. JCCA*,
   No. 22-CV-6577, 2023 WL 6141240 (S.D.N.Y. Sept. 20, 2024) ............................................. 18

*Lawrence v. NYC Med. Practice, P.C.*,
   No. 18-CV-8649, 2024 WL 307842 (S.D.N.Y. Jan. 26, 2024) ................................................ 16

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480, 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..................................... *passim*

*Lopez v. Fashion Nova*,
   No. 20-CV-9238 (LGS), 2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ................................... 21

*Martinenko v. 212 Steakhouse, Inc.*,
   No. 22-CV-518, 2024 WL 3928849 (S.D.N.Y. Aug. 13, 2024) ............................ 28, 29, 30, 32

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................................ 19

*McFadden v. Sprint Comm's, LLC.*,
   No. 22-CV-2464, 2024 WL 3890182 (D. Kan. Aug. 1, 2024) ................................ 20

*McIntyre v. RealPage, Inc.*,
   No. 18-CV-3934, 2023 WL 2643201 (E.D. Pa. Mar. 24, 2023) .............................. 20

*Medina v. NYC Harlem Foods Inc*,
   No. 21-CV-1321, 2024 WL 2751127 (S.D.N.Y. May 28, 2024) ............................. 32

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210, 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ............................. 29

*Mohney v. Shelly's Prime Steak, Crab & Oyster Bar*,
   No. 06-CV-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................... 20

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ................................................................ 10, 13, 14, 22

*Nguyen Educ. Comp. Sys.*,
   No. 22-CV-1743, 2024 WL 3691615 (W.D. Pa. Aug. 7, 2024) .............................. 20

*Nichols v. Noom, Inc.*,
   No. 20-CV-3677, 2022 WL 2705354 (S.D.N.Y. Jul. 12, 2022) ............................. 7, 15, 24, 27

*Pearlstein v. Blackberry Ltd.*,
   No. 13-CV-7060, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................. 17, 18, 30

*Pelzer v. Vassalle*,
   655 Fed. Appx. 352 (6th Cir. 2016) ........................................................................ 22

*Polvay v. FCTI, Inc.*,
   713 F. Supp. 3d 1 (S.D.N.Y. 2024) ................................................................... 27, 29

*Puddu v. 6D Global Techs., Inc.*,
   No. 15-CV-8061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ................... 15, 24, 25

*Quow v. Accurate Mech. Inc.*,
   No. 15-CV-09852, 2018 WL 3368673 (S.D.N.Y. July 10, 2018) ....................... 15, 16

*Reyes v. Summit Health Mgmt., LLC*,
　No. 22-CV-9916, 2024 WL 472841 (S.D.N.Y. Feb. 6, 2024) ..................................... 11, 13, 23

*Robidoux v. Celani*,
　987 F.2d 931 (2d Cir. 1993) ....................................................................................... 27

*Soler v. Fresh Direct, LLC*,
　No. 20-CV-3431, 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) .............................. 23

*Solis v. OrthoNet* LLC,
　No. 19-CV-4678, 2021 WL 2678651 (S.D.N.Y. June 30, 2021)............................... 19

*Sonterra Master Fund, Ltd. v. Barclays Bank PLC*,
　No. 15-CV-3538, 2023 WL 3749996 (S.D.N.Y. June 1, 2023)................................. 14

*Sykes v. Harris*,
　No. 09-CV-8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..................... 18

*Tennille v. W. Union Co.*,
　No. 09-CV-938 (MSK) (KMT), 2013 WL 6920449 (D. Colo. Dec. 31, 2013)........ 19

*Trinidad v. Breakaway Courier Sys., Inc.*,
　No. 05-CV-4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)................................. 27

*Volino v. Progressive Cas. Ins. Co.*,
　No. 21-CV-6243, 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023) ............................. 29

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) .................................................................................................. 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　396 F.3d 96 (2d Cir. 2005)................................................................................... 20, 25

*Zhu v. Wanrong Trading Corp.*,
　No. 18-CV-417, 2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024)................................. 9

**Statutes**

18 U.S.C. § 1962 ........................................................................................................ 3

N.Y. Gen. Bus. L. § 349 .................................................................................... 2, 3, 5

**Other Authorities**

Federal Judicial Center,
  *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed. (2010) ...................... 19

Judges' Class Action Notice and Claims Process Checklist ......................................... 17

Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010 ......... 19

Wright & Miller, 7A Fed. Prac. & Proc. Civ. (3d ed.) ................................................. 11

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

**Treatises**

Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* (4th ed. 2002) ....................................................... 8, 9, 25

Plaintiffs Cap 111 Enterprises LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC (collectively "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement with Defendants Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy ("McCarthy") (collectively, "Manhattan Beer" or "Defendants"). The parties' Class Action Settlement Agreement ("Settlement Agreement"), is attached as Exhibit A to the accompanying Declaration of J. Burkett McInturff, dated Dec. 9, 2024 ("McInturff Decl.").

## INTRODUCTION

This case challenged the way Manhattan Beer invoiced customers for cardboard recycling deposits. Following nearly three years of investigation and litigation, the parties have reached a resolution that achieves a substantial portion of this case's goal. As described below, the settlement establishes a $5,750,000 cash fund, and Manhattan Beer has reformed its invoicing practices.

This outcome was no easy feat. It took more than two years of hard-fought litigation that occasioned more than a dozen contested motions and applications, three amended class action complaints, and the production of more than 8 gigabytes of electronically stored information. Achieving resolution also required eight months of arm's length negotiations overseen by an experienced and forceful class action mediator. These negotiations were informed by the robust discovery exchanged during litigation and the eight times the parties appeared before Magistrate Judge Andrew E. Krause for case management and discovery conferences. Settlement negotiations were also informed by the contributions of five consultants and experts in the fields of database discovery and data science, eDiscovery, and economic damages. These experts' work focused on the 49 million lines of Class Member data produced in the run up to mediation and the experts' analysis illuminated settlement discussions.

The nearly three years of work that went into this case produced a commendable outcome for the proposed class of almost 32,000 members ("Class Members"). The settlement's cash portion represents 61.4% of the $9,361,779 retained charges Plaintiffs calculated from Manhattan Beer's invoice data, and the litigation produced business practice changes valued at an additional $2,600,000. The average settlement payment is calculated to be $116.99, and settlement checks will be issued directly to Class Members without the need for a proof of claim.

In short, the settlement was reached after informed and vigorous negotiations, avoids the uncertainty, expense, and delay of litigation, produced meaningful business practice changes, and substantially compensates Class Members relative to their alleged pecuniary losses. The settlement thus easily satisfies the preliminary approval criteria. Accordingly, Plaintiffs respectfully ask that the Court endorse the parties' proposed order granting preliminary settlement approval (attached as Exhibit B to the McInturff Decl.). Endorsing the proposed order will have the effect of: (1) preliminarily approving the settlement; (2) preliminarily certifying the proposed Class for settlement purposes; (3) approving the parties' notice plan (the "Notice") and directing its execution; (4) appointing Wittels McInturff Palikovic as Class Counsel ("Class Counsel"); and (5) scheduling the Final Approval Hearing. Defendants do not oppose this motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Allegations and Plaintiffs' Pre-Suit Investigation

Plaintiffs and Class Members are Manhattan Beer customers who were charged a $0.10 refundable deposit fee for the cardboard containers that carry the beer and other botted beverages Manhattan Beer sells in the New York City metropolitan area. Manhattan Beer calls these containers "mother cartons." Plaintiffs alleged that Manhattan Beer's mother carton deposit invoicing practices violated, *inter alia*, New York's General Business Law § 349 ("GBL § 349"),

the common law, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §

1962(c)–(d) ("RICO"). Third Amended Class Action Compl. ¶¶ 132–202, ECF No. 149 ("TAC").

Before commencing this litigation, and beginning in December 2021, Class Counsel

conducted a thorough investigation into the merits of the potential claims and defenses in this

action. McInturff Decl. ¶ 15. Class Counsel obtained and analyzed documents from Plaintiffs and

other Manhattan Beer customers and conducted extensive factual and legal research into potential

experts. *Id.* ¶ 16. In addition, Class Counsel researched the pertinent case law and facts in other

actions challenging invoicing practices, and conducted comprehensive legal research concerning

the complexities of RICO and fraud-based class actions. *Id.*

### B.      <u>Overview of the Litigation</u>

On February 18, 2022, Plaintiff Cap 111 Enterprises, LLC filed its Class Action Complaint.

*Id.* ¶ 17. On May 31, 2022, Plaintiffs filed a First Amended Class Action Complaint that added

additional plaintiffs. ECF No. 19. *Id.* ¶ 18. On October 13, 2022, Plaintiffs filed their Second

Amended Class Action Complaint. ECF No. 30. On December 2, 2022, Defendants served a

motion to dismiss, which was docketed on February 23, 2023. ECF No. 46. On August 16, 2023,

this Court partially granted Defendants' motion, sustaining the claims under RICO, GBL § 349,

common law fraud, fraudulent concealment, and negligent misrepresentation, and dismissing the

causes of action for unjust enrichment, breach of contract, breach of the covenant of good faith

and fair dealing, violation of New York's Bottle Bill, and public nuisance. McInturff Decl. ¶ 21.

On September 21, 2023, Plaintiffs filed the TAC to reflect the Court's dismissal rulings. *Id.* ¶ 22.

Discovery began on October 28, 2022, and was hard-fought from the get-go. McInturff

Decl. ¶ 24. The parties appeared before Judge Krause eight times on complex disputes including

the scope of class discovery, ESI source disclosures, privilege issues, the adequacy of document

retrieval and production, and the timing of production and depositions. Settlement Agreement ¶ 11.a. The parties each filed more than ten substantive letters arguing their positions in connection with these conferences. ECF Nos. 53–55, 62–64, 93, 110–11, 119, 123–24, 129–30, 134–35, 138, 168–72. In addition to the letter briefing, the parties also filed detailed letters regarding the scope of data production, *see* ECF Nos. 90, 92, 107–07, 109, and a contested application by Plaintiffs to supplement the Second Amended Complaint, *see* ECF Nos. 70, 87, 91, 97–98.

  **C.**  <u>**Settlement Negotiations**</u>

  Also aware of their duty to explore resolution while moving the case forward, in the fall of 2023 the parties set this case on a simultaneous mediation track. McInturff Decl. ¶ 27. The parties engaged experienced class action mediator Martin F. Scheinman and held a full-day mediation on February 8, 2024. *Id.* In advance of mediation, Plaintiffs hired a database and data science expert to assist in the analysis of the 49 million lines of Class Member data. *Id.* ¶ 29. Class Counsel, the data scientist, and an economist retained by Class Counsel to calculate damages then used this data to construct a comprehensive damages model. *Id.* ¶¶ 28–30. This model anchored negotiations at the February 8, 2024 mediation, the ensuing negotiations on April 16, May 30, July 12, July 30, and August 7, and a follow-up mediation on August 15, 2024. *Id.*

  As the litigation and separate settlement tracks progressed, on May 13, 2024, Manhattan Beer revised its disputed deposit practices. Settlement Agreement ¶¶ 23, 69. Specifically, it instituted and formalized a practice of separately invoicing for the deposit fees mandated by New York's Bottle Bill, on the one hand, and the $0.10 cardboard deposit, on the other. *Id.* ¶ 69. On May 13, 2024, current customers were given additional notice of the cardboard deposit and

Manhattan Beer began memorializing the $0.10 deposit in its customer credit applications. *Id.*[1]

As a result of the parties' and the Mediator's efforts, on August 19, 2024, the parties reached a settlement in principle. *Id.* ¶ 31. The parties then spent the period from mid-August 2024 to November 11, 2024, negotiating final terms. *Id.* As with all prior negotiations, these discussions were adversarial, at arm's length, and included comprehensive written correspondence and discussions among counsel on September 9, 20, and 27, and October 16, 22, and 28. *Id.*

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    <u>Eligible Class Members</u>

The Class is defined as all Manhattan Beer customers who purchased bottled beverages, were charged a $0.10 deposit for cardboard mother cartons at any time between February 18, 2016 and May 13, 2024, and were not fully credited for all such deposits via redemption or refund. Settlement Agreement ¶ 31.[2] Applying these criteria, Plaintiffs calculate 31,785 unique Manhattan Beer account numbers. McInturff Decl. ¶ 36. For purposes of notice and administration, each unique account number will be considered a distinct Class Member. *Id.*

---

[1] Defendants' position is that these business practice changes were voluntary and that Manhattan Beer had no obligation to make these changes. *Id.* Based on Class Counsel's analysis of Manhattan Beer's revised deposit practices, Class Counsel determined that customers who made purchases from Manhattan Beer on or after May 13, 2024 could not meaningfully claim that Manhattan Beer had violated GBL § 349 or other potentially applicable laws or statutes. McInturff Decl. ¶ 33. Class Counsel's damages calculation used in settlement negotiations reflected this assessment. *Id.* Because Class Counsel has continued (and will continue) to monitor Manhattan Beer's deposit practices, counsel determined to limit any class action claims (and the release) in this matter to purchases occurring before May 13, 2024. *Id.*

[2] Excluded from the Class are: (a) Defendants and any parent, subsidiary, or affiliate of Defendants; (b) any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; (c) any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants; (d) all federal, state and local government entities; and (e) any judge, justice or judicial officer presiding over the Action and the members of their immediate families or judicial staff. *Id.*

### B.    The Settlement Amount and Allocation Plan

Under the Settlement Agreement, Manhattan Beer will deposit $5,750,000 into an escrow account ("Settlement Fund"). *Id.* ¶ 35. Cash payments will then be distributed to Class Members on a pro rata basis in proportion to the deposits they paid that were not refunded or redeemed. *Id.* In other words, the more deposits a Class Member has outstanding, the larger their settlement payment will be. *Id.* The average estimated payment is approximately $116.99. *Id.* ¶ 36. The settlement also provides for a minimum payment of $25.00 for the Class Members whose allocation would otherwise be less than $25.00. *Id.* ¶ 36. Class Members be mailed their share of the settlement without having to place a claim. Settlement Agreement ¶ 77. Class Members that do not cash their checks after 45 days will receive a reminder notice to cash their checks. *Id.*

### C.    Business Practice Changes

The parties agree that, as a result of Class Counsel's efforts, Manhattan Beer revised its invoicing practices. Specifically, instead of including all deposit fees in a single invoice line item (which practice spurred this litigation), Manhattan Beer changed its invoices to separately identify the cardboard deposit fee apart from the deposit fees mandated by New York's Bottle Bill. *Id.* ¶¶ 23, 69. The parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and began memorializing the $0.10 cardboard deposit in its customer credit applications. *Id.* ¶ 69. With the assistance of Mediator Scheinman, the parties valued these business practice changes at not less than $2,600,000. *Id.* This valuation is based on the average annual alleged deposit overcharges for the six-year period from 2018 to 2023 multiplied by three years going forward. *Id.*

This forward-looking relief is a substantial and hard-fought benefit that courts consider in the fairness analysis. *See Nichols v. Noom, Inc.*, No. 20-CV-3677, 2022 WL 2705354, at *10

(S.D.N.Y. Jul. 12, 2022) ("The non-monetary benefits to the class and future customers of [defendant] are also valuable . . . . These aspects of the settlement also weigh in favor of approval."); *see also Ferrick v. Spotify USA Inc.*, No. 16-CV-8412, 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018) ("The combination of the immediate and future monetary relief, along with the non-monetary benefits provided, constitutes a significant recovery."); *Fleisher v. Phoenix Life Ins. Co.*, No. 14-CV-8714, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief.").

### D.    Mutual Releases

Class Members and Defendants will fully release and discharge one another from all claims arising out of or relating to the action that accrued between February 18, 2016 and May 13, 2024, and that were, or could have been, asserted in the action. Settlement Agreement ¶¶ 52, 80–87.

### E.    The Settlement Administrator

Following a competitive bidding process, the parties jointly selected Arden Claims Service LLC as the Settlement Administrator to disseminate notice and distribute settlement payments. McInturff Decl. ¶ 53. As part of this bidding process the parties requested capped bids such that the risk of additional administration costs will be borne by the Settlement Administrator and not Class Members. *Id.* Arden agreed to cap costs at $115,000. *Id.* Based on Class Counsel's experience, $115,000 is a reasonable administration cost for a case of this size and complexity. *Id.*

## III.    RULE 23 CLASS ACTION SETTLEMENT PROCEDURE AND NOTICE PLAN

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a motion for preliminary approval;

2.    Dissemination of notice of settlement to class members; and

3.   A final settlement approval hearing for the court to consider the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.22, *et seq.* (4th ed. 2002) ("*Newberg*"). With this motion, Plaintiffs ask that the Court take the first step: grant preliminary approval, conditionally certify the class, and approve the notice plan.

Plaintiffs submit for the Court's consideration and approval the following proposed schedule and notice plan overview for the final resolution of this matter:

1.   Within 45 days of preliminary approval, the Settlement Administrator will disseminate notice by email to Class Members. Settlement Agreement ¶ 89.a. The email notice is attached as Exhibit 1 to the Settlement Agreement (and McInturff Decl. Ex. C). Manhattan Beer estimates that it has email addresses for 62% of Class Members. McInturff Decl. ¶ 54. Where Manhattan Beer lacks a Class Member email address or where the Settlement Administrator determines the email notice was not delivered, direct mail notice will be given. Settlement Agreement ¶ 91. Regardless of delivery method, the Settlement Administrator will use best practices to ensure notice delivery, including taking steps to avoid spam filters, updating mailing addresses using the National Change of Address database, and skip tracing any notices returned without forwarding addresses. *Id.* ¶ 91.a–d.

2.   Before notice is issued, the Settlement Administrator will launch a case-specific website that allows Class Members to easily find information about the settlement, answers to frequently asked questions, and important deadlines. *Id.* ¶ 92.

3.   The Settlement Administrator will establish a 24/7 call center to respond to Class Member inquiries. *Id.* ¶ 93.

4.   Class Members will have 60 days to exclude themselves or object. *Id.* ¶ 49.

5.   Fourteen days before the Exclusion/Objection Deadline, Plaintiffs will move for final settlement approval. *Id.* ¶ 102.

6.   The final approval hearing will be held as soon as is convenient for the Court but not less than 120 days after preliminary approval, to allow for the notice program's completion. *Id.* ¶ 41.

7.   After the final approval hearing, if the Court grants final approval, the Court will issue a final order and judgment and dismiss this case with prejudice.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The law strongly favors the settlement of class actions. *See Zhu v. Wanrong Corp.*, No. 18-CV-417, 2024 WL 4351357, at *3 (E.D.N.Y. Sept. 30, 2024) ("In the Second Circuit, there is a strong judicial policy in favor of settlements, particularly in the class action context."); *Emeterio v. A&P Rest. Corp.*, No. 20-CV-970, 2022 WL 274007, at *2 (S.D.N.Y. Jan. 26, 2022) (same).

"It is within a district court's discretion to approve proposed class action settlements." *Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7948, 2024 WL 4627567, at *2 (S.D.N.Y. Oct. 30, 2024); *see also Emeterio*, 2022 WL 274007, at *3 ("The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court." (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006))). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties," and "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Brazier v. Real Hospitality Group, LLC*, No. 20-CV-08239, 2021 WL 7210088, at *2 (S.D.N.Y. Nov. 12, 2021) (quotations omitted); *see also Emeterio*, 2022 WL 274007, at *5 ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." (alterations in original)).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Brazier*, 2021 WL 7210088, at *3 (citing *Newberg* § 11.25). "Courts often grant preliminary settlement approval without requiring a hearing or a court appearance." *Grissom*, 2024 WL 4627567, at *3 (citation omitted).

Under the 2018 amendments to Rule 23(e), to grant preliminary approval the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Goidel v. Aetna Life Ins. Co.*, No. 21-CV-7619, 2024 WL 4441806, at *3 (S.D.N.Y. Oct. 8, 2024) (citation omitted). "Courts conducting this analysis must make a preliminary evaluation as to whether the settlement is fair, reasonable, and adequate." *Id.* (quotation omitted). As amended in 2018, Rule 23(e) lists four factors for the Court to consider as part of this inquiry: "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id.* (citing Fed. R. Civ. P. 23 (e)(2)). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 242–43 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment)); *see also id.* ("Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically[.]").

"In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable and adequate based on the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which partially overlap with the factors in Rule 23(e)(2)(C)-(D)." *Goidel*, 2024 WL 4441806, at *3; *see also Moses*, 79 F.4th at 243 ("[T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement."). Accordingly, Plaintiffs offer for the Court's consideration an analysis of "both sets of factors . . . noting where they overlap." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. Nov. 7, 2019).[3]

---

[3] The *Grinnell* factors are (1) the litigation's complexity, expense and likely duration; (2) the class's reaction; (3) the state of the proceedings and amount of discovery completed; (4) the risks

*footnote continued on next page*

A.    **Adequacy of Representation: Both Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class**

Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (quoting *Cordes & Co. Fin. Servs. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

In determining adequacy of the representative plaintiffs, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014) (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.)) (internal quotation marks omitted). To satisfy this prong, Plaintiffs must only show that "no fundamental conflicts exist between the class' representatives and its members." *Emeterio*, 2022 WL 274007, at *4 (quotation omitted); *Lea*, 2021 WL 5578665, at *6.

Plaintiffs here are adequate because their "interests are aligned with other class members' interests because they suffered the same injuries--monetary losses resulting from [Defendant's allegedly unlawful practices]." *In re GSE Bonds*, 414 F. Supp. 3d at 692; *see also Charles v.*

---

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the defendant's ability to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468; *Emeterio*, 2022 WL 274007, at *6 ("[T]he court should consider the totality of the [*Grinnell*] factors in light of the particular circumstances[.]"); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (same). Here, the *Grinnell* factors weigh heavily in favor of full settlement approval, and certainly in favor of preliminary approval.

*Pinnacle Too, LLC*, No. 22-CV-4232, 2024 WL 4491560, at *6 (S.D.N.Y. Oct. 15, 2024) ("[T]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class." (citation omitted)).

Further, Plaintiffs "have demonstrated their commitment to this litigation by retaining qualified and experienced counsel." *Emeterio*, 2022 WL 274007, at *4; *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, No. 20-CV-5917, 2024 WL 308242, at *8 (E.D.N.Y. Jan. 26, 2024) (same). Plaintiffs also contributed significant time and effort to the case, meeting numerous times with Class Counsel, providing detailed background information, reviewing and discussing the pleadings and discovery, and providing their businesses' records and extensive emails for review and production in discovery. McInturff Decl. ¶ 26. Plaintiffs also supported Class Counsel in preparation for mediation. *Id.* In sum, Plaintiffs have been excellent class representatives.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic attorneys have extensive experience in prosecuting complex consumer and employment class actions. McInturff Decl. ¶¶ 4–5. The attorneys leading this action have served as Class Counsel in multiple consumer protection class actions and have obtained many millions of dollars in recoveries for class members. *Id.* Further, Wittels McInturff Palikovic has dedicated substantial time and resources investigating, prosecuting, and resolving this case. *Id.* ¶ 8. The work that Class Counsel have performed here demonstrates their skill and commitment to representing the Class. *Id.*

**B.    Presence of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times**

"The existence of arm's-length negotiations . . . counsels in favor of approving [a] settlement on a preliminary basis." *Goidel*, 2024 WL 4441806, at *4. "Rule 23(e)(2)(B) requires a court to consider whether a proposed settlement 'was negotiated at arm's length.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)(B)). Though "Courts in the Second Circuit may no longer apply a

presumption of fairness to proposed settlements that arise from arm's length negotiations," *see In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2023 WL 7936207, at *3 n.4 (E.D.N.Y. Nov. 15, 2023) (citing *Moses*, 79 F.4th at 24), it remains true that "the arms-length quality of . . . negotiations remain[s] a factor in favor of approving [a] settlement." *Moses*, 79 F.4th at 243. "[E]xtensive pre-negotiation discovery," as well as representation of the parties by "experienced counsel who were then aided in their negotiations by an experienced mediator" also "suggests that the [s]ettlement is the result of good faith arm's-length negotiations." *Reyes*, 2024 WL 472841, at *3; *Grissom*, 2024 WL 4627567, at *4 (finding "good faith arm's length negotiations" where plaintiff's counsel "engaged in at least twelve months of discovery, involving detailed review of thousands of pages of documents and data" allowing parties "a full opportunity to acquaint themselves with the strength and weaknesses of their respective cases" and reached settlement with assistance of a mediator); *see also Goidel*, 2024 WL 4441806, at *4 (similar). Here, the settlement was reached only after experienced counsel conducted considerable discovery, had sufficient information on the strength of the Class's claims, and engaged in vigorous arm's length negotiations overseen by an experienced class action mediator. *See* McInturff Decl. ¶¶ 30–31.

### C.    Adequate Relief for the Class: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery and the Attendant Litigation Risks

Rule 23(e)(2)(C) examines whether relief for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

"This inquiry overlaps with the Grinnell factors of 'complexity, expense, and likely duration of the litigation' [(*Grinnell* Factor 1)] along with 'the risks of establishing liability,' 'the risks of establishing damages' and 'the risks of maintaining a class through the trial [(*Grinnell*

Factors 4-6)].'" *Sonterra Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538, 2023 WL 3749996, at *4 (S.D.N.Y. June 1, 2023) (quoting *Grinnell*, 495 F.2d at 463). The Rule 23(e)(2)(C) inquiry "does not displace" the *Grinnell* factors. *Moses*, 79 F.4th at 244.

    1.  Litigation  Through  Trial  Would  Be  Complex,  Costly,  and  Long
       (<u>*Grinnell* Factor 1</u>)

By reaching a favorable pre-trial settlement, the parties avoid risk, expense, and delay and instead ensure a substantial recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Bryant v. Potbelly Sandwich Works*, No. 17-CV-7638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception, with 31,785 Class Members and complex legal and factual claims.

Continued litigation will only add expense and delay. While discovery has been robust, extensive additional discovery will be needed for class certification and trial. The parties would also likely file summary judgment motions. If the Court denied the motions, a lengthy, fact-intensive trial would consume tremendous time and resources. Further, any judgment would likely be appealed, adding further uncertainty and delay. In contrast, the settlement provides substantial relief to the Class in a prompt manner and avoids the risks and costs inherent in class actions.

The first *Grinnell* factor thus heavily favors approval. *See, e.g.*, *Sonterra*, 2023 WL 3749996, at *4 ("inherent in the complexity of the allegations is the inevitability of lengthy and costly discovery and motion practice if the case continued through litigation" and this complexity "weigh[s] in favor of preliminary approval"); *Lea*, 2021 WL 5578665, at *4 ("[T]he settlement brings to a close litigation that could have lasted several more years and costs hundreds of thousands of dollars in attorneys' fees and expenses and brings immediate relief to the class[.]");

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854, 2021 WL 535635, at *3 (S.D.N.Y. Feb. 12, 2021) (factor favors approval because "litigation through trial would be complex, expensive, and long").

    2.  <u>Plaintiffs Face Real Risks if the Case Proceeds  (*Grinnell* Factors 4 to 6)</u>

    Although Plaintiffs believe this case is strong, there are risks to proceeding. In weighing the risks of establishing liability and damages, the Court "need not adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Nichols*, 2022 WL 2705354, at *9; *Flores v. CGI Inc.*, No. 22-CV-350, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (same).

    Moreover, this inquiry focuses on the Class's prospects, which underscores the hurdles to achieving and maintaining class certification through trial. Prior to settlement, Plaintiffs had begun work on class certification and fully "anticipate[d] that Defendants would oppose class certification as vigorously as [they] had contested Plaintiffs' allegations and discovery requests." *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059, 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (cleaned up) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-CV-5575, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006)). "There is no assurance that [plaintiffs'] motion for class certification would be granted, and . . . [d]efendants would likely have challenged class certification [if] they [had] continued in this litigation." *Puddu v. 6D Global Techs., Inc.*, No. 15-CV-8061, 2021 WL 1910656, at *5 (S.D.N.Y. May 12, 2021); *see also Quow v. Accurate Mech. Inc.*, No. 15-CV-09852, 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (trial involves overcoming argument "claims were individualized and not suitable for class treatment.").

    While Class Counsel believe the Court would certify the Class, this ruling would be reached only after extensive litigation, including more discovery, depositions, expert discovery,

and lengthy briefing. *See Guevoura*, 2019 WL 6889901, at *7 ("Simply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made . . . ."). Either party (or both) could also seek an interlocutory appeal of a certification order under Rule 23(f), *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019), and Manhattan Beer could seek to decertify the class as the case proceeded to trial, *see, e.g.*, *Lawrence v. NYC Med. Practice, P.C.*, No. 18-CV-8649, 2024 WL 307842, at *2 (S.D.N.Y. Jan. 26, 2024) (citation omitted) (Courts "may decertify a class if it appears that the requirements of Rule 23 are not in fact met." (quotation omitted)).

"[A] settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids." *Belton v. GE Cap. Consumer Lending, Inc.*, No. 21-CV-9492, 2022 WL 407404, at *5 (S.D.N.Y. Feb. 10, 2022) (citation omitted). Moreover, "[a] trial on the merits is inherently risky." *Delijanin*, 2021 WL 535635, at *4 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y 1997)). "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020) (quotation omitted).

While Plaintiffs believe in their case, the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain. That the settlement ends these uncertainties favors preliminary approval. *See, e.g.*, *Quow*, 2018 WL 3368673, at *3 (risks as to both liability and damages, including overcoming defenses, weighed in favor of final approval).

**D.      Effectiveness of the Proposed Method of Distributing Relief: A Fair Allocation
Plan and Direct Payments Without a Claims Process Is the Preferred Method**

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method
of distributing relief to the class, including the method of processing class-member claims." Here,
the parties' proposed distribution method is the preferred method—direct payment without the
need to submit a claim. *See* The Federal Judicial Center's "Judges' Class Action Notice and Claims
Process Checklist" *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf
("When the defendant already holds information that would allow at least some claims to be paid
automatically, those claims should be paid directly without requiring claim forms."); *id.* (directing
courts to question if "a claims process [is] actually necessary"). Once the settlement becomes final,
each Class Member will simply be mailed their settlement check. Settlement Agreement ¶ 77.

Regarding the allocation plan, while it "must be fair and adequate," it "need only have a
reasonable, rational basis, particularly if recommended by experienced and competent class
counsel." *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2022 WL 4554858, at *8 (S.D.N.Y.
Sept. 29, 2022) (citation omitted); *see also id.* ("This does not mean that the plan must be perfect.").
"[N]umerous courts have held [that] a plan of allocation need not be perfect." *Christine Asia Co.,
Ltd. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019).

Here, the allocation plan tracks Plaintiffs' damages model and each Class Member will be
paid their proportionate share of the deposits that were neither refunded nor redeemed. This is a
reasonable, rational basis for allocation. *See Grissom*, 2024 WL 4627567, at *5 ("When formulated
by competent and experienced class counsel, a plan for allocation of net settlement proceeds
need have only a reasonable, rational basis." (citation omitted)); *see also Lea*, 2021 WL 5578665,
at *11 (collecting cases). A fundamentally fair allocation like the one proposed here easily meets

17

the approval criteria. *See id.* (approving distribution based on overall loss for each class members' transactions and finding that class members were treated "equitably relative to each other"); *see also Pearlstein*, 2022 WL 4554858, at *8 (approving as fair, rational, and adequate allocation plan distributing fund "on a *pro rata* basis based on the relative size" of their claims).

### E.    The Terms of Any Proposed Award of Attorneys' Fees: Class Counsel's Fee and Expense Request Is Well Within Second Circuit Norms

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including the timing of payment." Here, Class Counsel will request attorneys' fees of one-third of the settlement's $5,750,000 cash portion (*i.e.*, $1,916,666). Settlement Agreement ¶ 110. One third is the standard class action fee percentage in the Second Circuit. *See Krasnansky v. JCCA*, No. 22-CV-6577, 2023 WL 6141240, at *6 (S.D.N.Y. Sept. 20, 2024) ("Given that Plaintiff's counsel's request for 33% of the total settlement is in line with common practice in the Second Circuit, the Court finds the request reasonable." (cleaned up)); *see also Lea*, 2021 WL 5578665, at *12 ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").

Class Counsel's requested fee award is also reasonable in relation to the results achieved. Class Counsel's efforts over nearly three years yielded $5,750,000 in cash, *and* business practice changes valued with the mediator's assistance at $2,600,000. In awarding attorneys' fees, it is well settled that "courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleisher*, 2015 WL 10847814, at *15 (same); *see also id.* at *10 ("The overall value of the settlement comprises monetary as well as non-monetary relief."). "Leading authorities agree, as do courts in this Circuit and nationwide." *Id.* at *15 (collecting authorities).[4]

---

[4] *See also Sykes v. Harris*, No. 09-CV-8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting class counsel fees); *Bell v. Pension Comm. of*

*footnote continued on next page*

"The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'" *Id.* at *15. That method was used to calculate the value of the non-monetary relief obtained here. McInturff Decl. ¶ 11.

When considering both the $5,750,000 in cash and the $2,600,000 in business practice changes, the requested fee represents 22.9% of the $8,350,000 total settlement value. *Id.* ¶ 42. The requested fee is thus at the low end of the typical fee percentage, as a fee of one-third (or 33.33%) of the total settlement value has repeatedly been held "consistent with the norms of class litigation in this Circuit." *Solis v. OrthoNet* LLC, No. 19-CV-4678, 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021); *Bryant*, No. 17-CV-7638, 2020 WL 563804, at *6 (S.D.N.Y. Feb. 4, 2020).

Courts in this District and Circuit also routinely approve one-third fee requests in similarly sized settlements. *See, e.g.*, *In re 3D Sys. Sec. Litig.*, No. 21-CV-50909, 2024 WL 50909, at *1 (E.D.N.Y. Jan. 4, 2024) (approving one-third fee in $4 million settlement); *Caste v. Trustees of Columbia Univ. in City of New York*, No. 16-CV-06524, 2021 WL 4847890, at *2 (S.D.N.Y. Oct. 18, 2021) (one third in $13 million settlement); *Lea*, 2021 WL 5578665, at 12-13 (S.D.N.Y. Nov.

---

*ATH Holding Co.*, No. 15-CV-2062, 2019 WL 4193376, at *4 (S.D. Ind. Sept. 4, 2019) (including nearly $34 million in non-monetary value in assessing class counsel's fee request); *Tennille v. W. Union Co.*, No. 09-CV-938, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in non-monetary value to $19,000,000 in available refunds and awarding fee of 35% ($22,946,208) of $65,560,596 because a fee based solely on the monetary component "would severely undervalue class counsel's efforts in obtaining the [non-monetary] relief and other benefits included in the [settlement]."); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (awarding fee based on non-monetary relief of "between $26 million and $38 million"); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, 3d. Ed., at 35 (2010) (basing fees on the "actual value to the class of any settlement fund *plus* the actual value of any nonmonetary relief") (emphasis added); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar 1, 2010, § 3.13 (noting fee awards are to be "based on both the monetary *and* nonmonetary value of the judgment or settlement") (emphasis added).

30, 2021) (one third of $7.5 million); *Kassman v. KPMG LLP*, No. 11-CV-3743, 2021 WL 1393296, at *4 (S.D.N.Y. Apr. 12, 2021) (one third of $10 million); *Clarke v. Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (one third of $4.9 million); *Clark v. EcoLab*, No. 07-CV-8623, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (one third of $6 million); *Mohney v. Shelly's Prime Steak, Crab & Oyster Bar*, No. 06-CV-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (one third of $3.265 million).[5]

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's requested attorneys' fee. Although it is well settled that the percentage method is "preferable" to the lodestar method, *Fleisher*, 2015 WL 10847814, at *14,[6] the Second Circuit has advised that the lodestar method remains potentially useful as a "cross-check" of the percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Here, Class Counsel's lodestar to date is $2,078,666, which reflects the over 2,573 hours counsel reasonably devoted in nearly three years of investigation and litigation. McInturff Decl. ¶ 45. Class Counsel are thus not asking for a lodestar multiplier, although the result achieved here

---

[5] Courts in other circuits also commonly award one-third fees in similarly sized class actions. *See, e.g., McFadden v. Sprint Comm's, LLC.*, No. 22-CV-2464, 2024 WL 3890182, at *5 (D. Kan. Aug. 1, 2024) (one third of $3.5 million); *Nguyen Educ. Comp. Sys.*, No. 22-CV-1743, 2024 WL 3691615, at *5 (W.D. Pa. Aug. 7, 2024) (one third of $3.65 million); *Beissel v. Western Flyer Express, LLC*, No. 21-CV-903, 2023 WL 7288735, at *3 (W.D. Okla. Nov. 3, 2023) (one third of $4.9 million); *Budicak Inc. v. Lansing Trade Grp., LLC*, No. 19-CV-2449, 2023 WL 7189144, at *1 (D. Kan. June 16, 2023) (one third of $18 million); *McIntyre v. RealPage, Inc.*, No. 18-CV-3934, 2023 WL 2643201, at *3 (E.D. Pa. Mar. 24, 2023) (one third of $6.35 million); *Kendall v. Odonate Therapeutics, Inc.*, No. 20-CV-01828, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (one third of $12.75 million); *In re Banc of California Sec. Litig.*, No. 17-CV-118, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (one third of $19.75 million).

[6] *See also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." (cleaned up)).

certainly would have warranted a substantial multiplier.[7]

Finally, the requested fee award furthers public policy. *See, e.g., Lea*, 2021 WL 5578665, at *13 ("[P]ublic policy favors the award of reasonable attorneys' fees in class action settlements." (quotation omitted)); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) ("Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest.").[8] This is especially true where, like here, there are no public enforcement actions. This deterrent effect will carry over to other market participants, who will be on notice that they will suffer unwanted costs, inconvenience, bad publicity, and legal exposure if they engage in similar conduct.[9]

---

[7] *See, e.g., Lopez v. Fashion Nova*, No. 20-CV-9238, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." (cleaned up)); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (stating that a "2.04 lodestar multiplier, is toward the lower end of reasonable fee awards").

[8] *See also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MDL-1720, 2019 WL 6888488, at *21 (E.D.N.Y. Dec. 16, 2019) (to "attract well qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives") (quotation omitted); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 501 (S.D.N.Y. 2017) ("[i]t is surely in the interest of public policy . . . that the risk analysis is designed to compensate [class] counsel" for "accepting representation" of claims which involve substantial contingency risk); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of remedial statutes] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

[9] Class Counsel will also seek reimbursement from the Settlement Fund for the reasonable out of pocket expenses Class Counsel advanced on behalf of the Class. McInturff Decl. ¶ 52; Settlement Agreement ¶ 110. To date, those expenses total $80,150.03. *Id.*

Simply put, the requested attorneys' fee is reasonable, as it is below the typical range of class action fees approved in the Second Circuit. The Court need not rule on fees now, however, as pursuant to Rule 23(h), Plaintiffs will move for fees and expenses at final approval.[10],[11]

### F. Equitable Treatment of Class Members Relative to One Another: The Parties' Allocation Plan Correlates with Alleged Damages and Is Reasonable

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." *See also Moses*, 79 F.4th at 244. Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Notes to Fed. R. Civ. P. 23. Here, the settlement treats individual Class Members fairly in relation to their realistic outcomes at trial. As discussed above, *see supra* at 17, the payment allocation plan tracks Plaintiffs' damages model used at mediation and Class Members' awards are keyed to their alleged

---

[10] As for payment timing, fourteen days after final judgment Manhattan Beer will fund the settlement, Settlement Agreement ¶ 72, and the approved fees and expenses will be issued seven days later, *id.* ¶ 111. These sums will be held in escrow until the settlement becomes final (typically 30 additional days, assuming no appeals). *Id.* If the settlement does not become final, Class Counsel will repay the fees, with interest. *Id.* Courts have approved similar payment schedules because it "does not affect the size of the settlement fund and a quick payment might deter objections to settlement approval." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021) (approving substantially similar provision); *see also In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716, 2022 WL 198491, at *14 (E.D.N.Y. Jan. 21, 2022) (same); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 08-WP-65000, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) (such a clause "serves the socially-useful purpose of deterring serial objectors"); *see also In re Lumber Liq. Chinese-Mfd. Flooring Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (noting such payment provisions "have generally been approved by other federal courts"); *Pelzer v. Vassalle*, 655 Fed. Appx. 352, 365 (6th Cir. 2016) (such provisions as "common" and were used in "over one-third of federal class action settlement agreements" in 2006).

[11] Rule 23(e)(2)(C)(iv) requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are none. *See In re Payment Card*, 330 F.R.D. at 36, n.30.

losses. Further, the same mutual release applies to all Class Members, Settlement Agreement ¶¶ 52, 80–87, and does not affect the apportionment of relief, demonstrating equity. *In re GSE Bonds*, 414 F. Supp. 3d at 698–99.

### G.    The Remaining *Grinnell* Factors Demonstrate That the Settlement Is Fair, Reasonable, and Adequate

1.    The Reaction of the Class (*Grinnell* Factor 2)

Notice of the settlement and its details have not yet been issued. The Court should therefore analyze this factor after the Class responds. At this early stage, this factor is neutral.

2.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would likely require many hundreds (if not thousands) of hours of additional discovery, the parties have completed more than enough discovery to recommend settlement. The question raised by this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Flores*, 2022 WL 13804077, at *7 (quotation omitted). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Lea*, 2021 WL 5578665, at *9 (quotation omitted).

The discovery taken here, and described above, *see supra* at 3-4, easily hurdles this standard. *See Goidel*, 2024 WL 4441806, at *4 (parties engaged in "over twelve months of discovery" involving significant document review and "resol[ution of] a substantial discovery dispute between the parties"); *see also Reyes*, 2024 WL 472841, at *3 (parties engaged in "seven months of discovery . . . that included a review of [defendant]'s internal communications and correspondence with insurance companies"); *Soler v. Fresh Direct, LLC*, No. 20-CV-3431, 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023) ( "meaningful discovery" included production of "class member data," "corporate training documents," corporate policies, and class member files).

3.  Although Defendants Likely Could Withstand a Greater Judgment, That Does Not
    Suggest the Settlement is Unfair (*Grinnell* Factor 7)

Even if Manhattan Beer could withstand a greater judgment, its ability to do so, standing

alone, "does not suggest that the settlement is unfair." *Nichols*, 2022 WL 2705354, at *10; *see also*

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 343 F. Supp. 3d 394, 413 (S.D.N.Y. Nov. 26,

2018) (same). This factor is therefore neutral.

4.  The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery
    and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The fairness assessment "'is not susceptible of a mathematical equation yielding a

particularized sum.'" *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-06728 (CM) (SDA), 2020

WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (quoting *In re PaineWebber*, 171 F.R.D. at 130).

"[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but

whether it represents a reasonable one in light of the many uncertainties the class faces . . . ."

*Puddu*, 2021 WL 1910656, at *6 (quotation omitted).

Here, the settlement is substantial: a cash fund of $5,750,000 and business practice changes

valued at an additional $2,600,000. Even if the Court were to only consider the $5,750,000 in cash

relief, this sum corresponds to 61.4% of the approximately $9,361,779 in out-of-pocket losses that

Plaintiffs calculated from Manhattan Beer's business records. McInturff Decl. ¶ 40. This result is

more than reasonable: it is commendable. *See Lea*, 2021 WL 5578665, at *11 (approving

settlement of 5.3% of estimated class-wide damages); *see also id.* ("Courts in this Circuit

commonly find that settlements for less than half of potential damages are within the range of

reasonableness") (citation omitted); *Emeterio*, 2022 WL 274007, at *8 (settlement at 25% of total

damages "weighs strongly in favor of final approval"); *In re Grana y Montero S.A.A. Sec. Litig.*,

No. 17-CV-01105, 2021 WL 4173684, at *14 (E.D.N.Y. Aug. 13, 2021) (settlement valued

between "15% and 24% of reasonable recoverable damage" "likely represent[ed] the best possible

recovery"); *Puddu*, 2021 WL 1910656, at *6 (settlement valued at 6.05% of possible recovery was reasonable); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (settlement valued at 10.9% to 21.3% of possible recovery was reasonable); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MDL-1409 (WHP), 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (settlement valued at 10–15% of unlawful fees collected).

*    *    *

In sum, both the Rule 23(e) and *Grinnell* factors favor preliminary approval. Because the settlement is "fair, adequate, and reasonable, and not the product of collusion," *Guevoura*, 2019 WL 6889901, at *4 (quoting *Wal-Mart*, 396 F.3d at 116), preliminary approval should be granted.

## V.    THE RULE 23 CLASS SHOULD BE CONDITIONALLY CERTIFIED

Plaintiffs seek to certify the following class under Rule 23:

> All Manhattan Beer customers who purchased bottled beverages from Manhattan Beer and were charged a $0.10 deposit for cardboard mother cartons at any time between February 18, 2016 and May 13, 2024 and were not fully credited for all such deposits via redemption or refund.

Settlement Agreement ¶ 31. As discussed below, the Class meets the requirements for class certification, and Defendants agree that this action may be certified as a class action for settlement purposes only. *Id.* ¶¶ 63; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Under Rule 23, a class action may be maintained if the four Rule 23(a) criteria are met and one of the three Rule 23(b) criteria are satisfied. Plaintiffs request certification of a Rule 23(b)(3) class and thus must satisfy Rule 23(b)(3)'s requirements. Rule 23(a) requires that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

25

> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires courts to find that:

> [Q]uestions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"[T]he Second Circuit has emphasized that Rule 23 should be given 'liberal rather than restrictive construction,'" *In re Actos Antitrust Litig.*, No. 13-CV-9244, 2024 WL 4251891, at *6 n.6 (S.D.N.Y. Aug. 9, 2024), and "the Second Circuit's general preference is for granting rather than denying class certification," *id.* (quotation omitted).

## A.    Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are 31,785 Class Members. McInturff Decl. ¶ 36. This element is satisfied.

## B.    Commonality

The Class also satisfies the commonality requirement. "Factual differences in the claims of the class do not preclude a finding of commonality. . . . Put simply, commonality may be found where the plaintiffs' alleged injuries derive from a unitary course of conduct by a single system." *Flores*, 2022 WL 13804077, at *3 (cleaned up); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

This case involves numerous common issues and courts in this District routinely find commonality when presented with the similar common questions as those at issue here. *See, e.g.*, *Nichols*, 2022 WL 2705354, at *5 ("Here, the common questions of law and fact in this case all relate to whether Defendants engaged in fraudulent, unfair, unlawful, and deceptive business practices"); *Lea*, 2021 WL 5578665, at *6 (common questions included whether defendants "engaged in a common scheme to defraud" the class).

C.    **Typicality**

"Typicality . . . is satisfied where each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Charles v. Pinnacle Too, LLC*, No. 22-CV-4232, 2024 WL 4491560, at *6 (S.D.N.Y. Oct. 15, 2024) (quotation omitted). "The typicality requirement is not demanding." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347, 2024 WL 1157074, at *5 (S.D.N.Y. Mar. 18, 2024) (quotation omitted). Typicality is met when the disputed issues "occupy essentially the same degree of centrality" between the named representatives and the class. *Id.*

Like commonality, typicality is not defeated by "minor variations in the fact patterns underlying individual claims," *Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 11 (S.D.N.Y. 2024) (citing *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)), as long as the alleged wrong occurred in the same general fashion. Typicality is also "determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *In re NIO, Inc. Sec. Litig.*, No. 19-CV-1424, 2023 WL 5048615, at *6 (E.D.N.Y. Aug. 8, 2023) (citing *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007)). Here, typicality is met because all Class Members were "exposed to the

27

same [practices and] will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase[.]" *Nichols*, 2022 WL 2705354, at *5 (citation omitted).

### D.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Here, as set forth above, *see supra* at 11–12, Plaintiffs meet the adequacy requirement. *See Pinnacle Too*, 2024 WL 4491560, at *6 ("[T]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class" (quotation omitted)). Class Counsel also meet this requirement. As set forth above, they have been able advocates for the Class. *See supra* at 13.

### E.    Certification is Proper Under Rule 23(b)

Plaintiffs seek certification of a Rule 23(b)(3) class for settlement purposes. Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions Predominate

The essential predominance inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2024 WL 3928849, at *14 (S.D.N.Y. Aug. 13, 2024) (citing *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)), *report and recommendation adopted*, 2024 WL 4275286 (S.D.N.Y. Sept. 24, 2024). That a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." *Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701, 2024 WL 4132333, at *5 (E.D.N.Y. Sept. 10, 2024) (citing *In re Visa Check*, 280 F.3d at 138).

28

Predominance is met when class members' claims "rely on a common legal theory." *Gonzalez*, 2024 WL 1157074, at *6 (citation omitted). Thus, courts often find predominance in consumer protection cases like this one. *See Micholle v. Ophthotech Corp.*, No. 17-CV-210, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud." (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, Class Members' common experience yields a common legal theory that predominates over any factual or legal variations among Class Members—that Manhattan Beer's invoicing practices were deceptive. Thus, the issue of whether all Class Members were the victims of deceptive practices predominates because "liability can be determined on a class-wide basis[.]" *Martinenko*, 2024 WL 3928849, at *14 (quoting *In re Visa Check*, 280 F.3d at 139). A finding of predominance in this case is thus squarely in line with other cases in this District.[12]

### 2. A Class Action Is a Superior Mechanism for Adjudicating Claims

The second Rule 23(b)(3) prong examines whether the class device is superior to other methods of adjudication. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *see also Martinenko*, 2024 WL 3928849, at *16 (a class action is superior where it "presents economies of 'time, effort and expense, and promote[s] uniformity of decision"). Rule 23(b)(3) lists non-exclusive

---

[12] *See, e.g.*, *Polvay*, 713 F. Supp. 3d at 12 (predominance met in class action under New York consumer protection statute); *Volino v. Progressive Cas. Ins. Co.*, No. 21-CV-6243, 2023 WL 2532836, at *7–9 (S.D.N.Y. Mar. 16, 2023) (same); *Famular v. Whirlpool Corp.*, No. 16-CV-944, 2019 WL 1254882, at *8–9 (S.D.N.Y. Mar. 18, 2019) (finding predominance in challenge to allegedly misleading labels under New York consumer protection law).

considerations, including: the class members' interests in individually controlling the prosecution; whether class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23 (b)(3).[13]

Here, given each Class Member's out of pocket losses (on average $278.00), there is little incentive to bring individual actions. *See Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). It is thus unlikely that any meaningful number of Class Members would bring separate actions given "the lack of incentive for individuals to bring suit." *In re Kind LLC "Healthy and All Natural" Litig.*, 337 F.R.D. 581, 608 (S.D.N.Y. 2021), *rev'd on other grounds*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022). Further, Plaintiffs are unaware of any similar pending individual lawsuits filed by Class Members. McInturff Decl. ¶ 23. Moreover, many Class Members (if not most) likely do not appreciate that they have legal claims. *See de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 346 (S.D.N.Y. 2021) (noting that many consumers "may not even realize" potentially unlawful conduct occurred), *rev'd on other grounds*, No. 16-CV-8364, 2024 WL 36820 (S.D.N.Y. Jan. 3, 2024).

Employing the class action device here will also conserve judicial resources and prevent inconsistent adjudications. *See Martinenko*, 2023 WL 2919766, at *9 ("The class action device is superior to other methods available for a fair and efficient adjudication of the controversy because the class device will achieve economies of scale, conserve judicial resources, preserve public

---

[13] Another factor, whether the case would be manageable as a class action at trial, is not considered at settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Flores*, 2022 WL 13804077, at *2 (same); *Emeterio*, 2022 WL 274007, at *2 (same). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *Pearlstein*, 2021 WL 253453, at *23 (citation omitted).

confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." (quotation omitted)).

Finally, this action is manageable, and the forum is appropriate, as Manhattan Beer is headquartered in this District. A class action is clearly the most suitable mechanism for this case.

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g), which governs appointing class counsel, sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23 (g)(1)(A). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g), Advisory Committee's note.

Wittels McInturff Palikovic meets the Rule 23(g) criteria. Class Counsel have done substantial work identifying, investigating, litigating, and settling this case. McInturff Decl. ¶¶ 8, 15–16, 44. Additionally, Class Counsel have substantial consumer class action experience, and the lawyers assigned to this matter are well-qualified and are well-versed in consumer protection and class action law. *Id.* ¶¶ 3–8. Wittels McInturff Palikovic should be appointed Class Counsel.

## VII.   THE NOTICE PLAN EXCEEDS THE APPLICABLE REQUIREMENTS AND SHOULD BE APPROVED

Plaintiffs respectfully request that the Court approve the parties' notice plan (described on pp. 7-8 above). The notice plan fully complies with due process and Rule 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the notice plan satisfies each of these requirements and adequately apprises Class Members of their rights under the settlement. As for the Notice itself (McInturff Decl. Ex. C), it is based on the Federal Judicial Center's Illustrative Forms of Class Action Notices[14] and informs Class Members about the settlement, including how they can exclude themselves or object and the consequences of inaction. The Notice also describes the settlement's material terms and provides specific information regarding the date, time, and place of the final approval hearing. Courts in this District have approved class notices even when they provide only general information. *See, e.g.*, *Medina v. NYC Harlem Foods Inc*, No. 21-CV-1321, 2024 WL 2751127, at *1 (S.D.N.Y. May 29, 2024) ("Class notice need only describe the terms of the settlement generally . . . .") (quotation omitted). Moreover, "[n]otice need not be perfect, but must be the best notice practicable under the circumstances . . . ." *Martinenko*, 2024 WL 3928849, at *6 (quotation omitted); *see also Christine Asia*, 2019 WL 5257534, at *16 (notice was adequate where it "provided all of the necessary information for Class Members to make an informed decision regarding the Settlement"). The detailed information in the Notice far exceeds this low threshold.

---

[14]    *Available at*: https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction.

The parties' notice plan clearly satisfies Rule 23(c)(2)(B)'s requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." As shown above, *see supra* at 8-9, the parties have designed a detailed notice plan that reflects best practices and contains numerous quality control measures to ensure that the notice will reach as many Class Members as possible.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and endorse the proposed Order.

Dated:  December 9, 2024
New York, New York                            Respectfully submitted,

                                                 /s/ J. Burkett McInturff
                                                J. Burkett McInturff
                                                Steven L. Wittels
                                                Tiasha Palikovic
                                                Ethan D. Roman

                                              **WITTELS MCINTURFF PALIKOVIC**
                                              305 BROADWAY, 7TH FLOOR
                                              NEW YORK, NEW YORK 10007
                                              Telephone: (914) 775-8862
                                              Facsimile: (914) 775-8862
                                              jbm@wittelslaw.com
                                              slw@wittelslaw.com
                                              tpalikovic@wittelslaw.com
                                              edr@wittelslaw.com

                                              *Counsel for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the documents submitted in support of

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Related

Relief via ECF this 9th day of December 2024 upon all counsel of record.

<u>/s/  J. Burkett McInturff</u>
J. Burkett McInturff