UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAP 111 ENTERPRISES LLC, 251 E. MAIN ST., LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC, <br><br> on behalf of themselves and all others similarly situated, <br><br>                Plaintiffs, <br><br>            v. <br><br> MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY, <br><br>                Defendants. | Case No.: 22-CV-1408 (CS) (AEK) |

**DECLARATION OF J. BURKETT MCINTURFF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

I, J. Burkett McInturff, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.     My firm, Wittels McInturff Palikovic ("WMP"), is lead counsel for Plaintiffs and the proposed Class. Based on my active participation and supervision of all material aspects of the prosecution and settlement of this consumer class action, I have personal knowledge of the matters set forth herein.

2.      I make this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement and Related Relief (the "Preliminary Approval Motion"). Through the Preliminary Approval Motion, Plaintiffs seek an Order: (1) granting preliminary approval of the proposed settlement embodied in the Class Action Settlement Agreement (the "Settlement Agreement"), attached hereto as **Exhibit A**; (2) preliminarily certifying the proposed Class for settlement purposes; (3) approving the parties' notice plan (the "Notice") and directing its execution; (4) appointing Wittels McInturff Palikovic as Class Counsel ("Class Counsel"); (5) scheduling the Final Approval Hearing; and (6) granting such other relief as the Court deems just and proper.[1]

## I. Class Counsel's Background

3.      I am the partner that is primarily responsible for handling this matter for my law firm. I have been admitted to practice law in New York for 12 years. I graduated from New York University School of Law in 2010. For the last 12 years more than 90% of my practice has been devoted to litigating consumer protection and employment class actions.

4.      WMP has deep experience handling class actions, including prosecuting and settling class actions generally, with particularized expertise in consumer protection matters. For example, in 2022, WMP obtained a $62 million consumer class action settlement on behalf of nearly 2 million customers of diet company Noom, Inc., which was approved by Southern District of New York Magistrate Judge Katharine A. Parker. In 2019, WMP obtained a $39 million settlement on behalf of a nationwide class of 45,000 home mortgage customers against Ocwen Loan Servicing LLC and Cross Country Home Services Inc., which was approved by Eastern

---

[1] The proposed Order granting preliminary approval is attached hereto as **Exhibit B**. The proposed Notice and long-form website notice are attached as **Exhibits C** and **D**, respectively.

District of New York Judge Nicholas G. Garaufis. The previous year, in 2018, the Supreme Court Commercial Part Judge in Kings County approved WMP's $29.75 million settlement for New York consumers victimized by Ambit Energy, a third-party energy supply company, in which almost 100,000 customers shared in the cash benefits.

5.  Further, WMP currently serves as Class Counsel in *Mirkin v. XOOM*, No. 18-CV-2949 (E.D.N.Y.), a consumer class action on behalf of more than 100,000 New York utility customers where the firm obtained class action certification and is currently overseeing trial preparation efforts.

6.  The lawyers assigned to this matter are also well-versed in consumer protection law and in class action law and are highly qualified to represent the interests of the Class. Lawyers at WMP have represented classes of consumers and employees in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District. Their backgrounds and qualifications are detailed in WMP's firm resume.

7.  Attached to this Declaration as **Exhibit E** is a true and correct version of WMP's 2024 Firm Resume.

8.  Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources, investigating, prosecuting, and settling Class Members' claims. The work that Class Counsel have performed in this case demonstrates our skill and commitment to representing the interests of the Class.

## II.   Introduction to the Proposed Settlement and Relief Sought by Plaintiffs' Motion

9.  The proposed settlement resolves the claims brought by Plaintiffs Cap 111 Enterprises LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and

Locali Kitchen & Bar LLC ("Plaintiffs") against Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy ("Defendants" or "Manhattan Beer").

10. Plaintiffs' Preliminary Approval Motion seeks preliminary approval of the settlement of this consumer protection class action—a settlement achieved after nearly three years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by a third-party mediator. The final terms of the parties' settlement were memorialized in the Settlement Agreement that is now being submitted for the Court's preliminary approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arms-length.

11. The proposed settlement provides a monetary benefit to the Class in the form of a $5,750,000.00 cash Settlement Fund, with settlement payments (net of expenses and fees) to be distributed directly to Class Members without the need for a claim form. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's aggregate damages. Further, the parties agree that as a result of Class Counsel's efforts, on May 13, 2024, Manhattan Beer revised its practices to the benefit of Class Members and future Manhattan Beer customers by instituting and formalizing a practice by which Manhattan Beer separately invoices for the deposit fees mandated by New York's Bottle Bill, on the one hand, and the $0.10 cardboard deposit, on the other hand. The parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and the changed invoicing practices going forward, and Manhattan Beer began memorializing the $0.10 cardboard deposit in its customer credit applications. With the assistance of their third-party mediator, the parties valued these changes and enhancements of Manhattan Beer's invoicing practices at not less than $2,600,000, thus yielding a class action settlement valued at not less than $8,350,000. The Federal Judicial Center's method for valuing such non-

4

monetary relief was the method used in calculating the value of the non-monetary relief obtained here.

12. In arriving at this favorable result, Plaintiffs also recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and ultimate success on the merits remain uncertain.

13. Pursuant to the terms of the Settlement Agreement, Plaintiffs now move for entry of the proposed preliminary approval order which accomplishes the following:

(i) grants preliminary approval of the proposed settlement;

(ii) preliminarily certifies the proposed Class for settlement purposes;

(iii) approves the form and content of the Notice and the parties' plan for its distribution;

(iv) appoints Wittels McInturff Palikovic as Class Counsel; and

(v) schedules the final fairness hearing so the Court can assess Class Members' reaction to the settlement.

14. In the paragraphs that follow, I will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed settlement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should preliminarily approve the proposed settlement and grant the other relief requested by Plaintiffs' Motion.

### III. Thorough Investigation of Class Members' Claims

15. Beginning in December 2021, I, along with a team of attorneys, conducted a thorough investigation into the merits of the potential claims and defenses in this action, including Manhattan Beer's deposit and invoicing practices. Our investigation and legal research focused on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

16. Class Counsel obtained and analyzed documents from Plaintiffs and other Manhattan Beer customers and conducted extensive factual and legal research into potential expert witnesses. In addition, Class Counsel researched the pertinent case law and facts in other actions challenging allegedly deceptive invoicing practices, as well as comprehensive legal research concerning the complexities of RICO and fraud-based class actions.

IV.     **Plaintiffs' Complaint, Discovery, and the Parties' Settlement Negotiations**

17. On February 18, 2022, Plaintiff Cap 111 Enterprises LLC filed a Class Action Complaint in this Court on behalf of itself and a class of similarly situated consumers. The Complaint sought restitution, compensatory and punitive damages, interest, injunctive relief, and attorneys' fees and costs. ECF No. 1 at 22–23. Plaintiffs subsequently amended their complaint three times.

18. On May 31, 2022, Plaintiffs filed their First Amended Class Action Complaint with Livanos Restaurant Inc., Moderne Barn, Armonk, Inc., New Oceana Restaurant Corp., Great Food 57th St LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC added as Plaintiffs. ECF No. 19.

19. On October 13, 2022, Plaintiffs filed their Second Amended Class Action Complaint, further particularizing the allegations. ECF No. 30.

20. On June 29, 2023, by way of Notice of Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs voluntarily dismissed the claims of Plaintiffs Livanos Restaurant Inc., Moderne Barn, Armonk, Inc., New Oceana Restaurant Corp., and Great Food 57th St LLC. ECF No. 114, which the Court so ordered on July 6, 2023, ECF No. 115.

21. On December 2, 2022, Defendants served a motion to dismiss the Second Amended Class Action Complaint, which motion was filed on the public docket on February 23, 2023. ECF

No. 46. On August 16, 2023, the Parties appeared before Judge Seibel and this Court granted in part and denied in part the Motion to Dismiss, sustaining the causes of action under RICO, New York's General Business Law § 349, common law fraud, fraudulent concealment, and negligent misrepresentation, and dismissing the causes of action for unjust enrichment, breach of contract, breach of the covenant of good faith and fair dealing, violation of New York's Bottle Bill, and public nuisance. *See* ECF No. 144.

22. Plaintiffs filed their Third Amended Class Action Complaint on September 21, 2023, conforming Plaintiffs' allegations with this Court's rulings on Defendants' Motion to Dismiss. *See* ECF No. 149.

23. Plaintiffs are unaware of any other similar pending individual lawsuits filed by any potential Class Members.

24. Discovery commenced on October 28, 2022, and from the get-go this case has been distinguished by its intensely litigated proceedings. The parties appeared before Judge Krause eight times to litigate complex contested issues including the scope of class and merits discovery, ESI source disclosures, privilege logs, the adequacy of document retrieval and production, and the timing of document production and deposition discovery. Settlement Agreement ¶ 11. The parties filed more than ten substantive letters each arguing their positions to Judge Krause in advance of the case management and discovery conferences. *See* ECF Nos. 53–55, 62–64, 93, 110–11, 119, 123–24, 129–30, 134–35, 138, 168–72.

25. In addition to these letters, the parties filed detailed letters regarding the scope of Defendants' data production, *see* ECF Nos. 90, 92, 106–07, 109, and a contested application by Plaintiffs to supplement the Second Amended Complaint, *see* ECF Nos. 70, 87, 91, 97–98.

7

26. Moreover, Plaintiffs contributed significant time and effort to the case by participating in numerous meetings with Class Counsel, providing Class Counsel with detailed information regarding their experiences, reviewing and discussing the pleadings and discovery, providing access to their businesses' records and extensive emails for review and production in discovery. Plaintiffs also supported Class Counsel in preparation for mediation.

27. In the fall of 2023, the parties set this case on a second and simultaneous mediation track. The parties engaged experienced class action mediator Martin F. Scheinman in December 2023 and held a full-day in-person mediation on February 8, 2024, followed by written correspondence and an additional conference with Mediator Scheinman on August 15, 2024. Plaintiffs supported Class Counsel during the mediation sessions.

28. During this same period, my firm obtained report on potential damages from an economist, which was disclosed to Mediator Scheinman in advance of the February 8, 2024 mediation.

29. Defendants produced over 49 million lines (8.3 gigabytes) of data regarding deposits charged to Class Members. My firm hired a database and data science expert to assist Class Counsel in studying this voluminous data.

30. Class Counsel and their experts used this data to construct a comprehensive damages model. This model formed the basis of the parties' negotiations at the February 8, 2024 in-person mediation, follow up negotiations on April 16, May 30, July 12, July 30, and August 7, and the parties' August 15, 2024 mediation.

31. As a result of the parties' and the mediator's efforts, on August 15, 2024 the parties reached agreement in principle on certain material terms and executed a term sheet. The parties then spent the period from mid-August 2024 to November 11, 2024 negotiating final terms. These

discussions were adversarial, at arm's length, and included comprehensive written correspondence and discussions among counsel on September 9, September 20, September 27, October 16, October 22, and October 28, 2024.

32. The parties agree that as a result of Class Counsel's efforts, on May 13, 2024, Manhattan Beer voluntarily revised its deposit practices challenged in this lawsuit. Settlement Agreement ¶¶ 23, 69. Specifically, Manhattan Beer revised its practices to the benefit of Class Members and future Manhattan Beer customers by instituting and formalizing a practice by which Manhattan Beer separately invoices for the deposit fees mandated by New York's Bottle Bill, on the one hand, and the $0.10 cardboard deposit, on the other hand. *Id.* ¶ 69. The parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and the changed invoicing practices going forward, and Manhattan Beer began memorializing the $0.10 cardboard deposit in its customer credit applications. *Id.* Defendants' position is that these business practice changes were voluntary and that Manhattan Beer had no obligation to make these changes. *Id.*

33. Based on Class Counsel's analysis of Manhattan Beer's revised practices, Class Counsel determined that customers who made purchases from Manhattan Beer on or after May 13, 2024 could not meaningfully claim that Manhattan Beer had violated GBL § 349 or other potentially applicable laws or statutes. Class Counsel's damages calculation used in settlement negotiations reflected this assessment. Because Class Counsel has continued (and will continue) to monitor Manhattan Beer's deposit practices, counsel determined to limit any class action claims in this matter (and the release) to purchases occurring before May 13, 2024.

V.     **Settlement Terms**

34.     Under the Settlement Agreement, the Class is defined as all Manhattan Beer customers who purchased bottled beverages from Manhattan Beer, were charged a $0.10 deposit for cardboard mother cartons at any time between February 18, 2016 and May 13, 2024, and were not fully credited for all such deposits via redemption or refund. Settlement Agreement ¶ 31.

35.     Under the Settlement Agreement, Manhattan Beer will deposit $5,750,000 into an escrow account ("Settlement Fund"). *Id.* ¶ 70. Cash payments will be distributed to Class Members in proportion to the non-refunded and non-redeemed cardboard mother carton deposits they paid Manhattan Beer. *Id.* ¶ 77.ii. In other words, the more a Class Member paid Manhattan Beer, the more they stand to recover from the settlement. *Id.* The minimum payment for a Class Member is $25.00. *Id.* ¶ 77.iv.

36.     Based on calculations prepared by Plaintiffs' data expert, the number of unique Manhattan Beer account numbers included in the Class defined above (with each unique account number considered a "Class Member") is 31,785. *Id.* ¶ 31. The average estimated cash payment to Class Members was calculated by Plaintiffs' data expert to be approximately $116.99. These same consumers paid Manhattan Beer on average $278.00 in mother carton deposit fees that were not credited back. This payment formula tracks Plaintiffs' damages model used at mediation such that Class Members will be fairly compensated based on alleged damages.

37.     The settlement also confirms that as a result of Class Counsel's efforts, Manhattan Beer voluntarily revised its practices to separately identify the contested $0.10 cardboard deposit fee on customer invoices apart from the deposit fees mandated by New York's Bottle Bill. *Id.* ¶ 23.

38. Specifically, Manhattan Beer revised its practices to the benefit of Class Members and future Manhattan Beer customers by instituting and formalizing a practice by which Manhattan Beer separately invoices for the deposit fees mandated by New York's Bottle Bill, on the one hand, and the $0.10 cardboard deposit, on the other hand. The Parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and the changed invoicing practices going forward, and Manhattan Beer began memorializing the $0.10 cardboard deposit in its customer credit applications.

39. With the assistance of Mediator Scheinman, the parties reasonably valued these changes and enhancements of Manhattan Beer's deposit practices at not less than Two Million Six Hundred Thousand Dollars ($2,600,000.00), which negotiated valuation is based on the average annual alleged cardboard mother carton deposit overcharges for the six-year period from 2018 to 2023 multiplied by three years going forward.

40. The $5,750,000 in cash relief represents 61.4% of the $9,361,779 in out-of-pocket losses Plaintiffs calculated from Manhattan Beer's invoice data. This is a reasonable and admirable result.

41. In connection with their Motion for Final Approval of the Settlement, Plaintiffs will also request that the Court approve attorneys' fees of one third of the settlement's $5,750,000 cash portion (*i.e.*, $1,916,666). Settlement Agreement ¶ 110. This sum is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency matters in this Circuit typically charge their clients at least one third (33.33%) of their gross recoveries, exclusive of litigation expenses, and as set forth in the accompanying Memorandum of Law, many courts in this District and elsewhere routinely approve one-third fee awards in class actions.

42. Class Counsel's requested fee award is also reasonable in relation to the result achieved for the Class. Here, Class Counsel together are requesting one-third of *only* the cash fund. When considering the business practice change valuation ($2,600,000), the requested contingency fee award represents 22.9% of the $8,350,000 total settlement benefit. Class Counsel's requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third of the total value obtained for the Class has repeatedly been deemed reasonable and consistent with the norms of class litigation in the Second Circuit.

43. Class Counsel's fee request will also be disclosed to the Class.

44. Class Counsel have done substantial work identifying, investigating, pursuing, and settling Plaintiffs' and Class Members' claims. Class Counsel have also committed significant resources to the nearly three-year investigation and litigation of this case, brought viable claims and aggressively pursued the facts necessary to prevail on the merits in the event that this case had not settled.

45. Altogether, Class Counsel devoted over 2,500 hours in the nearly three years they spent investigating, prosecuting, and settling this case. The chart below summarizes the billable time each attorney performed on behalf of Plaintiffs and the Class.

| SUMMARY OF CLASS COUNSEL'S LODESTAR | | |
|---|---:|---:|
| **TIMEKEEPER** | **TOTAL HOURS** | **TOTAL FEES** |
| Steven L. Wittels, Founding Partner | 310.5 | $367,942.50 |
| Tiasha Palikovic, Shareholder and Partner | 209.7 | $192,924.00 |
| J. Burkett McInturff, Shareholder and Partner | 745.0 | $663,050.00 |
| Ethan D. Roman, Counsel | 1082.6 | $730,755.00 |
| Jessica L. Hunter, Counsel | 66.5 | $43,557.50 |

| | | |
|---|---:|---:|
| Nathan A. Rice, Former Senior Associate | 122.0 | $61,610.00 |
| Daniel J. Brenner, Senior Associate | 34.2 | $16,587.00 |
| Howard Foster, Co-counsel | 2.8 | $2,240.00 |
| **TOTAL** | 2,573.3 | $2,078,666.00 |

46. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here.

47. The fees for each attorney listed above are based on my firm's current billing rates, which rates are supported by our extensive and specialized experience in these types of cases and recognized expertise in complex class action matters. Our hourly billing rates have been repeatedly approved by courts in this District and the Eastern District of New York.[2] I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as

---

[2] *See, e.g.*, *Franck v. New York Health Care Inc.*, No. 21-CV-4955 (S.D.N.Y. Sept. 12, 2024), ECF No. 243 (approving Class Counsel's 2024 rates in wage and hour class action); *Nichols v. Noom, Inc.*, No. 20 Civ. 3677, 2022 WL 2705354, at *11 (S.D.N.Y. July 12, 2022) (approving Class Counsel's 2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, No. 17 Civ. 5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (approving Class Counsel's 2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, No. 16 Civ. 8800 (D.N.J. July 2, 2020), ECF No. 94 (approving Class Counsel's 2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, No. 13 Civ. 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (approving Class Counsel's 2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, NYSCEF No. 205 (N.Y. Sup. Ct. July 16, 2018) (approving Class Counsel's 2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, No. 15 Civ. 1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (approving Class Counsel's 2017 rates in wage and hour class action); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (S.D.N.Y. Jan. 8, 2016), ECF No. 22 (approving Class Counsel's 2015 rates in wage and hour class action); *Davenport v. Elite Model Mgmt. Corp.*, No. 13 Civ. 1061, 2014 WL 12756756, at *11 (S.D.N.Y. May 12, 2014) (approving Class Counsel's 2014 rates in wage and hour class action).

the attorneys within the firm who worked on this matter. Based on that information, I believe that my firm's rates are fully consistent with the market rate in this District for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in complex litigation around the country. Based on this information, I believe that the rates charged for its partner and non-partner attorney time are reasonable and appropriate fees for those with comparable expertise, experience, and qualifications.

48. Class Counsel's attorneys' fees are not based solely on the extensive time and effort thus far expended but are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. Class Counsel anticipate spending additional time with respect to continuing communications with the Settlement Administrator in administering the settlement, and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class settlements of this nature requires non-negligible post-Fairness Hearing attorney and staff time.

49. In total, Class Counsel's aggregate lodestar amounts to $2,078,666. As described more fully in Plaintiffs' accompanying Memorandum of Law, Plaintiffs' counsel are not asking for a multiplier, although as can be seen from the years of work which yielded the commendable results of this settlement, this is certainly a case that would have warranted a substantial multiplier.

50. Class Counsel undertook prosecution of this action without any assurance of payment for their services, litigating this case in the face of significant risk. Consumer class actions are, by their very nature, complicated and time-consuming, and attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful

outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery on behalf of all Class Members. Class Counsel stood to gain no compensation in the event the case was unsuccessful.

51. The overwhelming majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred. Thus, when Class Counsel spends time on contingency matters, they do so at significant cost and risk for the firm. Class Counsel frequently turns away cases, including hourly litigation matters and other contingency matters, to enable its attorneys to work on pending contingency matters, primarily class actions.

52. Additionally, Class Counsel will seek reimbursement from the Settlement Fund of their reasonable costs and expenses incidental to the representation of the class. Below is a chart tabulating the costs and expenses incurred to date:

| SUMMARY OF EXPENSES | |
|---|---|
| **EXPLANATION** | **AMOUNT** |
| Mediation fees | $4,350.00 |
| Administrative costs (binding, mailing, printing supplies, etc.) | $136.65 |
| Court costs (court filings, process servers, etc.) | $402.00 |
| Data Scientist | $23,600.00 |
| Economics Expert | $8,820.00 |
| E-discovery costs | $37,291.78 |
| Transcript costs | $2,456.98 |
| Travel (airfare, ground transportation, meals, lodging, etc.) | $3,092.62 |
| **TOTAL:** | $80,150.03 |

53. Following a competitive bidding process, the parties jointly selected Arden Claims Service LLC ("Arden") as the Settlement Administrator to provide notice to the Class and administer distribution of settlement payments. Settlement Agreement ¶ 58. As part of this bidding process, the parties requested capped bids such that the risk of additional administration costs will

be borne by the Settlement Administrator and not the Class. Arden estimated that its costs for administration will be approximately $140,000 but agreed to cap costs at $115,000. Based on Class Counsel's experience, $115,000 is a reasonable administration cost for a case of this size and complexity.

### VI. The Notice and Settlement Fund Distribution Plan

54. Within forty-five (45) days of preliminary approval, the Settlement Administrator will disseminate notice by email to Class Members for which Manhattan Beer has an email address. *Id.* ¶ 89.a. The email notice is attached hereto as Exhibit C. Manhattan Beer estimates that it has emails for approximately 62% of Class Members. Where Manhattan Beer lacks a Class Member email address or where the Settlement Administrator determines the email notice was not delivered, direct mail notice will be given. *Id.* ¶ 91. Given the large proportion of Class Members with email addresses and the fact that Class Members are generally businesses with fixed addresses, it is anticipated that this method of notice will reach the overwhelming majority of Class Members.

55. Regardless of delivery method, the Settlement Administrator will use best practices to ensure notice delivery, including taking steps to avoid spam filters, updating mailing addresses using the National Change of Address database, and skip tracing any mailed notices returned without forwarding addresses. *Id.* ¶ 91.a–d.

56. Class Members will have sixty (60) days to object or exclude themselves from the settlement. *Id.* ¶ 49.

57. Before notice is issued, the Settlement Administrator will also launch a case-specific website. *Id.* ¶ 92. The website will allow Class Members to easily find and view

16

information about the settlement, provide answers to frequently asked questions, and list important deadlines. *Id.*

58. The Settlement Administrator will establish a call center to respond to Class Member inquiries. *Id.* ¶ 93. The hotline will be accessible 24 hours a day, 7 days a week. *Id.*

59. Fourteen (14) days before the Objection/Exclusion Deadline, Plaintiffs will move for final settlement approval. *Id.* ¶ 102.

60. The final approval hearing will be held as soon as is convenient for the Court but not less than 120 days after preliminary approval, to allow for the notice program's completion. *Id.* ¶ 41.

61. After the final approval hearing, if the Court grants final approval, the Court will issue a final order and judgment and dismiss this case with prejudice. *See* Settlement Agreement Ex. 4 (proposed final order and judgment).

## VII. Authenticating Exhibits

62. I also make this Declaration to authenticate the attached exhibits referenced in the accompanying Memorandum of Law.

63. Attached hereto as **Exhibit A** is a true and correct copy of the fully executed Class Action Settlement Agreement in this matter.

64. Attached hereto as **Exhibit B** is a true and correct copy of the proposed Order granting preliminary approval.

65. Attached hereto as **Exhibit C** is a true and correct copy of the proposed Notice.

66. Attached hereto as **Exhibit D** is a true and correct copy of the proposed long-form website notice.

67. Attached hereto as **Exhibit E** is a true and correct copy of the Wittels McInturff Palikovic firm resume.

WHEREFORE, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed settlement set forth in the Settlement Agreement attached hereto as Exhibit A; (2) preliminarily certify the proposed Class for settlement purposes; (3) approve the proposed notice plan and direct its execution; (4) appoint Wittels McInturff Palikovic as Class Counsel; (5) schedule the Final Approval Hearing; and (6) grant such other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   New York, New York
            December 9, 2024                        /s/   J. Burkett McInturff
                                                          J. Burkett McInturff

                                                    **WITTELS MCINTURFF PALIKOVIC**
                                                    305 BROADWAY, 7TH FLOOR
                                                    NEW YORK, NEW YORK 10007
                                                    Telephone:  (914) 775-8862
                                                    Facsimile:  (914) 775-8862
                                                    jbm@wittelslaw.com

                                                    *Counsel for Plaintiffs and the Class*