**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAP 111 ENTERPRISES LLC, 251 E. MAIN ST, LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC, <br><br> *Individually and on Behalf of All Others Similarly Situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY, <br><br> Defendants. | No. 22-CV-1408 (CS)(AEK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
Steven L. Wittels
Tiasha Palikovic
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
slw@wittelslaw.com
tpalikovic@wittelslaw.com
edr@wittelslaw.com

Dated: March 21, 2025                    *Class Counsel for Plaintiffs and the Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 3

   I.    SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE ..... 3

      A.   Factual Allegations ................................................................................... 3

      B.   Plaintiffs' Investigation ............................................................................ 3

      C.   Overview of Litigation ............................................................................. 4

      D.   Settlement Negotiations ........................................................................... 5

      E.   The Notice Campaign ............................................................................... 6

   II.   SUMMARY OF SETTLEMENT TERMS .......................................................... 6

      A.   Eligible Class Members ........................................................................... 6

      B.   The Settlement Amount and Allocation Plan .......................................... 7

      C.   Business Practice Changes ....................................................................... 7

   III.  CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT ...................... 8

ARGUMENT ......................................................................................................................... 8

   I.    LEGAL STANDARD FOR FINAL CLASS ACTION SETTLEMENT
      APPROVAL ...................................................................................................... 8

   II.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL ............. 10

      A.   The Settlement Is Procedurally Fair ...................................................... 10

          1.   Rule 23(e)(2)(A)'s Adequacy of Representation Requirement:
             Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for
             the Class. ........................................................................................ 10

          2.   Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations: The
             Parties' Vigorous Negotiations Were Arm's Length at All Times and
             Overseen by Experienced Neutrals. ............................................... 12

      B.   The Settlement Is Substantively Fair ..................................................... 12

          1.   Rule 23(e)(2)(C)(i) and the Grinnell Factors: The Settlement Amount Is
             Substantial, Even Considering the Best Possible Recovery. ............ 13

a.   Further Litigation Would Be Complex and Costly (*Grinnell* Factor 1). .. 13

b.   The Class's Reaction Is Overwhelmingly Positive (*Grinnell* Factor 2). .. 14

c.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3). ................................. 14

d.   Plaintiffs Face Real Risks If the Case Proceeds (*Grinnell* Factors 4 to 6). ................................................................................................. 15

e.   Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement Is Unfair (*Grinnell* Factor 7)....... 16

f.   The Settlement Is Substantial, Even Considering the Best Possible Recovery (*Grinnell* Factors 8 and 9). ....................................................... 17

2.   The Remaining Rule 23(e)(2)(C) Factors Are Easily Satisfied. ...................... 18

a.   The Proposed Distribution Method Is Effective (Rule 23(e)(2)(C)(ii)).... 18

b.   Class Counsel's Requested Attorneys' Fee Is Well Within the Norms of This Circuit (Rule 23(e)(2)(C)(iii)). ........................................ 19

3.   Rule 23(e)(2)(D)'s Equitable Treatment Requirement: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable. ............. 20

III.   NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS ..................... 20

IV.   CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE ..... 21

V.   THE COURT SHOULD DIRECT SERVICE AWARDS TO PLAINTIFFS ................. 21

VI.   THE COURT SHOULD GRANT THE REQUESTED FEES AND EXPENSES .......... 22

A.   Class Counsel Should Be Adequately Compensated for Their Substantial Efforts and the Tremendous Financial Risk They Took for the Class's Benefit ..... 23

B.   The Standard for Awarding Attorneys' Fees in Class Actions ............................... 24

1.   The *Goldberger* Factors Support Plaintiffs' One-Third Requested Fee Award. ......................................................................................................... 24

a.   Class Counsel's Time and Labor. ........................................................... 25

b.   Magnitude and Complexity of the Litigation............................................ 25

c.   Risks of the Litigation............................................................................. 25

d.   Quality of Representation. ...................................................................... 26

ii

e.  The Requested Fee Is Reasonable in Relation to the Settlement. ............. 28

f.  Public Policy Considerations. .................................................... 28

2.  The Lodestar Cross Check Further Supports Class Counsel's Fee Request. ... 29

3.  The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained. ...................................................................... 34

CONCLUSION .................................................................................................... 34

# **TABLE OF AUTHORITIES**

## Cases

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................. 29

*Amigon v. Safeway Constr. Enters., LLC*,
  2024 WL 5040436 (E.D.N.Y. Dec. 9, 2024) ............................................. 11

*Anwar v. Fairfield Greenwich Ltd.*,
  2012 WL 1981505 (S.D.N.Y. June 1, 2012) ............................................. 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty.*
  *Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008)....................................................................... 32

*Asare v. Change Grp. of New York, Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ........................................... 29

*ATX Debt Fund 1, LLC v. Paul*,
  2024 WL 2093387 (S.D.N.Y. May 9, 2024) ............................................. 33

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................... 31

*Belton v. GE Cap. Consumer Lending, Inc.*,
  2022 WL 407404 (S.D.N.Y. Feb. 10, 2022).............................................. 16

*Brazier v. Real Hospitality Group, LLC*,
  2021 WL 7210088 (S.D.N.Y. Nov. 12, 2021)............................................. 9

*Bryant v. Potbelly Sandwich Works*,
  2020 WL 563804 (S.D.N.Y. Feb. 4, 2020)........................................... 13, 26

*Cates v. Trustees of Columbia Univ. in City of N.Y.*,
  2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021)......................................... 25, 31

*Charles v. Pinnacle Too, LLC*,
  2024 WL 4491560 (S.D.N.Y. Oct. 15, 2024) ............................................ 11

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................... 10, 18, 34

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).................................................... 9, 10, 23, 31

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................. 28

*Cordes & Co. Fin. Servs. V. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)........................................................................ 11

*Cruz v. Local Union No. 3 of IBEW*,
  34 F.3d 1148 (2d Cir. 1994)...................................................................... 32

*Cruz Guerrero v. Montefiore Health Sys. Inc.*,
   2025 WL 100889 (S.D.N.Y. Jan. 15, 2025) ............................................................ 22

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. Oct. 11, 2011) ............................................. 30, 32

*DeLeon v. Wells Fargo Bank, N.A.*,
   2015 WL 2255394 (S.D.N.Y. May 11, 2015) ..................................................... 25

*Delgado v. Ocwen Loan Servicing LLC, et al.*,
   13-CV- 4427 (E.D.N.Y. Aug. 20, 2019)............................................................. 33

*Delijanin v. Wolfgang's Steakhouse Inc.*,
   2021 WL 535635 (S.D.N.Y. Feb. 12, 2021)................................................. 14, 16

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. Oct. 31, 2016) ........................................................ 30

*Emeterio v. A&P Rest. Corp.*,
   2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ................................................ *passim*

*Espinosa v. Perez*,
   2020 WL 2950978 (S.D.N.Y. Jan. 27, 2020) ................................................... 32

*Ferrick v. Spotify USA Inc.*,
   2018 WL 2324076 (S.D.N.Y. May 22, 2018) .................................................... 8

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).......................................... 8, 19, 27

*Flores v. CGI Inc.*,
   2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ............................................ 14, 15

*Flores v. One Hanover, LLC*,
   2014 WL 2567912 (S.D.N.Y. June 9, 2014) .................................................... 23

*Franck v. New York Health Care Inc.*,
   21-CV-4955 (S.D.N.Y. Sept. 13, 2024)........................................................... 33

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) .......................................................................... 24

*Goidel v. Aetna Life Ins. Co.*,
   2024 WL 4441806 (S.D.N.Y. Oct. 8, 2024) ............................................ 9, 12, 14

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000).......................................................................... 24, 30

*Grissom v. Sterling Infosystems, Inc.*,
   2024 WL 4627567 (S.D.N.Y. Oct. 30, 2024) .......................................... 9, 12, 18

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .................................................. 15

*Hernandez v. Between the Bread 55th Inc.*,
   2021 WL 12279220 (S.D.N.Y. Aug. 16, 2021) ............................................... 26

*Hesse v. Godiva Chocolatier, Inc.*,
 2022 WL 22895466 (S.D.N.Y. Apr. 20, 2022) ....................................................... 25

*In re Abrams & Abrams, P.A.*,
 605 F.3d 238 (4th Cir. 2010) ............................................................................... 26

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
 2013 WL 10114257 (S.D.N.Y. Dec. 18, 2013) ............................................... 19, 28

*In re Flag Telecom Holdings*,
 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................................................... 30

*In re Grana y Montero S.A.A. Sec. Litig.*,
 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ........................................................ 17

*In re GSE Bonds Antitrust Litig.*,
 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ........................................................ 17

*In re GSE Bonds Antitrust Litig.*,
 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................ 10, 11, 16, 20

*In re Lloyd's American Trust Fund Litig.*,
 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................................... 26

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................... 26, 28

*In re Namenda Direct Purchaser Antitrust Litig.*,
 462 F. Supp. 3d 307 (S.D.N.Y. 2020) .................................................................. 16

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
 20-CV-5917, 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ...................................... 11

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
 330 F.R.D. 11 (S.D.N.Y. 2019) ........................................................................... 20

*In re PaineWebber*,
 171 F.R.D. 104, 130 (S.D.N.Y. 1997) .................................................................. 17

*In re Polaroid*,
 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................................ 22

*In re PPDAI Grp. Inc. Sec. Litig.*,
 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) .......................................................... 34

*In re Signet Jewelers Ltd. Sec. Litig.*,
 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................... 17, 28

*In re Sturm, Ruger, & Co., Inc. Secs. Litig.*,
 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ....................................................... 30

*In re Tenaris S.A. Sec. Litig.*,
 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ........................................................ 15

*Karic v. Major Automotive Companies, Inc.*,
 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ........................................................ 22

*Krasnansky v. JCCA*,
   2023 WL 6141240 (S.D.N.Y. Sept. 20, 2024)........................................................................ 19

*Lawrence v. NYC Med. Practice, P.C.*,
   2024 WL 307842 (S.D.N.Y. Jan. 26, 2024) ........................................................................ 16

*Lea v. TAL Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).............................................................. *passim*

*Little v. Ambit Energy Holdings, LLC*,
   16-CV-8800 (D.N.J. July 2, 2020)........................................................................................ 33

*Lopez v. Fashion Nova*,
   2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ...................................................................... 31

*Macquarie Mexico Real Estate Mgmt. S.A. De CV v. Hoiston Int'l Ents., Inc.*,
   2021 WL 4952693 (S.D.N.Y. Oct. 20, 2021) ...................................................................... 33

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).......................................................................... 24, 31

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008) ..................................................................................... 27

*Mendez v. MCSS Rest. Corp.*,
   2022 WL 3704591 (E.D.N.Y. Aug. 26, 2022) .................................................................... 14

*McIntosh v. Katapult Holdings., Inc.*,
   21-CV-7251, 2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ............................................... 24

*Medvedeva v. Assistcare Home Health Servs. LLC*,
   17-CV-5739 (E.D.N.Y. June 1, 2021) ................................................................................ 33

*Mirkin v. Viridian Energy, Inc.*,
   15-CV-1057 (D. Conn. June 27, 2018)................................................................................ 33

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ................................................................... 10, 12, 13, 20

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
   2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) .................................................................... 33

*Nichols v. Noom*,
   20-CV-3677 (S.D.N.Y. July 12, 2022) ................................................................................ 33

*Nichols v. Noom, Inc.*,
   2022 WL 2705354 (S.D.N.Y. Jul. 12, 2022) ........................................................ 8, 15, 17, 22

*Pearlstein v. Blackberry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sep. 29, 2022)...................................................... 16, 18, 19, 34

*Phyto Tech Corp. v. Givaudan SA*,
   2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023) ...................................................................... 33

*Puddu v. 6D Global Techs., Inc.*,
   2021 WL 1910656 (S.D.N.Y. May 12, 2021) ................................................................ 15, 17

*Puglisi v. TD Bank, N.A.*,
  2015 WL 4608655 (E.D.N.Y. July 30, 2015) ..................................................... 22

*Quow v. Accurate Mech. Inc.*,
  2018 WL 3368673 (S.D.N.Y. July 10, 2018) ................................................ 15, 16

*Rasulev v. Good Care Agency, Inc.*,
  16-CV-1993 (E.D.N.Y. July 28, 2017) .............................................................. 33

*Reyes v. Summit Health Mgmt., LLC*,
  2024 WL 472841 (S.D.N.Y. Feb. 6, 2024) ............................................. 10, 12, 15

*Riveras v. Bilboa Rest. Corp.*,
  2018 WL 8967112 (S.D.N.Y. Dec. 14, 2018) .................................................... 32

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................... 25, 31

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
  2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ..................................................... 27

*Simmons v. Ambit Energy Holdings, LLC*,
  503285/2015 (N.Y. Sup. Ct. July 16, 2018) ...................................................... 33

*Soler v. Fresh Direct, LLC*,
  2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) .................................................... 15

*Solis v. OrthoNet LLC*,
  2021 WL 2678651 (S.D.N.Y. June 30, 2021) .................................................... 30

*Sonterra Master Fund, Ltd. v. Barclays Bank PLC*,
  2023 WL 3749996 (S.D.N.Y. June 1, 2023) ...................................................... 13

*Sow v. City of New York*,
  2024 WL 964595 (S.D.N.Y. Mar. 5, 2024) ....................................................... 14

*Spicer v. Pier Sixty LLC*,
  2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ................................................... 31

*Steiner v. Williams*,
  2001 WL 604035 (S.D.N.Y. May 31, 2001) ..................................................... 23

*Sykes v. Harris*,
  2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............................................... 20, 27

*Tennille v. W. Union Co.*,
  2013 WL 6920449 (D. Colo. Dec. 31, 2013) .................................................... 27

*Vecchio v. Quest Diagnostics, Inc.*,
  2023 WL 2842702 (S.D.N.Y. Apr. 7, 2023) ...................................................... 11

*Vista v. Outdoor Inc. v. Reeves Fam. Tr.*,
  2018 WL 3104631 (S.D.N.Y. May 24, 2018) .................................................... 33

*Wal-Mart Stores v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005) .............................................................. 20, 29, 32

*Zeltser v. Merrill Lynch & Co.*,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)................................................... 21, 32
*Zhu v. Wanrong Corp.*,
  2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) ........................................................ 8
*Zink v. First Niagara Bank, N.A.*,
  2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016).................................................... 24

## Statutes

18 U.S.C. § 1962.............................................................................................. 3, 4
N.Y. Gen. Bus. L. § 349 ............................................................................... 3, 4, 5

## Other Authorities

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*,
  3d. Ed., 35 (2010) ............................................................................................ 27
Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist.................. 18

## Rules

Fed. R. Civ. P. 23 .................................................................................... *passim*

## Treatises

Principles of the Law of Aggregate Litigation § 3.13(b) (2010) ............................................. 19, 27
William B. Rubenstein, On What A "Private Attorney General" Is—and Why It Matters,
  57 Vand. L.Rev. 2129, 2168 [2004] ........................................................................ 24

Plaintiffs Cap 111 Enterprises LLC, 251 E. Main St, LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC ("Plaintiffs") hereby submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of the Class Action Settlement with Defendants Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy (collectively, "Manhattan Beer" or "Defendants").

## INTRODUCTION

This case was brought as a challenge to the way Manhattan Beer invoiced its customers for cardboard recycling deposits. Following more than three years of investigation and litigation, the parties have negotiated a settlement that achieves a substantial portion of this case's goal: a $5.75 million cash fund for the approximately 32,000 Class Members and changes to Manhattan Beer's invoicing practices valued at an additional $2.6 million.

This outcome was no easy feat. It took years of hard-fought litigation, including more than a dozen contested motions, three amended complaints, and the production of over eight gigabytes of documents and data. Achieving resolution also required eight months of negotiations overseen by an experienced and forceful class action mediator. Those negotiations were informed by robust discovery exchanged during litigation and eight appearances before Magistrate Judge Andrew E. Krause for case management and discovery conferences. Settlement negotiations were also informed by the contributions of five consultants and experts in the fields of database discovery and data science, eDiscovery, and economic damages, whose work focused on the 49 million lines of Class Member data produced in the run up to mediation.

The more than three years of work that went into this case produced a commendable outcome for the Class. The Settlement's cash portion represents 61.4% of the $9,361,779 retained cardboard recycling deposits Plaintiffs calculated from Manhattan Beer data, and the litigation

resulted in business practice changes that provide Manhattan Beer's customers with clearer and more accurate information. The average settlement payment is calculated to be $112.11, and settlement checks will be issued directly to Class Members without the need for a proof of claim.

The Settlement also satisfies all criteria for final approval under governing law. It achieves a substantial percentage of Plaintiffs' "best case" scenario and avoids the risks, costs, and delays of continued litigation. Mar. 21, 2025 Decl. of Lead Class Counsel J. Burkett McInturff ("McInturff Decl.") ¶ 34, ECF No. 202. The plan for allocating the Settlement's cash benefits also fairly accounts for the value of Class Members' individual damages claims, and the Settlement has received an overwhelmingly positive reaction from the Class.

Following the Court's December 18, 2024 Preliminary Approval Order (ECF No. 195), the parties implemented a robust notice campaign designed to garner the attention of Class Members and inform them about the Settlement. On January 13, 2025, Defendants provided the Settlement Administrator a Class List containing the full name, Manhattan Beer account number, all billing address information, phone number, and email for all Class Members (the "Class List"). McInturff Decl. ¶ 51. On February 3, 2025, after establishing a settlement website and call center, notice was issued to Class Members. *Id.* ¶¶ 52–53. Notice was issued via direct email and direct mail and was effective, with 28,295 Class Members—89% of the Class—having successfully received notice. *Id.* ¶ 54. In addition, Class Members' response has been overwhelmingly positive, as to date there have been no objections to the Settlement, and no Class Members have requested exclusion. *Id.* If the Settlement is approved, Each Class Member will promptly be mailed their settlement payment without needing to take further steps to become eligible. *Id.* ¶ 55.

Accordingly, to achieve finality and effectuate the Settlement, Plaintiffs ask the Court to endorse the proposed Order and Final Judgment, which: (1) grants final certification to the Class

under Rule 23 for settlement purposes; (2) grants final approval of all terms applicable to the Class set forth in the Settlement Agreement; (3) finds that notice was the best notice practicable under the circumstances; (4) approves the service awards to the Class Representatives; (5) awards Class Counsel reimbursement of litigation expenses and attorneys' fees; (6) approves the parties' proposed final settlement procedure; (7) incorporates all terms of the Settlement Agreement, including the release; and (8) dismisses this action with prejudice and enters final judgment. *Id.* Ex. A, ECF No. 202-1. The Settlement is in the Class's best interests and provides for payments to be issued within 10 days of the Settlement's effective date.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  SUMMARY OF THE ACTION, SETTLEMENT NEGOTIATIONS, AND NOTICE

#### A.  Factual Allegations

Plaintiffs and Class Members are Manhattan Beer customers who were charged a $0.10 deposit fee for the cardboard containers that carry the beer and other bottled beverages Manhattan Beer sells in the New York City metropolitan area. Manhattan Beer calls these containers "mother cartons." Plaintiffs alleged that Manhattan Beer's mother carton deposit invoicing practices violated, *inter alia*, New York's General Business Law § 349 ("GBL § 349"), the common law, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)–(d) ("RICO"). Third Amended Class Action Compl. ¶¶ 132–202, ECF No. 149 ("TAC").

#### B.  Plaintiffs' Investigation

Beginning in December 2021, Class Counsel began a thorough investigation into the merits of the potential claims and defenses in this action. McInturff Decl. ¶ 14. Class Counsel obtained and analyzed documents from Plaintiffs and other Manhattan Beer customers and conducted extensive factual and legal research into potential experts, as well as the pertinent case law and

facts in other actions challenging invoicing practices, conducting comprehensive legal research concerning the complexities of RICO and fraud-based class actions. *Id.* ¶ 15.

### C.     Overview of Litigation

On February 18, 2022, Plaintiff Cap 111 Enterprises LLC filed the Class Action Complaint. *Id.* ¶ 16. On May 31, 2022, Plaintiffs filed a First Amended Class Action Complaint, adding additional plaintiffs*,* and a Second Amended Class Action Complaint ("SAC") on October 13, 2022. *Id.* ¶¶ 17–18. On December 2, 2022, Defendants served a motion to dismiss, which was docketed on February 23, 2023. *Id.* ¶ 19. On August 16, 2023, this Court partially granted Defendants' motion, dismissing claims for unjust enrichment, breach of contract and the covenant of good faith and fair dealing, violation of New York's Bottle Bill, and public nuisance and sustaining claims under RICO and GBL § 349, as well as claims for common law fraud, fraudulent concealment, and negligent misrepresentation. *Id.* On September 21, 2023, Plaintiffs filed the TAC, conforming the pleadings to the Court's dismissal rulings. *Id.* ¶ 20.

Discovery began on October 28, 2022, and was hard-fought from the get-go. *Id.* ¶ 21. The parties appeared before Magistrate Judge Krause eight times on complex disputes including the scope of class discovery, ESI source disclosures, privilege issues, the adequacy of document retrieval and production, and the timing of production and depositions. *Id.* The parties each filed more than ten letters arguing their positions in connection with these conferences. *Id.* The parties also filed detailed letters regarding the scope of data production, *see* ECF Nos. 90, 92, 107–07, 109, and Plaintiffs' contested application to supplement the SAC, *see* ECF Nos. 70, 87, 91, 97–98. *Id.*

### D.   <u>Settlement Negotiations</u>

Aware of their duty to simultaneously explore resolution, in the fall of 2023 the parties set this case on a parallel mediation track. McInturff Decl. ¶ 23. The parties engaged experienced class action mediator Martin F. Scheinman and held a full-day in-person mediation on February 8, 2024. *Id.* Plaintiffs also hired a database and data science expert to assist in the analysis of the 49 million lines of sales data. *Id.* ¶ 25. Class Counsel, the data scientist, and an economist retained by Class Counsel then used this data to construct a comprehensive damages model. *Id.* ¶¶ 24–26. This model anchored negotiations at the February 8 mediation, the ensuing negotiations on April 16, May 30, July 12, July 30, and August 7, and a follow-up mediation on August 15, 2024. *Id.* ¶ 26.

As litigation and settlement negotiations progressed, on May 13, 2024, Manhattan Beer revised its disputed practices by starting to separately invoice for the deposit fees mandated by the Bottle Bill and its $0.10 mother carton deposit. Settlement Agreement ¶¶ 23, 69. On May 13, 2024, current customers were given additional notice of the $0.10 deposit and Manhattan Beer began memorializing the $0.10 deposit in its customer credit applications. McInturff Decl. ¶ 10.[1]

On August 15, 2024, after extensive mediation efforts, the parties reached a settlement in principle, and spent the remainder of August until November 11, 2024 negotiating final settlement terms. *Id.* ¶ 27. These negotiations remained adversarial and at arm's length, and occasioned comprehensive written correspondence and discussions among counsel on September 9, 20, and 27, and October 16, 22, and 28. *Id.*

---

[1] Manhattan Beer maintains that the changes were voluntary and that it was not obligated to make them. *Id.* Based on an analysis of Defendants' revised deposit practices, Class Counsel determined that customers who made purchases on or after May 13, 2024 could not reasonably claim that Manhattan Beer violated GBL § 349 or other potentially applicable laws or statutes, and Plaintiffs' damages calculation used in settlement negotiations reflected this assessment. *Id.* ¶ 28. Because Class Counsel have continued (and will continue) to monitor Defendants' deposit practices, the parties limited any settled claims (and the release) to purchases made before May 13, 2024. *Id.*

E.      **The Notice Campaign**

Following the preliminary approval order, a comprehensive notice campaign was executed. *Id.* ¶ 50. Specifically, on January 13, 2025, Manhattan Beer provided the Class List and certified that it contained the "most current and up to date information that Defendant has for Class Members." *Id.* ¶ 51 (citing Settlement Agreement ¶ 89(e)). After additional quality control, the parties finalized the email and mail notice, the recording to greet hotline callers, FAQs to respond to Class Member inquiries, and the Settlement website. *Id.* ¶ 52.

On February 3, 2025, direct email and mail notice was issued to the Class. *Id.* ¶ 53. The Settlement Administrator has reported that in total, 28,295 Class Members, or 89% of the Class successfully received notice. *Id.* ¶ 54. In sum, a robust notice process was implemented with an overwhelmingly positive response: no Class Members opted out or objected. *Id.*

II.    **SUMMARY OF SETTLEMENT TERMS**

A.      **Eligible Class Members**

The Class is defined as all Manhattan Beer customers who purchased bottled beverages, were charged a $0.10 deposit for cardboard mother cartons at any time between February 18, 2016 and May 13, 2024, and were not fully credited for all such deposits via redemption or refund. Settlement Agreement ¶ 31. This definition encompasses 31,785 unique Manhattan Beer account numbers, each considered a distinct Class Member for purposes of notice and administration.[2]

---

[2] Excluded from the Class are: (a) Defendants and any parent, subsidiary, or affiliate of Defendants; (b) any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; (c) any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants; (d) all federal, state and local government entities; and (e) any judge, justice or judicial officer presiding over the Action and the members of their immediate families or judicial staff. *Id.*

**B.**    **The Settlement Amount and Allocation Plan**

Under the Settlement Agreement, upon approval Manhattan Beer will deposit $5,750,000 into an escrow account ("Settlement Fund"). Settlement Agreement ¶ 70. Cash payments will be distributed to Class Members on a *pro rata* basis in proportion to the deposits they paid that were not refunded or redeemed. McInturff Decl. ¶ 30. In other words, the more deposits a Class Member has outstanding, the larger their Settlement payment will be. *Id.* The average estimated payment is approximately $112.11. *Id.* ¶ 31. [3] The Settlement also provides for a minimum payment of $25.00 for the Class Members whose allocation would otherwise be lower. *Id.* ¶ 30. Class Members will be mailed their share of the Settlement without having to place a claim. *Id.* ¶ 55. Class Members who have not cashed their checks after 45 days will also receive a reminder notice. *Id.* The Settlement also establishes a reserve fund that will remain open for 18 months after the Settlement's effective date. The reserve fund will be used to address settlement payment issues, including claims from individuals claiming to be Class Members but not identified as such by Manhattan Beer, Class Members who correctly challenge their share of the Settlement, and Class Members who have reasonable explanations for not having timely cashed their checks. *Id.*

**C.**    **Business Practice Changes**

The parties agree that, as a result of Class Counsel's efforts, Manhattan Beer revised its invoicing practices. Specifically, instead of including all deposit fees in a single invoice line item (which practice spurred this litigation), Manhattan Beer changed its invoices and began separately identifying the cardboard deposit fee apart from the deposit fees mandated by New York's Bottle

---

[3] Plaintiffs' Preliminary Approval Motion, ECF No. 191, calculated the average Settlement payout at $116.99. ECF No. 191 at 6. That calculation inadvertently included the amounts for the Settlement Administrator's payment, requested service awards, and the reserve fund. McInturff Decl. ¶ 31. With those costs accounted for, the average payout is calculated at $112.11. *Id.*

Bill. Settlement Agreement ¶¶ 23, 69. The parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and began memorializing the $0.10 cardboard deposit in their customer credit applications. *Id.* ¶ 69. With Mediator Scheinman's assistance, the parties valued these business practice changes at not less than $2,600,000. *Id.* This valuation is based on the average annual alleged deposit overcharges for the six-year period from 2018 to 2023 multiplied by three years going forward. *Id.*

This forward-looking relief is a substantial benefit that courts consider in evaluating fairness. *See Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. Jul. 12, 2022) ("The non-monetary benefits to the class and future customers of [defendant] are also valuable . . . . These aspects of the settlement also weigh in favor of approval."); *see also Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *6 (S.D.N.Y. May 22, 2018) ("The combination of the immediate and future monetary relief, along with the non-monetary benefits provided, constitutes a significant recovery."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief.").

## III.    CLASS MEMBERS' POSITIVE RESPONSE TO THE SETTLEMENT

The deadline for Class Members to opt out of and/or object to the Settlement is April 4, 2025. Preliminary Approval Order (ECF No. 195) at 5. As noted above, to date no Class Members have opted out and none have objected. McInturff Decl. ¶ 54.

## ARGUMENT

## I.    LEGAL STANDARD FOR FINAL CLASS ACTION SETTLEMENT APPROVAL

In the Second Circuit there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Zhu v. Wanrong Corp.*, 2024 WL 4351357, at *3 (E.D.N.Y. Sept. 30, 2024); *Emeterio v. A&P Rest. Corp.*, 2022 WL 274007, at *2 (S.D.N.Y. Jan. 26, 2022) (same). "It

is within a district court's discretion to approve proposed class action settlements." *Grissom v. Sterling Infosystems, Inc.*, 2024 WL 4627567, at *2 (S.D.N.Y. Oct. 30, 2024); *see also Emeterio*, 2022 WL 274007, at *3 ("The determination of whether the . . . terms of the proposed settlement are 'fair, reasonable, and adequate' rests in the discretion of the district court."). "[C]ourts should give proper deference to the private consensual decision of the parties," and "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Brazier v. Real Hospitality Group, LLC*, 2021 WL 7210088, at *2 (S.D.N.Y. Nov. 12, 2021) (quotations omitted); *see also Emeterio*, 2022 WL 274007, at *5 ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." (alterations in original)).

To grant final approval under Rule 23(e)(2) a court must find the settlement "fair, reasonable, and adequate" after considering the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

"In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable and adequate based on the nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), which partially overlap with the factors in Rule 23(e)(2)(C)-(D)." *Goidel v. Aetna Life Ins. Co.*, 2024 WL 4441806, at *3 (S.D.N.Y. Oct. 8, 2024);

*see also Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("[T]he revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement."). Thus, courts analyze the Rule 23(e)(2) final approval factors for procedural fairness under Rules 23(e)(2)(A) and (B) and substantive fairness under Rules 23(e)(2)(C) and (D), the latter of which incorporates all of the *Grinnell* factors. *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019). Accordingly, Plaintiffs offer an analysis of "both sets of factors . . . noting where they overlap." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).[4] As set forth below, all factors are clearly satisfied here.

## II.    THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

### A.    The Settlement Is Procedurally Fair

#### 1.    *Rule 23(e)(2)(A)'s Adequacy of Representation Requirement: Plaintiffs and Their Counsel Are Zealous and Qualified Advocates for the Class.*

Rule 23(e)(2)(A) requires a finding that "the class representatives and class counsel have adequately represented the class." "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Reyes v.*

---

[4] The *Grinnell* factors are (1) the litigation's complexity, expense and likely duration; (2) the class's reaction; (3) the state of proceedings and discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the defendant's ability to withstand a greater judgment; (8) the range of reasonableness in light of the best possible recovery; and (9) the range of reasonableness in light of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468; *Emeterio*, 2022 WL 274007, at *6 ("[T]he court should consider the totality of the [*Grinnell*] factors in light of the particular circumstances[.]"). Here, all factors weigh heavily in favor of approval.

*Summit Health Mgmt., LLC*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (quoting *Cordes & Co. Fin. Servs. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

In determining the adequacy of representative plaintiffs, "only a conflict that goes to the very subject matter of the litigation will defeat . . . representative status." *Vecchio v. Quest Diagnostics, Inc.*, 2023 WL 2842702, at *5 (S.D.N.Y. Apr. 7, 2023) (cleaned up). To satisfy this prong, Plaintiffs must only show that "no fundamental conflicts exist between the class'[s] representatives and its members." *Emeterio*, 2022 WL 274007, at *4.

Here, Plaintiffs "interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from [Defendants' allegedly unlawful practices]." *In re GSE Bonds*, 414 F. Supp. 3d at 692; *see also Charles v. Pinnacle Too, LLC*, 2024 WL 4491560, at *6 (S.D.N.Y. Oct. 15, 2024) ("[T]he fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class." (citation omitted)). Plaintiffs thus have an "interest in vigorously pursuing the claims of the class." *Amigon v. Safeway Constr. Enters., LLC*, 2024 WL 5040436, at *3 (E.D.N.Y. Dec. 9, 2024).

Further, Plaintiffs "demonstrated their commitment to this litigation by retaining qualified and experienced counsel." *Emeterio*, 2022 WL 274007, at *4; *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, 2024 WL 308242, at *8 (E.D.N.Y. Jan. 26, 2024) (same). Plaintiffs also invested substantial time and effort to the case: meeting numerous times with Class Counsel, providing detailed background information, reviewing and discussing the pleadings and discovery, and providing their business' records and extensive emails for review and production in discovery. McInturff Decl. ¶ 36. Plaintiffs also supported Class Counsel throughout the mediation process. *Id.* In sum, Plaintiffs have been excellent class representatives.

Class Counsel also meet the adequacy requirement. Wittels McInturff Palikovic attorneys have extensive experience in prosecuting complex consumer class actions. *Id.* ¶¶ 4–7. The attorneys leading this action have served as Class Counsel in multiple consumer protection class actions and have obtained many millions of dollars in recoveries for class members. *Id.* Further, Wittels McInturff Palikovic dedicated substantial time and resources investigating, prosecuting, and resolving this case. *Id.* ¶ 7. The work that Class Counsel have performed in this case demonstrates their skill and commitment to representing the interests of the Class. *Id.*

> 2. *Rule 23(e)(2)(B)'s Requirement of Arm's Length Negotiations: The Parties' Vigorous Negotiations Were Arm's Length at All Times and Overseen by Experienced Neutrals.*

"Rule 23(e)(2)(B) requires a court to consider whether a proposed settlement 'was negotiated at arm's length.'" *Id.* Though fairness can no longer be presumed for settlements arising from such negotiations, it remains a factor favoring approval. *Moses*, 79 F.4th at 243. Extensive pre-negotiation discovery, experienced counsel, and an experienced mediator indicate good faith arm's length negotiations. *Reyes*, 2024 WL 472841, at *3; *Grissom*, 2024 WL 4627567, at *4 (finding "good faith arm's length negotiations" where plaintiff's counsel "engaged in at least twelve months of discovery, involving detailed review of thousands of pages of documents and data" allowing parties "a full opportunity to acquaint themselves with the strength and weaknesses of their respective cases" and reached settlement with assistance of a mediator); *see also Goidel*, 2024 WL 4441806, at *4 (similar). Here, settlement followed substantial discovery, thorough evaluation of the Class's claims, and vigorous negotiations overseen by an experienced mediator. *See* McInturff Decl. ¶¶ 14–26.

### B.    The Settlement Is Substantively Fair

The substantive factors likewise favor final approval. Settlements require balancing the claims' merits and potential defenses against the attendant risks of continued litigation and delay.

Plaintiffs believe their claims have merit and that they would prevail if this matter proceeded to trial. Defendants disagree, deny any potential liability, and up to the point of settlement indicated a willingness to continue to litigate vigorously. The parties, with the continued assistance of an experienced mediator, concluded that the benefits of settlement outweigh the risks of continued litigation, as well as its associated time and expense. McInturff Decl. ¶ 34.

1. *Rule 23(e)(2)(C)(i) and the Grinnell Factors: The Settlement Amount Is Substantial, Even Considering the Best Possible Recovery.*

Rule 23(e)(2)(C) examines whether relief for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

"This inquiry overlaps with the *Grinnell* factors of 'complexity, expense, and likely duration of the litigation' [(*Grinnell* Factor 1)] along with 'the risks of establishing liability,' 'the risks of establishing damages' and 'the risks of maintaining a class through the trial [(*Grinnell* Factors 4–6)].'" *Sonterra Master Fund, Ltd. v. Barclays Bank PLC*, 2023 WL 3749996, at *4 (S.D.N.Y. June 1, 2023). This inquiry does not displace *Grinnell*. *Moses*, 79 F.4th at 244.

a. Further Litigation Would Be Complex and Costly (*Grinnell* Factor 1).

By reaching a settlement now, the parties avoid uncertainty and ensure a sizeable recovery for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Bryant v. Potbelly Sandwich Works*, 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (citation omitted). This case is no exception, with 31,785 Class Members and complex legal and factual claims.

Continued litigation will add expense and delay. While discovery has been robust, extensive additional discovery would be needed for class certification and trial. The parties would

likely file summary judgment motions. If they were denied, a lengthy, resource-intensive trial would follow. Any judgment would likely be appealed, adding more uncertainty and delay. The Settlement avoids those risks and costs and provides substantial and prompt relief to the Class.

The first *Grinnell* factor thus heavily favors approval. *See, e.g.*, *Delijanin v. Wolfgang's Steakhouse Inc.*, 2021 WL 535635, at *3 (S.D.N.Y. Feb. 12, 2021) (favoring approval where "litigation through trial would be complex, expensive, and long").

b.   The Class's Reaction Is Overwhelmingly Positive (<em>Grinnell</em> Factor 2).

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Sow v. City of New York*, 2024 WL 964595, at *2 (S.D.N.Y. Mar. 5, 2024) (citation omitted). This factor overlaps with Rule 23(e)(4), on the opportunity for exclusion, and Rule 23(e)(5), on the opportunity to object, both of which the Settlement provides. No Class Members have objected or opted out.

c.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the<br>Case Responsibly (<em>Grinnell</em> Factor 3).

Though preparing for trial would likely require hundreds or even thousands of hours of additional discovery, the parties have more than enough discovery to evaluate the costs and benefits of settlement. *See supra* pp. 4–5. The question raised by this factor is "whether counsel had an adequate appreciation of the merits . . . before negotiating." *Flores v. CGI Inc.*, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (quotation omitted). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but are] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Mendez v. MCSS Rest. Corp.*, 2022 WL 3704591, at *7 (E.D.N.Y. Aug. 26, 2022) (quotation omitted).

The discovery taken here, and described *supra* at pp. 4–5, easily hurdles this standard. *See Goidel*, 2024 WL 4441806, at *4 (factor favors approval where parties engaged in "over twelve

14

months of discovery" involving significant document review and "resol[ution of] a substantial discovery dispute"); *see also Reyes*, 2024 WL 472841, at *3 (factor favors approval parties engaged in "seven months of discovery . . . that included a review of [defendant]'s internal communications and correspondence"); *Soler v. Fresh Direct, LLC*, 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023) ("meaningful discovery" included production of "class member data," "corporate training documents," corporate policies, and class member files); *Quow v. Accurate Mech. Inc.*, 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (approving settlement where discovery included "thousands" of pages and data analysis).

   d. <u>Plaintiffs Face Real Risks If the Case Proceeds (*Grinnell* Factors 4 to 6).</u>

   Although Plaintiffs believe their case is strong, there are risks ahead. In weighing these risks, the Court "need not adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Nichols*, 2022 WL 2705354, at *9; *Flores*, 2022 WL 13804077, at *7 (same).

   Further, this inquiry focuses on the Class's prospects, including the hurdles to achieving and maintaining class certification through trial. Prior to settlement, Plaintiffs had begun work on certification and fully "anticipate[d] that Defendants would oppose class certification as vigorously as [they] had contested Plaintiffs' allegations and discovery requests." *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (citation omitted); McInturff Decl. ¶ 35. "There is no assurance that [plaintiffs'] motion for class certification would be granted, and . . . [d]efendants would likely have challenged class certification [if] they [had] continued in this litigation." *Puddu v. 6D Global Techs., Inc.*, 2021 WL 1910656, at *5 (S.D.N.Y. May 12, 2021).

   While Class Counsel believe the Court would certify the Class, this ruling would be reached only after extensive litigation, including more discovery, depositions, expert discovery, and lengthy briefing. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *7 (S.D.N.Y.

Dec. 18, 2019) ("Simply completing the pre-trial proceedings would have involved considerable additional discovery; taking dozens of depositions; defense of the depositions; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; and extensive briefing on motions for summary judgment, motions to strike experts and other motions *in limine* likely to be made[.]"). Either party (or both) could also seek an interlocutory appeal of a certification order under Rule 23(f), *In re GSE Bonds*, 414 F. Supp. at 686, 693, and Manhattan Beer could later seek to decertify the class. *Lawrence v. NYC Med. Practice, P.C.*, 2024 WL 307842, at *2 (S.D.N.Y. Jan. 26, 2024).

"[A] settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids." *Belton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *5 (S.D.N.Y. Feb. 10, 2022) (citation omitted). Moreover, "[a] trial on the merits is inherently risky." *Delijanin*, 2021 WL 535635, at *4. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 313 (S.D.N.Y. 2020) (quotation omitted).

While Plaintiffs believe in their case, the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain. That the Settlement ends these uncertainties favors approval. *See, e.g.*, *Quow*, 2018 WL 3368673, at *3 (risks as to both liability and damages, including overcoming defenses, weighed in favor of final approval).

     e.  Although Defendants Likely Could Withstand a Greater Judgment, That Does Not Suggest the Settlement Is Unfair (*Grinnell* Factor 7).

"[A] defendant is not required to empty its coffers before a settlement can be found adequate." *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *6 (S.D.N.Y. Sep. 29, 2022) (cleaned up). Even if Manhattan Beer could withstand a greater judgment, this factor alone "does

not suggest that the settlement is inadequate." *Nichols*, 2022 WL 2705354, at *10. This factor is therefore neutral.

> f. The Settlement Is Substantial, Even Considering the Best Possible Recovery (*Grinnell* Factors 8 and 9).

The fairness assessment "'is not susceptible of a mathematical equation yielding a particularized sum.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (quoting *In re PaineWebber*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997)). "[T]he question . . . is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces . . . ." *Puddu*, 2021 WL 1910656, at *6 (quotation omitted).

Here, the Settlement is substantial: a cash fund of $5,750,000 and business practice changes valued at an additional $2,600,000. Even if the Court were to only consider the $5,750,000 in cash relief, this sum corresponds to 61.4% of the approximately $9,361,779 in out-of-pocket losses Plaintiffs calculated from Manhattan Beer's business records. McInturff Decl. ¶ 34. This result is more than reasonable—it is commendable. *See Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 11, 2021) (approving settlement of 5.3% of estimated class-wide damages); *see also id.* ("Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness") (citation omitted); *Emeterio*, 2022 WL 274007, at *8 (settlement at 25% of total damages "weighs strongly in favor of final approval"); *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *14 (E.D.N.Y. Aug. 13, 2021) (settlement valued between "15% and 24% of reasonable recoverable damage" "likely represent[ed] the best possible recovery"); *Puddu*, 2021 WL 1910656, at *6 (settlement valued at 6.05% was reasonable); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *4 (S.D.N.Y. Dec. 16, 2019) (settlement valued at 10.9% to 21.3% of possible recovery was reasonable).

2. *The Remaining Rule 23(e)(2)(C) Factors Are Easily Satisfied.*

a. The Proposed Distribution Method Is Effective (Rule 23(e)(2)(C)(ii)).

Rule 23(e)(2)(C)(ii) requires courts to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the parties' proposed distribution method is the preferred method—direct payment without the need to submit a claim. *See* The Federal Judicial Center's "Judges' Class Action Notice and Claims Process Checklist" *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."). Here, each Class Member will simply be mailed their settlement check. Settlement Agreement ¶ 77.

Regarding the allocation plan, while it "must be fair and adequate," it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Pearlstein*, 2022 WL 4554858, at *8 (citation omitted); *see also id.* ("This does not mean that the plan must be perfect."). "[N]umerous courts have held [that] a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *8.

Here, the allocation plan tracks Plaintiffs' damages model and each Class Member will be paid their proportionate share of the deposits that were neither refunded nor redeemed. This is a reasonable, rational basis for allocation. *See Grissom*, 2024 WL 4627567, at *5 ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." (citation omitted)); *see also Lea*, 2021 WL 5578665, at *11 (collecting cases). A fundamentally fair allocation like the one proposed here easily meets the approval criteria. *See id.* (approving distribution based on overall loss for each class members' transactions and finding that class members were treated "equitably relative to each other"); *see*

*also Pearlstein*, 2022 WL 4554858, at \*8 (approving as fair, rational, and adequate allocation plan distributing fund "on a *pro rata* basis based on the relative size" of their claims).

> b. Class Counsel's Requested Attorneys' Fee Is Well Within the Norms of This Circuit (Rule 23(e)(2)(C)(iii)).

Rule 23(e)(2)(C)(iii) requires courts to examine "the terms of any proposed award of attorneys' fees, including the timing of payment." Here, Class Counsel are requesting attorneys' fees of one-third of the Settlement's $5,750,000 cash portion (*i.e.*, $1,916,666). As Your Honor has previously noted, one-third is the standard class action fee percentage in the Second Circuit. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 2013 WL 10114257, at \*3 (S.D.N.Y. Dec. 18, 2013) ("Class Counsel's request for 33% of the [s]ettlement fund is well within the applicable range of reasonable percentage awards[.]"); *see also Krasnansky v. JCCA*, 2023 WL 6141240, at \*6 (S.D.N.Y. Sept. 20, 2024) ("Given that Plaintiff's counsel's request for 33% of the total settlement is in line with common practice in the Second Circuit, the Court finds the request reasonable." (cleaned up)); *Lea*, 2021 WL 5578665, at \*12 ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."). Yet here, when the Settlement's total value is considered, the requested fee is just 22.9% of the overall value. *See, e.g.*, Principles of the Law of Aggregate Litigation § 3.13(b) (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and the nonmonetary value of the judgment or settlement."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at \*10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief."). As discussed in the fee and expense application below, the requested sums are supported by court approval of similar fees

in comparable cases, the substantial results achieved for both the Class and Manhattan Beer's future customers, and the risks borne by Class Counsel to achieve these benefits.[5]

### 3. *Rule 23(e)(2)(D)'s Equitable Treatment Requirement: The Parties' Allocation Plan Correlates with Actual Damages and Is Reasonable.*

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." *Moses*, 79 F.4th at 244. Here, all Class Members are treated equally. As noted *supra* at p. 18, the allocation plan tracks Plaintiffs' mediation damages model and Class Members' awards are keyed to their alleged overpayment. And all Class Members are bound by the same mutual release, Settlement Agreement ¶¶ 52, 95–104, that does not affect the apportionment of relief, demonstrating equity. *In re GSE Bonds*, 414 F. Supp. 3d at 698–99.

\* \* \*

In sum, both the Rule 23(e) and *Grinnell* factors strongly favor final approval.

## III. NOTICE TO THE CLASS SATISFIED RULE 23 AND DUE PROCESS

In addition to having personal jurisdiction over Plaintiffs, the Court also has personal jurisdiction over the Class because they received the requisite notice. *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005); *Sykes v. Harris*, 2016 WL 3030156, at \*9 (S.D.N.Y. May 24, 2016) ("This Court can exercise personal jurisdiction over all absentee Class Members because Class Members received proper notice of the class action."). As noted *supra* and set forth in the preliminary approval brief, ECF No. 191 at 7–8, 31–33, the notice program satisfied all requirements of law.

---

[5] Rule 23(e)(2)(C)(iv) also requires courts to consider "any agreement required to be identified by Rule 23(e)(3)," that is, "any agreement made in connection with the proposal." Here, there are no such agreements. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 36, n. 30 (S.D.N.Y. 2019).

## IV.    CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

On December 18, 2024, the Court preliminarily certified the Class. *See* ECF No. 195. There have been no changes that suggest this ruling should be changed. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Motion, ECF No. 191 at 25–31, this Court should affirm its determinations in the Preliminary Approval Order and certify the Class under Rule 23.

## V.    THE COURT SHOULD DIRECT SERVICE AWARDS TO PLAINTIFFS

Under the Settlement, Plaintiffs may apply to the Court for service awards of up to $25,000 total, to be allocated among the five Class Representatives who assisted the prosecution of this action. Settlement Agreement ¶ 114. Service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Emeterio*, 2022 WL 274007, at *10; *see also Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *11 (S.D.N.Y. Sept. 23, 2014) ("It is important to compensate plaintiffs for the time they spend and the risks they take.").

The requested payment to the five Class Representatives would total $25,000, 0.43% of the Settlement's cash recovery. McInturff Decl. ¶ 36. These representatives made themselves available on matters such as documentary evidence and/or testimony in presenting the Class claims, reviewing electronic files (including extensive searches of their business and personal email accounts), searching through hard copy documents (including traveling to the location(s) where documents were stored), and keeping in close contact with Class Counsel. *Id*. Plaintiff Cap 111 Enterprises LLC, which initiated this action, will receive $10,000. *Id.* ¶ 37. The four remaining Class Representatives, whose employees independently assisted Class Counsel in prosecuting the

21

Class claims, will receive $3,750 each. *Id.* The Class Representatives at all times encouraged Class Counsel to obtain the best possible result for the Class. *Id.*

The requested service awards are well-deserved and are well within the range of previously approved awards. *See, e.g.*, *Nichols*, 2022 WL 2705354, at *12 (service awards totaling $135,000); *In re Polaroid*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (case law supports service awards of up to $85,000); *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and approving awards of $20,000 each to seven named plaintiffs); *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving awards of $15,000 each for two named plaintiffs and $10,000 each for three other named plaintiffs). Moreover, the service award request was subject to arm's length negotiations and was disclosed to the Class. McInturff Decl. ¶ 36. No Class Member has objected to the proposed service awards. *Id.* The requested service awards are reasonable.

## VI.    THE COURT SHOULD GRANT THE REQUESTED FEES AND EXPENSES

Class Counsel bore the tremendous financial risk of employing a team of lawyers to investigate and litigate this action for over three years. *Id.* ¶¶ 46–47. This investment secured: (1) $5,750,000 in cash (61.4% of the Class's out-of-pocket losses); and (2) business practice changes valued at $2,600,000 and benefitting Manhattan Beer's current and future customers. As compensation for their efforts, Class Counsel request the customary one-third legal fee, but only as measured against the $5,750,000 cash fund, not the Settlement's total value. *Id.* ¶ 39. It is well settled that a one-third fee in complex class actions "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012); *see also Cruz Guerrero v. Montefiore Health Sys. Inc.*, 2025 WL 100889, at *10 (S.D.N.Y. Jan. 15, 2025) ("Courts in this

Circuit routinely find that a percentage of fund award is appropriate and that a one-third percentage is fair and reasonable." (collecting cases)). Yet, in basing their fee request on only the Settlement's cash fund, Class Counsel here are requesting substantially *less* than the customary one-third fee. When the full $8,350,000 Settlement value is considered, the fee request amounts to 22.9% of the Settlement's total value. McInturff Decl. ¶ 39.

Considering these facts, as well as the authorities cited below, Class Counsel's requested attorneys' fee is reasonable, and well in line with prior awards in this District, the risks incurred and the results obtained, and the terms sophisticated clients negotiate in contingent fee representation both in class actions and other complex matters.

### A.     Class Counsel Should Be Adequately Compensated for Their Substantial Efforts and the Tremendous Financial Risk They Took for the Class's Benefit

Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001); *see also Flores v. One Hanover, LLC*, 2014 WL 2567912, at *9 (S.D.N.Y. June 9, 2014) (Because "[c]ommon fund recoveries" such as this one "are contingent on a successful litigation outcome," class action contingency fees "transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the court would be difficult to achieve without compensating attorneys for that risk."). It is also well settled that contingency fee awards should be greater than the fees in non-contingency cases, as "[n]o one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." *Grinnell*, 495 F.2d at 470; *Lea*, 2021 WL 5578665, at *11 (same).

Moreover, courts recognize that fee awards discourage "future misconduct of a similar nature." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Class actions serve "both as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated[.]" *Zink v. First Niagara Bank, N.A.*, 2016 WL 7473278, at *9 (W.D.N.Y. Dec. 29, 2016) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016)); *see also* William B. Rubenstein, *On What A "Private Attorney General" Is—and Why It Matters*, 57 VAND. L. REV. 2129, 2168 (2004) ("[Class Counsel's] clients are not just the class members, but the public and the class members; their goal is not just compensation, but deterrence and compensation.").

### B.    The Standard for Awarding Attorneys' Fees in Class Actions

In common fund settlements such as this one, courts in this Circuit prefer the percentage-of-the-fund method for awarding attorneys' fees, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), noting that it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *McIntosh v. Katapult Holdings., Inc.*, 2024 WL 5118192, at *12 (S.D.N.Y. Dec. 13, 2024) (quotation omitted).

#### 1.    *The* Goldberger *Factors Support Plaintiffs' One-Third Requested Fee Award.*

The requested one-third fee is reasonable when considering the following *Goldberger* guidelines: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50. In fact, all *Goldberger* factors weigh in favor of granting Class Counsel's one-third fee request here.

### a. Class Counsel's Time and Labor.

Class Counsel devoted over 2,700 hours throughout over three years spent investigating, prosecuting, and settling this case. McInturff Decl. ¶ 41. Class Counsel have deep experience in class actions and the time and labor spent is reasonable considering the many disputed issues that required vigorous advocacy in response to Manhattan Beer's robust defense. *Id.* ¶ 42. Because Class Counsel took this case on pure contingency, all financial incentives were to work efficiently and minimize costs. *Id.* ¶ 43. Moreover, Class Counsel will spend additional time monitoring and aiding in the Settlement's further administration. *Id.* ¶ 44. The requested fee is also meant to compensate for this future work. *DeLeon v. Wells Fargo Bank, N.A.*, 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015).

### b. Magnitude and Complexity of the Litigation.

The magnitude and complexity of this litigation supports approval. "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Hesse v. Godiva Chocolatier, Inc.*, 2022 WL 22895466, at *12 (S.D.N.Y. Apr. 20, 2022). This multi-year case involved extensive investigation, pleading and motion practice, analysis of vast computerized data, complex claims—including federal RICO and consumer fraud—and prolonged, and hard-fought and lengthy settlement negotiations.

### c. Risks of the Litigation.

"The risk of the litigation is often cited as the first, and most important, *Goldberger* factor." *Lea*, 2021 WL 5578665, at *12. "[C]lass actions confront even more substantial risks than other forms of litigation." *Cates v. Trustees of Columbia Univ. in City of N.Y.*, 2021 WL 4847890, at *5 (S.D.N.Y. Oct. 18, 2021). The risk of non-payment is real, as many class actions see thousands of attorney hours with no remuneration, even after trial victories. *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *22 (S.D.N.Y. Mar. 24, 2014); *see also* McInturff Decl. ¶ 46.

In addition, "[t]he Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis." *Lea*, 2021 WL 5578665, at *12. Class Counsel pursued this case on 100% contingency for over three years without payment. The requested fee reflects this risk, as contingency work warrants greater compensation than non-contingency work. Without such incentives, plaintiffs may struggle to secure representation. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010); *In re Lloyd's American Trust Fund Litig.*, 2002 WL 31663577, at *28 (S.D.N.Y. Nov. 26, 2002) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier[.]").

Class Counsel "undertook this litigation on a contingent basis and have received no payment for their work during the roughly three years that the case has remained pending, which counsels in favor of approving the requested fee." *Lea*, 2021 WL 5578665, at *12; *see also Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *6 (S.D.N.Y. Feb. 4, 2020) (counsel risking time and effort and advancing expenses, with no guarantee supported one-third fee).

  d. <u>Quality of Representation.</u>

When evaluating the quality of representation, "courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hernandez v. Between the Bread 55th Inc.*, 2021 WL 12279220, at *4 (S.D.N.Y. Aug. 16, 2021) (citation omitted). As set forth *supra* at 10–12 in connection with Rule 23 adequacy, Class Counsel have decades of experience successfully prosecuting consumer class actions and have been appointed class counsel in dozens of matters. McInturff Decl. ¶¶ 3–7. The Settlement is a highly favorable outcome for the Class, directly resulting from Class Counsel's skill and diligence. *Id.* ¶ 7.[6]

---

[6] Defense counsel's high caliber is further testament to Class Counsel's quality of representation. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) (reasonableness of fee

*Footnote continued on the following page.*

The recovery obtained equally justifies the requested fee. As noted, the Settlement is comprised of a $5,750,000 cash fund, and due to Class Counsel's efforts, Manhattan Beer customers benefitted from business practice changes independently valued at $2,600,000. In calculating class action fee awards, courts include the value of both monetary and non-monetary benefits. *Fleisher*, 2015 WL 10847814, at *10, 15. "Leading authorities agree, as do courts in this Circuit and nationwide." *Id.* at *15 (collecting authorities).[7] As discussed above on pp. 7–8, this case secured significant business practice changes. McInturff Decl. ¶ 10.

"The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of injunctive relief through objective criteria: 'an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future.'" *Fleisher*, 2015 WL 10847814, at *15. That method was used to value the non-monetary relief obtained here. McInturff Decl. ¶ 39.

When considering the substantial non-monetary benefit conferred on the Class, the requested attorneys' fee award represents just 22.9% of the total settlement value. *Id.* The

---

supported by fact that the "high quality of defense counsel opposing Plaintiffs' efforts . . . proves the caliber of representation that was necessary to achieve the Settlement")).

[7] *See also Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (valuing non-monetary relief at "an estimated $5 million," when considering fee request); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (even though parties could only "fairly value" the non-monetary relief "at between $26 million and $38 million," the court used this valuation for setting fee); *Tennille v. W. Union Co.*, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) (adding $46,560,596 in non-monetary value to $19,000,000 in available refunds and awarding 35% fee ($22,946,208) because basing fee solely on monetary component "would severely undervalue class counsel's efforts in obtaining the [non-monetary] relief and other benefits [in settlement]."); *Sykes*, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (considering value of non-monetary relief in setting fees); Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 35 (3d ed. 2010) (basing fees on the "actual value to the class of any settlement fund plus the actual value of any nonmonetary relief"); Principles of the Law of Aggregate Litigation, The American Law Institute, Mar. 1, 2010, § 3.13 (noting fees are to be "based on both the monetary and nonmonetary value of the judgment or settlement").

requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third (33.33%) of the total value obtained for the class has repeatedly "been approved as reasonable in this Circuit." *Lea*, 2021 WL 5578665, at *12 (collecting cases); *see also In re DDAVP*, 2013 WL 10114257 at *3 ("Class Counsel's request for 33% of the Settlement fund is well within the applicable range of reasonable percentage awards[.]") (Seibel, J.).

e.    The Requested Fee Is Reasonable in Relation to the Settlement.

The requested fee of one-third of the cash fund is also reasonable considering the work performed and the results obtained and falls within the range of common fund awards in the Second Circuit. Here, the resulting $5,750,000 cash fund represents 61.4% of Class Members' total out-of-pocket losses, a recovery significantly higher than in many settlements approved in this Circuit. *See supra* p. 17 (collecting cases). As set forth above, courts both in the Second Circuit and elsewhere have established that a standard fee in complex class action cases is one-third of the gross settlement benefit. When considering the Settlement's significant non-monetary relief, the requested fee is markedly lower than what courts award in similar cases.

f.    Public Policy Considerations.

Awarding one third of the cash fund is also consistent with public policy. *See, e.g.*, *In re Signet Jewelers Ltd. Secs. Litig.*, 2020 WL 4196468, at *21 (S.D.N.Y. July 21, 2020) (if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook" (citation omitted)); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *17 (S.D.N.Y. May 9, 2014) ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered." (citation omitted)); *In re Marsh*, 265 F.R.D. at 150 ("To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both

28

fair and rewarding." (cleaned up)); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 60 (E.D.N.Y. 2010) ("If counsel did not have the prospect of an award that took account of the substantial risks and uncertainties of such litigation, there would be no incentive to take this type of case at all and the vast majority of the class would have gone without prospect of recovery.").

This is especially true where, like here, there are no public enforcement actions regulating the longstanding conduct at issue. *See Asare v. Change Grp. of New York, Inc.*, 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The violations complained of are of long-standing duration. Nevertheless, apparently no state or federal governmental action has ever been brought against Defendant to correct these deficiencies. The award of the requested fees will encourage the prosecution of similar claims and further a significant public interest goal.").

Moreover, the requested fee does not bestow a windfall on Class Counsel (*see* the lodestar cross check discussion below) and represents reasonable remuneration for risking over 2,700 attorney hours and advancing more than $88,000 in the over three years they devoted to this case. Therefore, any concern about preventing windfalls is not at issue here. Simply put, Class Counsel's requested compensation is reasonable, as this amount falls below the range of fees normally approved within this Circuit. In sum, the *Goldberger* factors support the requested fee.

2. *The Lodestar Cross Check Further Supports Class Counsel's Fee Request.*

Application of the lodestar/multiplier method also confirms the reasonableness of Class Counsel's request. "Courts can award fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005). "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Lea*, 2021 WL 5578665, at *11. By

contrast, the lodestar method has been criticized for creating "a temptation for lawyers to run up the number of hours for which they could be paid" which "created an unanticipated disincentive to early settlement." *Goldberger*, 209 F.3d at 48–49.

From the standpoint of judicial economy, "the primary source of dissatisfaction" with the lodestar method "was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits," which produced an "inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48–49. Thus, "[t]he trend in the Second Circuit is to apply the percentage method and loosely use the lodestar method as a baseline or as a cross check." *Solis v. OrthoNet LLC*, 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021).

Under the lodestar cross-check, the number of hours each attorney worked is multiplied by that attorney's hourly rate. *Goldberger*, 209 F.3d at 47. "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or the court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Sturm, Ruger, & Co., Inc. Secs. Litig.*, 2012 WL 3589610, at *13 (D. Conn. Aug. 20, 2012) (quotation omitted); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. Oct. 11, 2011) (same).

In considering the lodestar, the court also determines the appropriate multiplier to "reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Flag Telecom Holdings*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010); *see also Dial Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. Oct. 31, 2016) (explaining that a lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's

work") (citation omitted); *Cates*, 2021 WL 4847890, at *5 (observing that it is not "just to make a fee depend solely on the reasonable amount of time expended," "particularly in complicated cases producing large recoveries." (citing *Grinnell*, 495 F.2d at 470)).

Here, Class Counsel's lodestar to date is $2,297,976, which reflects the over 2,700 hours devoted over more than three years of work. McInturff Decl. ¶ 41; *see also* ECF 199-1 (Class Counsel's billing records for this case).[8] As detailed above, this action was hotly contested with extensive discovery, a motion to dismiss the complaint, eight hearings on contested discovery matters, more than ten substantive letters filed by each party regarding contested discovery motions and applications, and a full-day in-person mediation. *See, e.g.*, *id.* ¶¶ 21–23.

Class Counsel's requested one-third fees constitutes a ***negative multiplier of 0.83***, while courts in this Circuit routinely approve multipliers of 4 or more. *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *see also Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("[L]odestar multiples of over 4 are routinely awarded by courts." (quotation omitted)); *Maley*, 186 F. Supp. 2d at 371 (a "modest multiplier of 4.65" is "fair and reasonable."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (awarding multiplier of "approximately 6.3" and stating "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar"); *Lopez v. Fashion Nova*, 2021 WL 4896288, at *3

---

[8] Class Counsel used their billing discretion to lower their number of hours expended. *Id.*

(S.D.N.Y. Oct. 19, 2021) ("In this Circuit, courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher[.]" (cleaned up)).[9]

Turning to Class Counsel's hourly rates, they are in line with the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation," *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1159 (2d Cir. 1994), and are reasonable when analyzed under the "*Johnson* factors." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has identified the twelve *Johnson* factors as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3. However, "separate findings as to each factor are unnecessary." *Espinosa v. Perez*, 2020 WL 2950978, at *1 (S.D.N.Y. Jan. 27, 2020).

Here, Class Counsel's rates are supported by each of the *Johnson* factors. This action was undertaken on pure contingency by highly specialized attorneys. *See, e.g.*, McInturff Decl. ¶¶ 42–43. Due to the intense time commitment (here, over 2,700 hours), counsel was precluded from other work. *Id.* ¶ 47. Cases like this are also not attractive to the greater class action bar, likely because they are highly complex and require multi-year efforts. *Id.* Class Counsel's usual hourly

---

[9] *See also Riveras v. Bilboa Rest. Corp.*, 2018 WL 8967112, at *1 (S.D.N.Y. Dec. 14, 2018) (approving 6.7 multiplier); *Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (5.1 multiplier); *Wal-Mart*, 396 F.3d at 123 (3.5 multiplier); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier).

rates are also competitive with rates awarded in other complex class actions in this District and have been repeatedly approved by courts in this District and beyond. *Id.* ¶ 43.[10]

Further, rates from recent complex class actions in this District and the Eastern District demonstrates Class Counsel's hourly rates are in full accord with local rates for similarly complex class actions. *See ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (approving rates of up to $1,777.50 for partners and $1138.50 for associates, noting "one court in our Circuit observed nearly a decade ago that partner billing rates in excess of $1,000 an hour are not uncommon in the context of complex commercial litigation") (cleaned up); *see also Macquarie Mexico Real Estate Mgmt. S.A. De CV v. Hoiston Int'l Ents., Inc.*, 2021 WL 4952693, at *9 n.2 (S.D.N.Y. Oct. 20, 2021) (up to $1,300/partners, $800/associates)*; Phyto Tech Corp. v. Givaudan SA*, 2023 WL 1437714, at *7 (S.D.N.Y. Jan. 31, 2023) (up to $1,079.97/partners, $723.39/associates); *Vista v. Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) ($1,260/partners, up to $693/associates); *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) ($1,048.47/partners, up to $753.42/associates). In sum, the lodestar cross-check shows the requested one-third fee is reasonable.

---

[10] *See, e.g.*, *Franck v. N.Y. Health Care Inc.*, 21-CV-4955 (S.D.N.Y. Sept. 13, 2024), ECF No. 242 (approving Class Counsel's 2024 rates in wage and hour class action); *Nichols*, 20-CV-3677 (S.D.N.Y. July 12, 2022), ECF No. 519 (2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, 17-CV-5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, 16-CV-8800 (D.N.J. July 2, 2020), ECF No. 94 (2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, 13-CV- 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, 503285/2015 (N.Y. Sup. Ct. July 16, 2018), NYSCEF No. 205 (2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, 15-CV-1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, 16-CV-1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (2017 rates in wage and hour class action).

    *3. The Expenses Incurred Are Reasonable and Were Necessary to Achieve the*
    <u>*Benefit Obtained.*</u>

Plaintiffs' counsel's fee application includes a request for reimbursement of $88,207.63 in litigation expenses that were reasonably incurred and necessary for the prosecution of this action. *See* McInturff Dec. ¶ 48. Such expenses are properly recovered by counsel. *See Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sep. 29, 2022) ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class, and should therefore be reimbursed 'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation.'" (quoting *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019))) (cleaned up).

In addition to being reasonable and necessary, Class Counsel's expenses are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *20 (awarding expenses for "travel, including air and ground transportation, hotels, and meals," "electronic discovery fees" and "costs such as copying, service of process, filing fees, and other incidental expenses"); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (awarding expenses for "experts, investigators, mediation, and notice to class members."). The Court should award Class Counsel these reasonable and necessary expenses incurred to obtain a favorable result for the Class. McInturff Decl. ¶ 49.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, certify the Settlement Class, and enter the proposed Order and Final Judgment, ECF No. 202-1.

Dated:  March 21, 2025
        New York, New York                      Respectfully submitted,

                                                /s/ J. Burkett McInturff
                                                J. Burkett McInturff
                                                Steven L. Wittels
                                                Tiasha Palikovic
                                                Ethan D. Roman

                                                **WITTELS MCINTURFF PALIKOVIC**
                                                305 BROADWAY, 7TH FLOOR
                                                NEW YORK, NEW YORK 10007
                                                Telephone: (914) 775-8862
                                                Facsimile: (914) 775-8862
                                                jbm@wittelslaw.com
                                                slw@wittelslaw.com
                                                tpalikovic@wittelslaw.com
                                                edr@wittelslaw.com

                                                *Class Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the documents submitted in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Related Relief were served via ECF this 21st day of March 2025 upon all counsel of record.

 /s/ J. Burkett McInturff
J. Burkett McInturff