UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAP 111 ENTERPRISES LLC, 251 E. MAIN ST., LLC, 67 PURCHASE ST LLC, PUB STREET PLEASANTVILLE LLC, AND LOCALI KITCHEN & BAR LLC, <br><br>on behalf of themselves and all others similarly situated, <br><br>         Plaintiffs, <br><br>       v. <br><br>MANHATTAN BEER DISTRIBUTORS, LLC, SIMON BERGSON, AND MICHAEL MCCARTHY, <br><br>         Defendants. | Case No.: 22-CV-1408 (CS) (AEK) |

**DECLARATION OF J. BURKETT MCINTURFF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND RELATED RELIEF**

I, J. Burkett McInturff, declare as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. My firm, Wittels McInturff Palikovic ("WMP"), serves as Class Counsel for Plaintiffs and the Class. Based on my active participation and supervision of all material aspects of the prosecution and settlement of this consumer class action, I have personal knowledge of the matters set forth herein.

2. I make this Declaration in support of Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement and Related Relief (the "Final Approval Motion"). Through the Final Approval Motion, Plaintiffs ask that the Court endorse the enclosed proposed Order and Final Judgment, which: (1) grants final certification to the Class under Rule 23 for settlement purposes; (2) grants final approval of all terms applicable to the Class set forth in the Settlement Agreement; (3) finds that notice was the best notice practicable under the circumstances; (4) approves the service awards to the Class Representatives; (5) awards Class Counsel reimbursement of litigation expenses and attorneys' fees; (6) approves the parties' proposed final Settlement procedure; (7) incorporates all terms of the Settlement Agreement, including the release; and (8) dismisses this action with prejudice and enters final judgment. *See* **Ex. A** (proposed Order and Final Judgment).

I. **Class Counsel's Background**

3. I am the partner that is primarily responsible for handling this matter for my law firm. I have been admitted to practice law in New York for 12 years. I graduated from New York University School of Law in 2010. For the last 12 years more than 90% of my practice has been devoted to litigating consumer protection and employment class actions.

4. WMP has deep experience handling class actions, including prosecuting and settling class actions generally, with particularized expertise in consumer protection matters. For example, in 2022, WMP obtained a $62 million consumer class action settlement on behalf of nearly 2 million customers of diet company Noom, Inc., which was approved by Southern District of New York Magistrate Judge Katharine A. Parker. In 2019, WMP obtained a $39 million settlement on behalf of a nationwide class of 45,000 home mortgage customers with Ocwen Loan Servicing LLC and Cross Country Home Services Inc., which was approved by Eastern District

of New York Judge Nicholas G. Garaufis. The previous year, in 2018, a Supreme Court Commercial Part Judge in Kings County approved WMP's $29.75 million settlement for New York consumers victimized by Ambit Energy, a third-party energy supply company, in which almost 100,000 customers shared in the cash benefits.

5.   Further, WMP currently serves as Class Counsel in *Mirkin v. XOOM*, 18-CV-2949 (E.D.N.Y.), a consumer class action on behalf of more than 100,000 New York utility customers where the firm obtained class action certification and is currently overseeing trial preparation efforts.

6.   The lawyers assigned to this matter are well-versed in consumer protection law and in class action law and are highly qualified to represent the Class. Lawyers at WMP have represented classes of consumers and employees in more than a dozen class action lawsuits in state and federal courts throughout the United States, including many in this District. Their backgrounds and qualifications are detailed in the enclosed WMP firm resume.

7.   Further, the team of attorneys and staff litigating this matter on behalf of Class Members dedicated substantial time and resources investigating, prosecuting, and resolving this case. The work that Class Counsel have performed in this case demonstrates our skill and commitment to representing the interests of the Class. The negotiated Settlement is a highly favorable outcome for the Class, directly resulting from the skill and diligence of Class Counsel.

## II.   Introduction to the Proposed Settlement and Relief Sought by this Motion

8.   The proposed Settlement resolves the claims brought by Plaintiffs Cap 111 Enterprises LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC ("Plaintiffs") against Manhattan Beer Distributors, LLC, Simon Bergson, and Michael McCarthy ("Defendants" or "Manhattan Beer").

9. Plaintiffs' Final Approval Motion seeks final approval of the Settlement of this consumer protection class action—a Settlement achieved after over three years of extensive investigation, hard-fought litigation, and forceful negotiations overseen by a third-party mediator. The final terms of the parties' Settlement were memorialized in the Settlement Agreement that is now being submitted for the Court's final approval. At all times, the parties' negotiations have been vigorous, adversarial, and conducted at arm's length.

10. The proposed Settlement provides a monetary benefit to the Class in the form of a $5,750,000.00 cash Settlement Fund to be deposited into an escrow account ("Settlement Fund"). Settlement Agreement ¶ 70, with Settlement payments (net of expenses and fees) to be distributed directly to Class Members without the need for a claim form. As described herein, each Class Member is entitled to a *pro rata* share of the Settlement Fund based on each individual's aggregate damages. Further, the parties agree that as a result of Class Counsel's efforts, on May 13, 2024, Manhattan Beer revised its practices to the benefit of Class Members and future Manhattan Beer customers by instituting and formalizing a practice by which Manhattan Beer separately invoices for the deposit fees mandated by New York's Bottle Bill, on the one hand, and the $0.10 cardboard deposit at issue in this litigation, on the other hand. The Parties also agree that on May 13, 2024, Defendants provided current Manhattan Beer customers with additional notice of the $0.10 cardboard deposit and began memorializing the $0.10 cardboard deposit in their customer credit applications. With the assistance of their third-party mediator, the parties valued these changes and enhancements of Manhattan Beer's invoicing practices at not less than $2,600,000, thus yielding a class action Settlement valued at not less than $8,350,000.

11. In arriving at this favorable result, Plaintiffs also recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and ultimate success on the merits remain uncertain.

12. Pursuant to the terms of the Settlement Agreement, Plaintiffs now move for entry of the proposed final approval order which accomplishes the following:

(i) grants final certification to the Class under Rule 23 for settlement purposes;

(ii) grants final approval of all terms applicable to the Class set forth in the Settlement Agreement;

(iii) finds that notice was the best notice practicable under the circumstances;

(iv) approves the service awards to the Class Representatives;

(v) awards Class Counsel reimbursement of litigation expenses and attorneys' fees;

(vi) approves the parties' proposed final settlement procedure;

(vii) incorporates all terms of the Settlement Agreement, including the release; and

(viii) dismisses this action with prejudice and enters final judgment.

13. In the paragraphs that follow, I will describe the factual background and procedural history of this lawsuit and summarize the terms of the proposed Settlement. Accompanying this Declaration is Plaintiffs' supporting Memorandum of Law that demonstrates why, under governing law, this Court should grant final approval of the Settlement and grant the other relief requested in Plaintiffs' Motion.

### III. Thorough Investigation of Class Members' Claims

14. Beginning in December 2021, a team of WMP attorneys conducted a thorough investigation into the merits of the potential claims and defenses in this action. Our investigation and legal research focused on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

15. Class Counsel obtained and analyzed documents from Plaintiffs and other Manhattan Beer customers and conducted extensive factual and legal research into potential experts, as well as the pertinent case law and facts in other actions challenging invoicing practices, conducting comprehensive legal research concerning the complexities of RICO and fraud-based class actions.

**IV.    Plaintiffs' Complaints, Discovery, and the Parties' Settlement Negotiations**

16. On February 18, 2022, Plaintiff Cap 111 Enterprises LLC filed the initial Class Action Complaint. The Complaint sought restitution, compensatory and punitive damages, interest, injunctive relief, and attorneys' fees and costs. ECF No. 1 at 22–23. Plaintiffs later filed three amended complaints.

17. On May 31, 2022, Plaintiffs filed a First Amended Class Action Complaint, adding additional Plaintiffs Livanos Restaurant Inc., Moderne Barn, Armonk, Inc., New Oceana Restaurant Corp., Great Food 57th St LLC, 251 E. Main St., LLC, 67 Purchase St LLC, Pub Street Pleasantville LLC, and Locali Kitchen & Bar LLC. ECF No. 19.

18. On October 13, 2022, Plaintiffs filed a Second Amended Class Action Complaint, further particularizing their allegations. ECF No. 30.

19. On December 2, 2022, Defendants served a motion to dismiss, which was docketed on February 23, 2023. ECF No. 46.[1] On August 16, 2023, this Court partially granted Defendants' motion, dismissing claims for unjust enrichment, breach of contract and the covenant of good faith and fair dealing, violation of New York's Bottle Bill, and public nuisance and sustaining claims

---

[1] On June 29, 2023, by way of Notice of Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), Plaintiffs voluntarily dismissed the claims of Plaintiffs Livanos Restaurant Inc., Moderne Barn, Armonk, Inc., New Oceana Restaurant Corp., and Great Food 57th St LLC. ECF No. 114, which the Court so ordered on July 6, 2023, ECF No. 115.

under RICO and GBL § 349, as well as claims for common law fraud, fraudulent concealment, and negligent misrepresentation. *See* ECF No. 144.

20. On September 21, 2023, Plaintiffs filed the Third Amended Class Action Complaint, conforming the pleadings to the Court's dismissal rulings. *See* ECF No. 149.

21. Discovery began on October 28, 2022, and was hard-fought from the get-go. The parties appeared before Magistrate Judge Krause eight times on complex disputes including the scope of class discovery, ESI source disclosures, privilege issues, the adequacy of document retrieval and production, and the timing of document production and depositions. Settlement Agreement ¶ 11. The parties each filed more than ten letters arguing their positions in connection with these conferences. *See* ECF Nos. 53–55, 62–64, 93, 110–11, 119, 123–24, 129–30, 134–35, 138, 168–72.

22. The parties also filed detailed letters regarding the scope of data production, *see* ECF Nos. 90, 92, 106–07, 109, and Plaintiffs' contested application to supplement the SAC, *see* ECF Nos. 70, 87, 91, 97–98.

23. Aware of their duty to simultaneously explore resolution, in the fall of 2023 the parties set this case on a parallel mediation track. The parties engaged experienced class action mediator Martin F. Scheinman and held a full-day in-person mediation on February 8, 2024. This was followed by written correspondence and an additional conference with Mediator Scheinman on August 15, 2024. Plaintiffs supported Class Counsel throughout the mediation process.

24. During this same period, my firm obtained a report on potential damages from an economist, which was disclosed to Mediator Scheinman in advance of the February 8, 2024 mediation.

7

25. Defendants produced over 49 million lines (8.3 gigabytes) of data regarding deposits charged to Class Members. My firm hired a database and data science expert to assist Class Counsel in the analysis of the 49 million lines of sales data.

26. Class Counsel, the data scientist, and the economist then used this data to construct a comprehensive damages model. This model anchored negotiations at the February 8 mediation, the ensuing negotiations on April 16, May 30, July 12, July 30, and August 7, and a follow-up mediation on August 15, 2024.

27. On August 15, 2024, after extensive efforts, the parties reached a settlement in principle and negotiated final terms until November 11, 2024. These negotiations remained adversarial, at arm's length, and occasioned comprehensive written correspondence and discussions among counsel on September 9, 20, and 27, and October 16, 22, and 28.

28. Based on an analysis of Defendants' revised deposit practices, Class Counsel determined that customers who made purchases on or after May 13, 2024 could not reasonably claim that Manhattan Beer violated GBL § 349 or other potentially applicable laws or statutes, and Plaintiffs' damages calculation used in settlement negotiations reflected this assessment. Because Class Counsel have continued (and will continue) to monitor Defendants' deposit practices, the parties limited any settled claims (and the release) to purchases made before May 13, 2024.

V. **Settlement Terms**

29. Under the Settlement Agreement, the Class is defined as all Manhattan Beer customers who purchased bottled beverages from Manhattan Beer, were charged a $0.10 deposit for cardboard mother cartons at any time between February 18, 2016 and May 13, 2024, and were not fully credited for all such deposits via redemption or refund. Settlement Agreement ¶ 31.

30. Under the Settlement Agreement, Manhattan Beer will deposit $5,750,000 into an escrow account. *Id.* ¶ 70. Cash payments will be distributed to Class Members on a *pro rata* basis in proportion to the deposits they paid that were not refunded or redeemed. *Id.* ¶ 77.ii. In other words, the more deposits a Class Member has outstanding, the larger their Settlement payment will be. *Id.* The Settlement also provides for a minimum payment of $25.00 for Class Members whose allocation would otherwise be lower. *Id.* ¶ 77.iv.

31. Based on calculations prepared by Plaintiffs' data expert, the number of unique Manhattan Beer account numbers included in the Class defined above (with each unique account number considered a "Class Member") is 31,785. *Id.* ¶ 31. The average estimated payment is approximately $112.11. Plaintiffs' Preliminary Approval Motion, ECF No. 191, calculated the average Settlement payout at $116.99. ECF No. 191 at 6. That calculation inadvertently included the amounts for the Settlement Administrator's payment, requested service awards, and the reserve fund. With those costs accounted for, the average payout is calculated at $112.11. This payment formula tracks Plaintiffs' damages model used at mediation such that Class Members will be fairly compensated based on their alleged damages.

32. The Settlement Agreement also confirms that as a result of Class Counsel's efforts, Manhattan Beer voluntarily revised its practices to the benefit of Class Members and future Manhattan Beer customers by instituting and formalizing a practice by which Manhattan Beer separately to separately identifies the contested $0.10 cardboard deposit fee on customer invoices apart from the deposit fees mandated by New York's Bottle Bill. Settlement Agreement ¶ 69. On May 13, 2024, customers were given additional notice of the $0.10 deposit and Manhattan Beer began memorializing the $0.10 deposit in its customer credit applications. *Id.* Manhattan Beer maintains that the changes were voluntary and that it was not obligated to make them. *Id.*

33. With the assistance of Mediator Scheinman, the parties reasonably valued these changes and enhancements of Manhattan Beer's deposit practices at not less than Two Million Six Hundred Thousand Dollars ($2,600,000.00), which negotiated valuation is based on the average annual alleged cardboard mother carton deposit overcharges for the six-year period from 2018 to 2023 multiplied by three years going forward.

34. The $5,750,000 in cash relief represents 61.4% of the $9,361,779 in out-of-pocket losses Plaintiffs calculated from Manhattan Beer's invoice data. This is a substantial percentage of Plaintiffs' "best case" scenario. It is a reasonable and admirable result. The parties, with the continued assistance of an experienced mediator, concluded that the benefits of settlement outweigh the risks of continued litigation, as well as its associated time and expense.

35. Prior to settlement, Plaintiffs had begun work on class certification and fully anticipated that Defendants would oppose class certification as vigorously as they had contested Plaintiffs' allegations and discovery requests.

36. Plaintiffs also invested significant time and effort to the case: meeting numerous times with Class Counsel, providing detailed background information, reviewing and discussing the pleadings and discovery, providing their businesses' records and extensive emails (including personal email accounts) for review and production in discovery, searching through hard copy documents (including traveling to the location(s) where documents were stored), and keeping in close contact with Class Counsel. Plaintiffs also supported Class Counsel during the mediation process. Class Counsel is therefore requesting service awards. The requested payment to the five Class Representatives would total $25,000, 0.43% of the Settlement's cash recovery. The service award request was subject to arm's length negotiations between the parties and was disclosed to the Class. No Class Member has objected to the proposed service awards.

37. Plaintiff Cap 111 Enterprises LLC, which initiated this action, will receive $10,000. The four remaining Class Representatives, whose employees independently assisted Class Counsel in prosecuting the Class claims, will receive $3,750 each. The Class Representatives at all times encouraged Class Counsel to obtain the best possible results for the Class.

38. Plaintiffs are also requesting that the Court approve attorneys' fees of one third of the Settlement's $5,750,000 cash portion (*i.e.*, $1,916,666). *Id.* ¶ 110. This sum is consistent with fee awards in the Second Circuit. In Class Counsel's experience, law firms that represent plaintiffs in contingency matters in this Circuit typically charge their clients at least one third (33.33%) of their gross recoveries, exclusive of litigation expenses, and as set forth in the accompanying Memorandum of Law, many courts in this District and elsewhere routinely approve one-third fee awards in class actions.

39. Class Counsel's requested fee award is also reasonable in relation to the result achieved for the Class. Here, as compensation for their efforts, Class Counsel request the customary one-third legal fee, but only as measured against the $5,750,000 cash fund, not the Settlement's total value. The Federal Judicial Center provides an example of when it is appropriate to base a percentage fee on the value of non-monetary relief through objective criteria: an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near future. That method was used to value the non-monetary relief obtained here. When the full $8,350,000 Settlement value is considered, the fee request amounts to 22.9% of the Settlement's total value. The requested fee is thus at the low end of fees approved in comparable cases, as a fee of one-third (33.33%) of the total value obtained for the Class has repeatedly been approved as reasonable in the Second Circuit.

11

40.     Class Counsel have done substantial work identifying, investigating, pursuing, and settling Plaintiffs' and Class Members' claims. Class Counsel have also committed significant resources to the over three-year investigation and litigation of this case, brought viable claims and aggressively pursued the facts necessary to prevail on the merits in the event that this case did not settle.

41.     Altogether, Class Counsel devoted over 2,700 hours throughout over three years spent investigating, prosecuting, and settling this case. Class Counsel's lodestar to date is $2,297,976. Class Counsel's billing records for this matter were filed under seal at ECF No. 199-1. The chart below summarizes the billable time each attorney performed on behalf of Plaintiffs and the Class.

| SUMMARY OF CLASS COUNSEL'S LODESTAR | | |
|---|---|---|
| TIMEKEEPER | TOTAL HOURS | TOTAL FEES |
| Andrey Belenky, Shareholder and Partner | 22.3 | $20,516.00 |
| Daniel J. Brenner, Senior Associate | 34.2 | $17,271.00 |
| Daniel J. Kieselstein, Senior Associate | 46.2 | $22,407.00 |
| Ethan D. Roman, Counsel | 801.6 | $541,080.00 |
| Howard Foster, Co-counsel | 2.8 | $2,240.00 |
| J. Burkett McInturff, Shareholder and Partner | 1,150.6 | $1,024,034.00 |
| Jessica L. Hunter, Counsel | 67.5 | $44,212.50 |
| Nathan A. Rice, Former Senior Associate | 122 | $61,610.00 |
| Steven L. Wittels, Founding Partner | 313.5 | $371,497.50 |
| Tiasha Palikovic, Shareholder and Partner | 209.9 | $193,108.00 |
| **TOTAL** | **2,770.6** | **$2,297,976.00** |

42. Class Counsel have deep experience in class actions and the time and labor spent is reasonable considering the many disputed issues that required vigorous advocacy to Manhattan Beer's robust defense. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney participating in the case. Based on my knowledge and experience in cases of this kind, the time spent was reasonable and necessary to achieve the excellent result Class Counsel's efforts achieved here.

43. Because Class Counsel took this case on pure contingency, all financial incentives were to work efficiently and minimize costs. The billing rates for each attorney are listed at ECF No. 199-1, p. 103. These rates are based on my firm's current billing rates, which rates are supported by our extensive and specialized experience in these types of cases and recognized expertise in complex class action matters. Our hourly billing rates have been repeatedly approved by courts in this District and the Eastern District of New York.[2] I have personal knowledge of the hourly rates charged by other attorneys with comparable experience as well as the attorneys within the firm who worked on this matter. Based on that information, I believe that my firm's rates are fully consistent with the market rate in this District for attorneys with comparable expertise, experience and qualifications, and that they are comparable to rates of attorneys specializing in

---

[2] *See, e.g.*, *Franck v. N.Y. Health Care Inc.*, 21-CV-4955 (S.D.N.Y. Sept. 13, 2024), ECF No. 242 (approving Class Counsel's 2024 rates in wage and hour class action); *Nichols v. Noom, Inc.*, 20-CV-3677 (S.D.N.Y. July 12, 2022), ECF No. 519 (2022 rates in consumer class action); *Medvedeva v. Assistcare Home Health Servs. LLC*, 17-CV-5739 (E.D.N.Y. June 1, 2021), ECF No. 151 (2021 rates in wage and hour class action); *Little v. Ambit Energy Holdings, LLC*, 16-CV-8800 (D.N.J. July 2, 2020), ECF No. 94 (2020 rates in consumer class action); *Delgado v. Ocwen Loan Servicing LLC, et al.*, 13-CV- 4427 (E.D.N.Y. Aug. 20, 2019), ECF No. 429 (2019 rates in consumer class action); *Simmons v. Ambit Energy Holdings, LLC*, 503285/2015 (N.Y. Sup. Ct. July 16, 2018), NYSCEF No. 205 (2018 rates in consumer class action); *Mirkin v. Viridian Energy, Inc.*, 15-CV-1057 (D. Conn. June 27, 2018), ECF No. 185 (same); *Rasulev v. Good Care Agency, Inc.*, 16-CV-1993 (E.D.N.Y. July 28, 2017), ECF No. 70 (2017 rates in wage and hour class action).

complex litigation around the country. Based on this information, I believe that the rates charged for its partner and non-partner attorney time are reasonable and appropriate fees for those with comparable expertise, experience, and qualifications.

44. Class Counsel's attorneys' fees are not only based on the extensive time and effort thus far expended but are also meant to compensate Class Counsel for time that they will be required to spend monitoring and aiding in the Settlement's further administration. Class Counsel anticipate spending additional time with respect to continuing communications with the Settlement Administrator in administering the Settlement and responding to Class Members' inquiries, especially after checks are issued. In Class Counsel's experience, administering class Settlements of this nature requires non-negligible post-Fairness Hearing attorney and staff time.

45. Moreover, and as described more fully in Plaintiffs' accompanying Memorandum of Law, Class Counsel are not asking for a multiplier, although as can be seen from the years of work which yielded the commendable results of this Settlement, this is certainly a case that would have warranted a substantial multiplier. Instead, Class Counsel's requested one-third fees constitutes a negative multiplier of 0.83.

46. Class Counsel undertook prosecution of this action without any assurance of payment for their services, litigating this case in the face of significant risk. Consumer class actions are, by their very nature, complicated and time-consuming, and attorneys representing clients in these types of class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented

numerous and substantial hurdles to a successful recovery on behalf of all Class Members. Class Counsel stood to gain no compensation in the event the case was unsuccessful.

47. The overwhelming majority of Class Counsel's cases are taken on pure contingency, and Class Counsel cover all out-of-pocket costs and expenses incurred. Thus, when Class Counsel spend time on contingency matters, they do so at significant cost and risk for the firm. Class Counsel frequently turn away cases, including hourly litigation matters and other contingency matters, to enable their attorneys to work on pending contingency matters, primarily class actions. Cases like this are also not attractive to the greater class action bar, likely because they are highly complex and require multi-year efforts.

48. Additionally, Class Counsel seeks reimbursement from the Settlement Fund of their reasonable costs and expenses incidental to the representation of the Class. Below is a chart tabulating the costs and expenses incurred to date:

| SUMMARY OF EXPENSES | |
|---|---|
| **EXPLANATION** | **AMOUNT** |
| Mediation fees | $4,350.00 |
| Administrative costs (binding, mailing, printing supplies, etc.) | $136.65 |
| Court costs (court filings, process servers, etc.) | $402.00 |
| Data Scientist | $29,075.00 |
| Economics Expert | $8,820.00 |
| E-discovery costs | $38,897.63 |
| Transcript costs | $2,456.98 |
| Legal Research | $976.75 |
| Travel (airfare, ground transportation, meals, lodging, etc.) | $3,092.62 |
| **TOTAL:** | **$88,207.63** |

49. The Court should award Class Counsel these reasonable and necessary expenses incurred to obtain a favorable result for Class Members.

## VI. The Notice Campaign

50. Following the preliminary approval order, a comprehensive notice campaign was executed.

51. Specifically, on January 13, 2025, Defendants provided the Settlement Administrator a Class List containing the full name, Manhattan Beer account number, all billing address information, phone number, and email for all Class Members (the "Class List"). Manhattan Beer certified that it contained the "most current and up to date information that Defendant has for Class Members." Settlement Agreement ¶ 89(e).

52. After additional quality control, the parties finalized the email and mail notice, the recording to greet hotline callers, FAQs to respond to Class Member inquiries, and the Settlement website.

53. On February 3, 2025, direct email and mail notice was issued to the Class.

54. The notice campaign was effective. The Settlement Administrator has reported that in total, 28,295 Class Members, or 89% of the Class, successfully received notice. The response by Class Members has been overwhelmingly positive, as to date there have been no objections to the Settlement, and no Class Members have requested exclusion. In sum, a robust notice process was implemented with an overwhelmingly positive response.

55. Each Class Member will be promptly mailed their Settlement payment without having to place a claim or needing to take further steps to become eligible. Class Members who have not cashed their checks after 45 days will also receive a reminder notice. The Settlement also establishes a reserve fund that will remain open for 18-months after the Settlement's effective date. *Id.* ¶ 55. The reserve fund will be used to address settlement payment issues, including claims from individuals claiming to be Class Members but not identified as such by Manhattan Beer, Class

Members who correctly challenge their share of the Settlement, and Class Members who have reasonable explanations for not having timely cashed their checks. *Id.*

56. The final approval hearing will be held on April 24, 2025 at 10:15 am. ECF No. 195 at 5.

57. After the final approval hearing, if the Court grants final approval, the Court will issue a final order and judgment and dismiss this case with prejudice. *See* **Ex. A** (proposed Order and Final Judgment).

### VII. Authenticating Exhibits

58. I also make this Declaration to authenticate the attached exhibits referenced in the accompanying Memorandum of Law.

59. Attached hereto as **Exhibit A** is a true and correct copy of the proposed Final Order and Judgment granting Plaintiffs' motion.

60. Attached to this Declaration as **Exhibit B** is a true and correct copy of WMP's 2025 Firm Resume.

WHEREFORE, Plaintiffs respectfully request that the Court: (1) grant final certification to the Class under Rule 23 for Settlement purposes; (2) grant final approval of all terms applicable to the Class set forth in the Settlement Agreement; (3) find that notice was the best notice practicable under the circumstances; (4) approve the service awards to the Class Representatives; (5) award Class Counsel reimbursement of litigation expenses and attorneys' fees; (6) approve the parties' proposed final Settlement procedure; (7) incorporate all terms of the Settlement Agreement, including the release; and (8) dismiss this action with prejudice and enter final judgment.

//

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Executed: New York, New York<br>March 21, 2025 | /s/  J. Burkett McInturff<br>J. Burkett McInturff<br><br>**WITTELS MCINTURFF PALIKOVIC**<br>305 B‌ROADWAY, 7TH F‌LOOR<br>N‌EW Y‌ORK, N‌EW Y‌ORK 10007<br>Telephone:  (914) 775-8862<br>Facsimile:   (914) 775-8862<br>jbm@wittelslaw.com<br><br>*Counsel for Plaintiffs and the Class* |

18